ADR

E-filing

Michael J. Flanagan, State Bar No. 093772
Gavin Hughes, State Bar No. 242119
Law Offices of Michael J. Flanagan
2277 Fair Oaks Boulevard, Suite 450
Sacramento, CA 95825
Tel: (916) 646-9100
Fax: (916) 646-9138

Ali Kamarei, State Bar No. 175977
Katja M. Grasso, State Bar No. 266935
Inhouse Counsel
50 W. San Fernando Street, Ste. 900
San Jose, CA 95113
Tel: (408) 918-5393
Fax: (408) 918-5373

Paul Norman, Esq., *pro hac vice* pending
Boardman & Clark, LLP
1 S Pinkney St., Ste. 410
Madison, WI 53703-4256
Tel: (608) 257-9521
Fax: (608) 283-1709

Attorneys for Plaintiff Mathew Enterprise, Inc.

ORIGINAL FILED
SEP 12 2013

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

PSG

| | |
|---|---|
| **MATHEW ENTERPRISE, INC.**, a California Corporation, | Case No. CV 13-04236 |
| Plaintiff, | **PLAINTIFF MATHEW ENTERPRISE, INC., COMPLAINT FOR VIOLATION OF THE 15 U.S.C. § 13** |
| v. | |
| **CHRYSLER GROUP LLC**, a Delaware limited liability company, | |
| Defendant. | **Jury Trial Demanded** |

1

The plaintiff, Mathew Enterprise, Inc. ("Plaintiff"), complains against the defendant, Chrysler Group LLC ("Chrysler"), as follows:

## PARTIES

1.      Plaintiff is a corporation duly organized and existing under the laws of the state of California. Plaintiff's principal place of business is located at 4100 Stevens Creek Boulevard, San Jose, CA 95129.

2.      Chrysler is a limited liability company organized and existing under the laws of the state of Delaware. Chrysler's principal place of business is located at 1000 Chrysler Drive, Auburn Hills, MI 48326.

## INTRODUCTORY STATEMENT

3.      This action is brought under Section 2 of the Clayton Act (also known as the Robinson-Patman Act) (15 U.S.C. §13) and Section 4 of the Clayton Act (15 U.S.C. § 15) to recover threefold the damages sustained by Plaintiff by reason of Chrysler's violation of 15 U.S.C. § 13(a) or, in the alternative, 15 U.S.C. §§ 13(d) and/or (e), plus Plaintiff's cost of suit, including a reasonable attorney's fee, and interest. It is based on so-called "incentives" ("Vehicle Subsidies") that Chrysler has provided to certain of Plaintiff's competitors in the resale of vehicles purchased by the competitors and Plaintiff from Chrysler, which Vehicle Subsidies have not been made functionally available to Plaintiff. These Vehicle Subsidies have resulted in substantially lower net wholesale prices being paid for vehicles by Plaintiff's competitors than those paid by Plaintiff for vehicles of like grade and quality in contemporaneous sales by Chrysler. These substantial price differences have continued over a significant period of time and have substantially lessened competition between Plaintiff and the favored competitors. In the alternative, the Vehicle Subsidies are consideration provided by Chrysler to the favored competitors for services or facilities in connection with the resale of the vehicles purchased

from Chrysler, which incentives are not made available to Plaintiff on proportionally equal terms and, therefore, violate 15 U.S.C. §§ 13(d) and/or (e). As a result of this price discrimination in violation of the Robinson-Patman Act, Plaintiff has suffered, and continues to suffer, injury to its business and property in the form of lost sales, revenues and profits. Plaintiff also seeks injunctive relief pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26) to the extent necessary to protect Plaintiff against threatened future loss or damage by Chrysler's violation of the Robinson-Patman Act.

4.     In the alternative to its claims under the Robinson-Patman Act, Plaintiff seeks an award of damages caused (a) by Chrysler's willful failure to comply with Section 11713.3(a) of the California Code by delivering new vehicles to Plaintiff in the "reasonable quantities" that Plaintiff needs to sell in order to obtain the Vehicle Subsidies and/or (b) by Chrysler's breach of its implied duty of good faith and fair dealing arising under the dealer agreements between Chrysler and Plaintiff.

## JURISDICTION AND VENUE

5.     This court has subject matter jurisdiction over all of Plaintiff's claims pursuant to 28 U.S.C. § 1332(a) , in that the amount in controversy exceeds the sum or value of $75,000 and diversity of citizenship exists between Plaintiff and the defendant.

6.     This court has subject matter jurisdiction over Plaintiff's claims under Counts I and II below pursuant to 28 U.S.C. § 1337(a), because Plaintiff's claims under the Robinson-Patman Act arise under an Act of Congress regulating commerce and protecting trade and commerce against restraints.

7.     This court has subject matter jurisdiction over Plaintiff's claims under Counts III and IV below pursuant to 28 U.S.C. § 1367(a) because they are so related to Counts I and II that they form part of the same case or controversy and arise from the same set of operative facts.

8.     Venue is proper in this court pursuant to 28 U.S.C. §1391(b)(1), (2) and (3), and 28 U.S.C. §1391(c), because Plaintiff's principal place of business is located in this district, Chrysler is

3

PLAINTIFF MATHEW ENTERPRISE, INC., COMPLAINT FOR VIOLATION OF THE 15 U.S.C. § 13

subject to personal jurisdiction in this district, and a substantial part of the events and omissions giving rise to the Plaintiff's claims have occurred in this district.

## FACTS

### *Facts Related to Requirement of Commerce*

9. Chrysler manufactures and/or distributes and sells, among other products, new and unused passenger cars and light duty trucks ("Vehicles") under the Chrysler, Jeep, Dodge and Ram ("CJDR") brand names.

10. Chrysler is engaged in interstate commerce in that it sells Vehicles through a network of franchised dealers located in every one of the United States.

11. Plaintiff is a franchised CJDR dealer engaged in, among other things, the business of purchasing Vehicles from Chrysler and reselling those Vehicles primarily to retail purchasers located in the Northern California area, although some of Plaintiff's retail sales of Vehicles are to residents of other states.

12. Some or all of the Vehicles that Plaintiff purchases from Chrysler cross state lines between the time of their manufacture and their delivery to Plaintiff.

13. Plaintiff's purchases of Vehicles from Chrysler take place within the United States and are for resale within the United States.

14. Chrysler also sells Vehicles to other CJDR dealers, including other CJDR dealers ("Competing Dealers") located in Northern California that compete against Plaintiff in reselling Vehicles purchased from Chrysler.

15. Some or all of the Vehicles that Chrysler sells to the Competing Dealers also cross state lines between the time of their manufacture and their delivery to the dealer.

**PLAINTIFF MATHEW ENTERPRISE, INC., COMPLAINT FOR VIOLATION OF THE 15 U.S.C. § 13**

16.     Chrysler's sales of Vehicles to Plaintiff and the Competing Dealers occur in the course of commerce.

***Facts Related to Requirement of a Price Difference -Volume Growth and Other Incentives Paid by Chrysler to Favored Competing Dealers***

17.     When Plaintiff purchases a Vehicle from Chrysler, it pays Chrysler an invoice price for the Vehicle that, on information and belief, is the same as the invoice price that Chrysler charges to every other CJDR dealer for a Vehicle of like grade and quality.

18.     However, in recent years, Chrysler has provided certain CJDR dealers with so-called "volume growth" incentives and other incentives ("Vehicle Subsidies") for every month during which the dealer's retail sales of Vehicles meet or exceed a monthly sales objective established by Chrysler for each individual dealer.

19.     As explained to Plaintiff by Chrysler, Chrysler establishes the monthly sales objective that determines each dealer's eligibility for the volume growth incentives based largely on that dealer's past sales history. A January 6, 2011 email from Christopher Chandler of Chrysler to Plaintiff's owner, Mathew Zaheri, explained the method used at the time by Chrysler to establish each dealer's monthly sales objective, as follows:

- WBC [Chrysler's Western Business Center] has a sales target number every month that drives the number for every dealer in the West

- Each dealers [sic] % of the above number is based on 75% last 180 day sales (what % of the BC you were) & 25% same time period previous year . . .

- Adjustments are then made based on MSR [minimum sales responsibility] performance ... to give high performing dealers some relief and give low performing dealers additional task as follows

    o  Any dealer below 100% MSR was tasked up to 100%

PLAINTIFF MATHEW ENTERPRISE, INC., COMPLAINT FOR VIOLATION OF THE 15 U.S.C. § 13

     o   Maximum task is 10%-so for example a 90% MSR dealer is tasked 10%, 80

           MSR dealer is tasked 10%

     o   MSR between 100% and 149.9% - no adjustment

     o   MSR between 150%-199.9% gets a 5% objective relief

     o   MSR over 200% gets a 10% task relief

20.     In addition to the volume growth incentive program, Chrysler provides other Vehicle Subsidies to certain of its dealers at various times. These other Vehicle Subsidies include those referred to by Chrysler as "volume stairstep", "best month of the year volume", "best month of the year fast start pay", monthly "VGP bonus program" and monthly "fast start."

21.     In December 2010, Chrysler established a new CJDR dealer, California Superstores San Leandro CJDR ("San Leandro CJDR"). San Leandro CJDR is a Competing Dealer located in the San Francisco Bay Area market, drawing from the same pool of customers as Plaintiff and advertising in the San Jose Mercury News, the local newspaper in which Plaintiff, having its location in San Jose, advertises.

22.     The establishment of San Leandro CJDR caused the number of Vehicles that Plaintiff could expect to sell to significantly decrease. While the potential for CJDR sales in the San Francisco Bay market did not significantly increase as a result of San Leandro CJDR's establishment, the number of CJDR dealers competing for sales in that market increased, thus causing a significantly lower share of the CJDR sales in the market for each dealer. Also, in the automotive industry, a dealer's expected sales are determined by multiplying (a) the competitive registrations in the geographic areas for which that dealer's location is most convenient by (b) the brand's share of the market in the state or some broader geographic area where the dealer is located. The establishment of San Leandro CJDR caused significant amounts of the geographic area that would have formerly found Plaintiff to be most

convenient now found San Leandro CJDR more convenient and, therefore, significantly reduced the number of Vehicles that Plaintiff could be expected to sell each month. As expected, a significant number of customers in the geographic areas who had formally gone to Plaintiff went to San Leandro CJDR instead, thus causing Plaintiff's sales to decrease.

23. During the period of December 2010 through June 2011, Chrysler did not adjust Plaintiff's monthly sales objectives to account for the establishment of San Leandro CJDR, instead calculating Plaintiff's objectives based on Plaintiff's past sales in the manner discussed in paragraph 18. Chrysler expected Plaintiff to perform at levels exceeding Plaintiff's past performance without taking into account the reduction in Plaintiff's expected sales caused by the addition of San Leandro CJDR.

24. In addition, subsequent to the addition of San Leandro CJDR, Chrysler did not make available to Plaintiff a sufficient number of Vehicles in the appropriate mix of models that Plaintiff needed in order to meet the monthly objectives established by Chrysler.

25. As a result of Chrysler's failure to adjust Plaintiff's monthly objectives to account for the reduction in its expected sales caused by San Leandro CJDR's establishment and Chrysler's failure to allocate an appropriate number and mix of Vehicles to Plaintiff, the Vehicle Subsidies became functionally unavailable to Plaintiff. As a result, during the period of December 2010 through March 2011, Plaintiff was unable to meet its monthly sales objectives and received no Vehicle Subsidies, while San Leandro CJDR, having much lower monthly objectives, was able to meet those objectives and receive the Vehicle Subsidies during this period.

26. During the period of December 2010 through June 2011, Plaintiff repeatedly brought its unreasonable monthly objectives to Chrysler's attention. Finally, Chrysler adjusted Plaintiff's monthly

PLAINTIFF MATHEW ENTERPRISE, INC., COMPLAINT FOR VIOLATION OF THE 15 U.S.C. § 13

objectives for the third quarter of 2011 to account for the addition of San Leandro CJDR to Plaintiff's market.

27. As a result of this adjustment, during the period of July 2011 through June 2012, Plaintiff met its monthly sales objective in every month (except April 2012, where it met its "fast start" objective but not its monthly sales objective) and received Vehicle Subsidies during that period in the total amount of $1,112,050, which amounted to more than $700 in Vehicle Subsidies for each of the Vehicles which were resold by Plaintiff during that period.

28. At some point during 2011, Chrysler changed the formula for calculating the monthly sales objectives that dealers had to meet in order to earn the Vehicle Subsidies, from the formula discussed in paragraph 18 to a formula based on 120%-150% of the dealer's sales of Vehicles during the same month of the previous year.

29. In July 2012, Chrysler established a new CJDR dealer (Fremont CJDR) in Fremont, California. Fremont CJDR is located less than 14 miles from Plaintiff.

30. The establishment of Fremont CJDR in such close proximity to Plaintiff again caused the number of Vehicles that Plaintiff could expect to sell each month to significantly decrease in the same way that Plaintiff's expected sales had decreased when San Leandro CJDR was established in December 2010.

31. Following the establishment of Fremont CJDR, Chrysler again made no adjustment in Plaintiff's monthly objectives for the Vehicle Subsidies to account for the decrease in the Plaintiff's expected sales and again began failing to make available to Plaintiff a sufficient number of Vehicles in the appropriate mix of models that Plaintiff needed to meet the monthly objectives established by Chrysler.

PLAINTIFF MATHEW ENTERPRISE, INC., COMPLAINT FOR VIOLATION OF THE 15 U.S.C. § 13

32.     As a result, the Vehicle Subsidies again ceased to be functionally available to Plaintiff and, except for one "fast start" incentive payment in July 2012, Plaintiff ceased receiving Vehicle Subsidies beginning in July 2012, even though, on information and belief, its sales continued to exceed its expected sales when calculated in accordance with industry standards and practice.

33.     On the other hand, certain Competing Dealers, including, on information and belief, San Leandro CJDR and Fremont CJDR, continued to receive Vehicle Subsidies of $700 or more per Vehicle sold which gave them a substantial price advantage over Plaintiff beginning in July 2012.

34.     Plaintiff's unit sales of Vehicles, monthly objectives, as established by Chrysler, and amount of Vehicle Subsidies received during the period of July 2012 through June 2013 compared to its objectives, sales and Vehicle Subsidies received during the period of July 2011 through June 2012 were as follows:

|  | Unit Sales | Monthly Objective | Incentive Payments Received |
|---|---|---|---|
| 07/ 2011 | 155 | 100 | $92,400 |
| 07/2012 | 130 | 151 | $26,200 |
| 08/2011 | 121 | 89 | $72,000 |
| 08/2012 | 79 | 117 | $0 |
| 09/2011 | 128 | 89 | $75,000 |
| 09/2012 | 101 | 127 | $0 |
| 10/2011 | 120 | 81 | $96,000 |
| 10/2012 | 64 | 120 | $0 |
| 11/2011 | 105 | 71 | $63,000 |
| 11/2012 | 67 | 105 | $0 |
| 12/2011 | 166 | 92 | $188,300 |
| 12/2012 | 80 | 158 | $0 |
| 01/2012 | 106 | 82 | $26,500 |
| 01/2013 | 80 | 121 | $0 |

9

| | | | |
|---|---|---|---|
| 02/2012 | 115 | 72 | $123,950 |
| 02/2013 | 74 | 139 | $0 |
| | | | |
| 03/2012 | 130 | 83 | $103,400 |
| 03/2013 | 98 | 177 | $0 |
| | | | |
| 04/2012 | 112 | 109 | $22,700 |
| 04/2013 | 84 | 147 | $0 |
| | | | |
| 05/2012 | 160 | 119 | $128,000 |
| 05/2013 | 113 | 168 | $0 |
| | | | |
| 06/2012 | 151 | 99 | $120,800 |
| 06/2013 | 96 | 149 | $0 |
| | | | |
| 7/2011-6/2012 | | | |
| Totals | 1,569 | 1,086 | $1,112,050  ($708.76 per unit sold) |
| | | | |
| 7/2012-6/2013 | | | |
| Totals | 1,066 | 1,679 | $26,200 |
| | | | |
| 7/2011-6/2012 | | | |
| Monthly Avg 131 | | 91 | $92,670.83 |
| | | | |
| 7/2012-6/2013 | | | |
| Monthly Avg. 89 | | 140 | $2,183.33 |

35.    As the data in the immediately preceding section show, the monthly objectives, as established by Chrysler, that Plaintiff was required to attain in order to receive Vehicle Subsidies were significantly higher in July 2012-June 2013 (140 units per month) than they were in July 2011-June 2012 (91 units per month). In establishing these objectives, Chrysler relied on Plaintiff's sales history before the establishment of Fremont CJDR. This reliance by Chrysler was unreasonable because Plaintiff's expected sales were adversely affected by the establishment of another CJDR dealer less than 14 miles from it. Rather than reducing Plaintiff's objectives to account for the large amount of Plaintiff's market area and customer base that was now more convenient to Fremont CJDR, Chrysler increased Plaintiff's objectives by 55%. Because these objectives were not reasonably attainable,

Plaintiff was immediately faced with a price disadvantage in competing with Fremont CJDR and other Favored Competing Dealers, which also significantly reduced its sales from July 2012 forward. The combination of new competition from Fremont CJDR and the price disadvantage created by the unreasonable monthly objectives established by Chrysler for Plaintiff created a spiraling reduction in Plaintiff's Vehicle sales from an average of 131 units per month prior to July 2012 to 89 units per month thereafter, which rendered the Vehicle Subsidies that Chrysler provided the Favored Competing Dealers functionally unavailable to Plaintiff.

36.     The Favored Competing Dealers have continued to receive Vehicle Subsidies from Chrysler from July 2012 through the present, even though, in many instances, they have sold a lower number of Vehicles. For example, in July 2012, Plaintiff sold 130 Vehicles, which was the highest sales of any Competing Dealer during that month. However, Plaintiff received no volume growth incentives from Chrysler for that month because its minimum sales objective was 151 units. On the other hand, Fremont CJDR sold only 60 Vehicles during July 2012 but still received Vehicle Subsidies from Chrysler because its sales objective was only 38 units for that month.

37.     The fact that the Favored Competing Dealers are receiving Vehicle Subsidies from Chrysler and Plaintiff is not has created a difference in the net prices that Plaintiff and the Favored Competing Dealers pay to Chrysler for Vehicles of like grade and quality, with the net wholesale prices that the Favored Competing Dealers pay being significantly lower (by $700 or more) than the prices paid by Plaintiff.

*Facts Related to Price Difference Requirement-Rental Incentives provided to York Capital/San Leandro CJDR*

38.     Chrysler provides a further Vehicle Subsidy, not made available to Plaintiff, to San Leandro CJDR by providing San Leandro CJDR or its parent with Vehicle Subsidies credited toward San Leandro CJDR's rent.

39.     San Leandro CJDR is owned by Ytransport, LLC ("York Capital"), a hedge fund organized as a limited liability company in the state of Delaware, as part of an automotive group known as California Superstores.

40.     On information and belief, Chrysler has entered into an agreement ("Chrysler/York Agreement") with York Capital that contains the terms and conditions under which York Capital or its affiliates are allowed to own and operate CJDR dealerships ("York Dealerships") in California.

41.     Pursuant to the York/Chrysler arrangement, Chrysler acquires dealership favilities and leases those to York Dealerships in California including, on information and belief, San Leandro CJDR. Chrysler's Vice President of Network and Fleet, Peter Grady, has stated that "[Chrysler and Chrysler Realty are] buying the real estate and York Capital is funding the dealership operations with working capital," to ensure that Chrysler gets "the right guy to operate the store the way we want." (*Automotive News,* May 30, 2011).

42.     Pursuant to the York/Chrysler arrangement, Chrysler provides York Capital with Vehicle Subsidies in the form of below-market rent with respect to the York Dealerships, including San Leandro CJDR, which lease dealership facilities from Chrysler Realty. (*Automotive News,* May 30, 2011). These York Dealership-specific Vehicle Subsidies are separate from, and in addition to, the Vehicle Subsidies described above in paragraphs 16-36.

43.     San Leandro CJDR was established at a location approximately 36 miles from Plaintiff's location in December 2010.

44.     On information and belief, Chrysler has provided the Vehicle Subsidies under the Chrysler/York Agreement with respect to San Leandro CJDR since December 2010 and will continue to do so through December 2013. In 2011, Carlos Hoz de Vila, then-managing partner of California

Superstores, told *Automotive News* that "[Chrysler Realty] will give California Superstores a break on rent for the first couple of years." (*Automotive News,* May 30, 2011)

45.     The Vehicle Subsidies that Chrysler provides with respect to San Leandro CJDR are disguised reductions in the net prices that San Leandro CJDR pays for Vehicles purchased from Chrysler.

46.     Although Plaintiff also leases its dealership facility from Chrysler Realty, Chrysler has not made similar or any other Vehicle Subsidies in the form of rent incentives available to Plaintiff.

47.     The fact that San Leandro CJDR or its parent York Capital receives the above-described Vehicle Subsidies and Plaintiff does not has created a further difference in the net prices that Plaintiff and San Leandro CJDR pay to Chrysler for Vehicles of like grade and quality, with the net prices that San Leandro CJDR pays being significantly lower than the prices paid by Plaintiff.

48.     As a result of these Vehicle Subsidies, San Leandro CJDR has a further price advantage over Plaintiff in competing for sales of Vehicles to the same customers, in addition to the advantage resulting from San Leandro CJDR's receipt of the Vehicle Subsidies described above in paragraphs 16-36.

### Facts Relating to Injury To Competition

49.     The Plaintiff and the Competing Dealers sell the Vehicles they purchase from Chrysler in the same form as the Vehicles are received from Chrysler.

50.     There is considerable resale price competition between the Plaintiff and the Competing Dealers in the resale of Vehicles to the public. The retail prices at which Plaintiff and each Competing Dealer offer Vehicles for resale are a substantial factor in most retail purchasers' decisions regarding from which dealer they will purchase a Vehicle.

PLAINTIFF MATHEW ENTERPRISE, INC., COMPLAINT FOR VIOLATION OF THE 15 U.S.C. § 13

51.     The gross margins obtained by Plaintiff and the Competing Dealers in the resale of Vehicles are relatively small. Gross profits generally average less than 3% of the retail price of the Vehicle. Accordingly, the net wholesale price paid to Chrysler for a Vehicle is an important factor in Plaintiff's and the Competing Dealers' competition in reselling Vehicles. If the net wholesale price paid to Chrysler by Plaintiff is significantly higher than the net wholesale price paid by one or more of the Competing Dealers, the Plaintiff cannot lower its retail prices to meet or beat the retail prices offered by the Favored Competing Dealers without incurring a loss on the sale.

52.     As a result of the price differences paid by Plaintiff compared to the Favored Competing Dealers resulting from the Vehicle Subsidies, the Favored Competing Dealers have had at least a $700 price advantage per Vehicle sold over Plaintiff since July 2012 in competing for sales to the same customers.

53.     As a result of the price differences paid by Plaintiff compared to San Leandro CJDR resulting from the Vehicle Subsidy in the form of reduced rent described *supra* in paragraphs 37-47, San Leandro CJDR has had an additional price advantage per Vehicle sold over Plaintiff since December 2010 in competing for sales to the same customers.

54.     These price differences are substantial and have occurred over a significant period of time and, therefore, create a presumption of injury to competition.

55.     These price differences are, in fact, causing significant harm to competition between Plaintiff and the Favored Competing Dealers and also result in potentially higher prices paid by retail purchasers. If Plaintiff paid the same net price for Vehicles as the Favored Competing Dealers, it could offer lower retail prices that would, in turn, require the Favored Competing Dealers to offer lower prices in order to match or beat the Plaintiff's retail prices.

*Facts Relating to Plaintiff's Lost Sales and Profits Caused By The Price Differences*

PLAINTIFF MATHEW ENTERPRISE, INC., COMPLAINT FOR VIOLATION OF THE 15 U.S.C. § 13

56.    Since July 2012, Plaintiff's unit sales of Vehicles have been substantially reduced, while the unit sales of Vehicles by the Favored Competing Dealers have substantially increased.   For example, the monthly unit sales of Vehicles by Plaintiff, Fremont CJDR and San Leandro CJDR since July 2012 have been:

|  | Plaintiff[1] | Fremont CJDR | San Leandro CJDR |
|---|---|---|---|
| 07/2012 | 135 | 60 | 54 |
| 08/2012 | 80 | 88 | 40 |
| 09/2012 | 101 | 91 | 57 |
| 10/2012 | 57 | 68 | 75 |
| 11/2012 | 67 | 70 | 58 |
| 12/2012 | 82 | 119 | 107 |
| 01/2013 | 82 | 84 | 90 |
| 02/2013 | 78 | 84 | 140 |
| 03/2013 | 98 | 95 | 127 |
| 04/2013 | 82 | 94 | 101 |
| 05/2013 | 99 | 101 | 143 |
| 06/2013 | 96 | 88 | 125 |
|  |  |  |  |
| Total | 1,057 | 1,042 | 1,117 |
| Average | 88 | 87 | 93 |

57.    Since July 2012, Plaintiff's unit sales of Vehicles have declined from an average of 131 units per month in the immediately preceding 12 month period to an average of just 88 units per month. Although some of this reduction was the result of the reduction in Plaintiff's expected sales caused by the establishment of Fremont CJDR, a significant amount of the reduction has been the direct result of the wholesale price differences and the resulting price advantage over Plaintiff enjoyed by the Favored Competing Dealers, including Fremont CJDR and San Leandro CJDR.

---

[1]  Plaintiff's sales by month in paragraph 54 differ in some instances from its sales by month listed in paragraph 32  because they are sourced from different documents provided by Chrysler.

PLAINTIFF MATHEW ENTERPRISE, INC.; COMPLAINT FOR VIOLATION OF THE 15 U.S.C. § 13

58.     By contrast, San Leandro CJDR unit sales increased from an average of just 71 units per month during the period from July 2011 through June 2012 to an average of 93 units per month from July 2012 through May 2013.

59.     The 33% reduction in Plaintiff's sales and the 31% increase in San Leandro CJDR's sales of Vehicles has been directly caused, for the most part, by the price advantage that San Leandro CJDR has had over Plaintiff, due to the above-described price differences in their purchases of Vehicles from Chrysler, since July 2012.

***Facts Related to Section 15 U.S.C. §13(a) Defenses***

60.     There are no substantial differences between the costs to Chrysler of selling and delivering Vehicles to Plaintiff compared to any of the other Competing Dealers.

61.     Chrysler has no competitors in selling Vehicles to Plaintiff or to any of the Competing Dealers.

### COUNT I - VIOLATION OF 15 U.S.C. § 13(a) (ROBINSON-PATMAN ACT)

62.     Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 61 of this Complaint as if fully set forth herein.

63.     At all times relevant to this action, Plaintiff and Chrysler were, and are, persons engaged in commerce within the meaning of 15 U.S.C. §13(a) of the Robinson-Patman Act ("Act").

64.     At all times relevant to this action, Chrysler has, in its regular course of commerce, sold Vehicles to Plaintiff for resale under the brand names Chrysler, Dodge, Jeep and Ram (CJDR).

65.     At all times relevant to this action, Chrysler has, in its regular course of commerce, sold Vehicles to the Competing Dealers in sales that are contemporaneous to, and involve Vehicles of like grade and quality to the Vehicles involved in, Chrysler's sales to Plaintiff.

**PLAINTIFF MATHEW ENTERPRISE, INC., COMPLAINT FOR VIOLATION OF THE 15 U.S.C. § 13**

66.   Since July 2012, Chrysler has sold the Vehicles to the Favored Competing Dealers (including, on information and belief, Fremont CJDR and San Leandro CJDR) at net wholesale prices that are substantially lower than the net wholesale prices paid by Plaintiff for Vehicles of like grade and quality in contemporaneous sales by Chrysler. These price differences have resulted from the Vehicle Subsidies described above in paragraphs 16 through 36 of this Complaint.

67.   Since December 2010, Chrysler has also sold Vehicles of like grade and quality to the Vehicles it sells to Plaintiff to at least one of the Competing Dealers - San Leandro CJDR - at a lower net wholesale price than that paid to Chrysler for such Vehicles by the Plaintiff in contemporaneous sales, as a result of the Vehicle Subsidies described above in paragraphs 37 through 47 of this Complaint.

68.   As a result of the price differences referenced in the immediately preceding two paragraphs of this Complaint, Chrysler has, in the course of commerce, discriminated in price in contemporaneous and consummated sales of commodities (i.e., Vehicles) of like grade and quality to different purchasers (i.e., Plaintiff and the Favored Competing Dealers, including Fremont CJDR and San Leandro CJDR).

69.   On information and belief, the Favored Competing Dealers have used their pricing advantage to impair Plaintiff's ability to compete by reducing their retail prices to a level below the price at which Plaintiff, by not having the same price advantage, can sell the Vehicles and still make a reasonable profit from the sale.

70.   The effect of such price discrimination may be substantially to lessen competition in the resale of Vehicles to retail purchasers in Northern California by, among other things, preventing Plaintiff from competing as aggressively with regard to price against the Favored Competing Dealers

PLAINTIFF MATHEW ENTERPRISE, INC., COMPLAINT FOR VIOLATION OF THE 15 U.S.C. § 13

for such sales as it could if Plaintiff paid the same net wholesale prices for Vehicles as the Favored Competing Dealers.

71.     The above-alleged price discrimination has been substantial and, so far, has been sustained for a period of (a) over one year with respect to the discrimination created by the Vehicle Subsidies described above in paragraphs 16 through 36 of this Complaint and (b) almost three years with respect to the discrimination created by the Vehicle Subsidies described above in paragraphs 37 through 47 of this Complaint.

72.     The above-alleged price discrimination which amounts at least a $700 per Vehicle net price reduction to the Favored Competing Dealers compared to Plaintiff influences resale prices for the Vehicles because net price differences of these amounts represent at least 70% of the normal gross profit per unit sold that a CJDR Dealer receives in selling Vehicles.

73.     Chrysler's above-alleged price discrimination violates 15 U.S.C. §13(a) of the Robinson-Patman Act.

74.     As a direct result of Chrysler's violation of 15 U.S.C. §13(a), Plaintiff has sustained injury to its business and property in the form of, *inter alia*, lost retail sales of Vehicles and related finance and insurance ("F&I") products, lost profits from Vehicle sales, lost profits from resale of used vehicles which would have been taken in trade on the lost Vehicle sales, loss of customer goodwill, lost potential future sales of Vehicles to repeat customers, and lost profits from warranty and nonwarranty sales of service and parts for Vehicle owners who tend to have their Vehicles serviced at the same dealership where they were purchased.

### COUNT II - VIOLATION OF 15 U.S.C. §§ 13(d) and/or (e) (ROBINSON-PATMAN ACT)

75.     Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 74 of this Complaint as if fully set forth herein.

76.     In the alternative to Count I, and to the extent the Vehicle Subsidies described above in paragraphs 16 through 36 of this Complaint and/or the Vehicle Subsidies described above in paragraphs 37 through 47 of this Complaint are determined to be advertising or promotional assistance or payments for services or facilities in connection with the resale of the Vehicles, instead of reductions in the net wholesale prices paid for the Vehicles, such Vehicle Subsidies violate 15 U.S.C. §§ 13(d) and/or (e) of the Robinson-Patman Act because such Vehicle Subsidies are being provided to the Favored Competing Dealers without being made available to Plaintiff on proportionally equal terms.

77.     As a direct result of Chrysler's violation of 15 U.S.C. §§ 13(d) and/or (e), Plaintiff has sustained injury to its business and property in the form of, *inter alia*, lost retail sales of Vehicles and related finance and insurance ("F&I") products, lost profits from Vehicle sales, lost profits from resale of used vehicles would have been taken in trade on the lost Vehicle sales, loss of customer goodwill, lost potential future sales of Vehicles to repeat customers, and lost profits from warranty and nonwarranty sales of service and parts for Vehicle owners who tend to have their Vehicles serviced at the same dealership where they were purchased.

### COUNT III - VIOLATION OF SECTION 11713.3(a) OF THE CALIFORNIA CODE

78.     Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 77 of this Complaint as if fully set forth herein.

79.     Plaintiff is a licensed motor vehicle dealer in the state of California and qualifies as a licensee as that term is used in Section 11726 of the California Code.

80.     Chrysler is a licensed motor vehicle manufacturer and/or distributor in the state of California and qualifies as a licensee as that term is used in Section 11726 of the California Code.

81.     Section 11713.3(a) of the California Code makes it unlawful and a violation of the Code for Chrysler, as a motor vehicle manufacturer and/or distributor doing business in the state of California, to refuse or fail to deliver Vehicles to Plaintiff "in reasonable quantities."

82.     By failing to make available to Plaintiff a sufficient number of Vehicles in the appropriate mix of models that Plaintiff needs to meet the monthly objectives established by Chrysler as a prerequisite for Plaintiff to receive the Vehicle Subsidies described above in paragraphs 16 through 36 of this Complaint, Chrysler has failed to deliver Vehicles to Plaintiff "in reasonable quantities" and, therefore, has failed to comply with Section 11713.3(a).

83.     Chrysler's failure to comply with Section 11713.3(a) is willful.

84.     Chrysler's willful failure to comply with Section 11713.3(a) has caused Plaintiff to suffer pecuniary loss in a presently undetermined amount.

## COUNT IV - BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING

85.     Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 82 of this Complaint as if fully set forth herein.

86.     Chrysler and Plaintiff are parties to Sales and Service Agreements ("Dealer Agreements") for the Chrysler, Jeep, Dodge, and Ram brands of Vehicles.

87.     Chrysler has an implied duty of good faith and fair dealing under the Dealer Agreements to perform under those agreements in a way that will not defeat the reasonable expectations of Plaintiff in entering into the agreements.

88.     Chrysler has breached its implied duty of good faith and fair dealing to Plaintiff under the Dealer Agreements by establishing unreasonable monthly objectives that Plaintiff needs to achieve in order to receive the Vehicle Subsidies described above in paragraphs 16 through 36 of this Complaint, by making such Vehicle Subsidies functionally unavailable to Plaintiff while providing

PLAINTIFF MATHEW ENTERPRISE, INC., COMPLAINT FOR VIOLATION OF THE 15 U.S.C. § 13

them to the Favored Competing Dealers and by making Vehicle Subsidies in the form of rent reductions available to San Leandro CJDR without making them also available to Plaintiff.

89.     Chrysler's breach of its implied duty of good faith and fair dealing under the Dealer Agreement has caused Plaintiff to suffer pecuniary loss in a presently undetermined amount.

WHEREFORE, Mathew Enterprise, Inc., d/b/a Stevens Creek Chrysler Jeep Dodge Ram respectfully requests that judgment be entered against Chrysler Group, LLC, granting Mathew Enterprise, Inc., the following relief:

A. Pursuant to 15 U.S.C. §15(a), treble the damages that are shown to have been sustained by it by reason of Chrysler Group, LLC's above-alleged violations of 15 U.S.C. §§ 13(a), 13(d) and/or 13(e), plus interest, and including a reasonable attorney's fee.

B. Enjoining Chrysler Group, LLC, from continuing any violations of 15 U.S.C. §§ 13(a), 13(d) and/or 13(e) that are shown to be or threatened to be continued in the absence of such injunctive relief.

C. Pursuant to Vehicle Code Section 11726, damages caused by Chrysler's willful failure to comply with Section 11713.3(a) and reasonable attorney fees.

D. Damages caused by Chrysler's breach of its implied duty of good faith and fair dealing.

E. Granting Mathew Enterprise, Inc., such other relief as the court deems just and reasonable.

Respectfully submitted,

DATED: September 12, 2013                    By: _____

Ali Kamarei, Esq.
Michael Flanagan, Esq.
Paul Norman, Esq.
Attorneys for Plaintiff Mathew Enterprise, Inc.

PLAINTIFF MATHEW ENTERPRISE, INC., COMPLAINT FOR VIOLATION OF THE 15 U.S.C. § 13