UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MATHEW ENTERPRISE, INC., <br> Plaintiff, <br> v. <br> CHRYSLER GROUP LLC, <br> Defendant. | Case No. 13-cv-04236-BLF <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** <br><br> [Re: ECF No. 23] |

Before the Court is Defendant Chrysler Group LLC's ("Defendant" or "Chrysler") Motion to Dismiss Plaintiff Mathew Enterprise, Inc.'s ("Plaintiff" or "Stevens Creek") Complaint. (ECF 23) Plaintiff, a franchise automobile dealer that sells cars manufactured by the Chrysler, Jeep, Dodge, and Ram ("CJDR") brands, brings the above-captioned suit against Defendant for violations of the Robinson-Patman Act, 15 U.S.C. § 13, alleging two forms of price discrimination: first, discrimination with regard to sales incentive programs employed by Chrysler, termed "volume growth" incentives, that reward franchise dealers who meet or exceed monthly sales objectives established by Chrysler; and second, "disguised price discounts" related to favorable rent terms offered to competing dealers but not offered to Plaintiff. In addition, Plaintiff alleges violations of California Vehicle Code 11713.3(a) with regard to Defendant's fulfilment of Plaintiff's vehicle orders, and breach of the common law implied covenant of good faith and fair dealing. Defendant moves to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6).

After reviewing the parties' briefing, oral argument, and the relevant case law, the Court GRANTS IN PART AND DENIES IN PART Defendant's Motion to Dismiss.

# I. BACKGROUND

## A. Procedural History

Plaintiff filed its Complaint on September 12, 2013, alleging four causes of action and seeking damages, including treble damages, and injunctive relief. (ECF 1) Defendant filed a Motion to Dismiss all counts under Rule 12(b)(6) on November 12, 2013. (ECF 23) Plaintiff responded on December 13, 2013. (ECF 32) Defendant replied on January 10, 2014. (ECF 33)

## B. Factual Allegations of the Complaint

Plaintiff is a California corporation that sells new cars and trucks, including vehicles manufactured under the CJDR brands. (Compl., ECF 1 ¶¶ 1, 9) Plaintiff is a franchised CJDR dealer, and purchases new vehicles directly from Defendant, a Delaware corporation with its principal place of business in Michigan. (ECF ¶¶ 2, 11) Defendant sells at least some of these vehicles in interstate commerce to other franchise dealers throughout the United States, (*id.* ¶ 10), including to, for purposes of this action, two other dealers located in Northern California. (*Id.* ¶ 14)

Plaintiff's relationship with Defendant is fairly straightforward. Plaintiff purchases vehicles directly from Defendant, and pays Defendant an "invoice price" for each vehicle. (ECF 1 ¶ 17) This invoice price is the same price paid by other CJDR dealers. (*Id.*) However, Defendant provides its dealers with the opportunity to earn so-called "volume growth" incentives, which function as a subsidy that amounts to roughly $700 per vehicle sold by a qualifying dealer. (*Id.* ¶¶ 18, 27, 33) A franchise dealer qualifies to receive volume growth incentives based on a sales objective established by Defendant. (*Id.* ¶ 19) These objectives, as alleged by Plaintiff, are "based largely on that dealer's past sales history." (*Id.*)

In December 2010, Defendant established a second CDJR dealer in the San Francisco Bay Area, California Superstores San Leandro CDJR ("San Leandro"), which Plaintiff describes as a "competing dealer." (ECF 1 ¶ 21) Plaintiff alleges that San Leandro draws its customers from the same geographic pool as Plaintiff. (*Id.*) Plaintiff alleges that its sales decreased upon the establishment of San Leandro, (*id.* ¶¶ 22-23), and that Defendant failed to adjust its formula by which Plaintiff could qualify for volume growth incentives in recognition of this additional

2

competitor in Plaintiff's market. (*Id.* ¶¶ 23-25) Plaintiff's sales objectives continued to be based on its past year's sales without consideration of the reduction of sales expected due to the addition of San Leandro into its geographic market. (*Id.* ¶¶ 22-23) This resulted in Plaintiff failing to qualify for volume growth incentives for four months, from December 2010 through March 2011. (*Id.* ¶ 25) During the same time period, San Leandro was provided "much lower monthly objectives," and thus met its sales objectives and received the subsidy. (*Id.* ¶ 25)

Plaintiff alleges that it once again began to qualify for volume growth incentives in July 2011, after Defendant "adjusted Plaintiff's monthly objectives . . . to account for the addition of San Leandro CJDR to Plaintiff's market." (ECF 1 ¶ 27) Plaintiff claims that it qualified for volume growth incentives for every month between July 2011 and June 2012, excepting April 2012, following Defendant's readjustment of its sales objectives. (*Id.*) During this time period, Plaintiff received over $1.1 million in vehicle sales incentives. (*Id.*) However, in July 2012, a third CDJR franchise dealer was established in Plaintiff's geographic region, Fremont CDJR ("Fremont"), which Plaintiff alleges caused its sales to again "significantly decrease" due to Fremont's close proximity – roughly fourteen miles – to Plaintiff. (*Id.* ¶¶ 29-30) Plaintiff alleges that Defendant again made no alterations to Plaintiff's monthly sales objectives to account for the additional regional competition, which caused Plaintiff to fail to qualify for vehicle growth incentives for twelve months, from July 2012 through June 2013. (*Id.* ¶¶ 33-34) During that period, Plaintiff's sales and subsidies declined as compared to its sales and subsidies during the preceding year when it obtained the adjusted objectives. (*Id.* ¶ 34) Plaintiff further details the effect of alleged unlawful conduct during the relevant time period (July 2012 to June 2013) as follows: During the twelve months preceding the relevant time period, when both Plaintiff and San Leandro received sales incentives, Plaintiff averaged 131 vehicle sales per month while San Leandro averaged 71. (*Id*. ¶¶ 57-58)  During the relevant time period, when Plaintiff no longer qualified for the incentive payments, its sales declined to 88 per month while San Leandro's increased to 93. (*Id.* ¶¶ 57-59) In both periods for which Plaintiff failed to qualify for subsidies, Plaintiff alleges that the subsidies were "functionally unavailable" to it. (*Id.* ¶¶ 25, 32)

In addition to its allegations with regard to volume growth incentives, Plaintiff further

3

alleges that Defendant provided "disguised reductions in the net prices [of vehicles]" to San Leandro in the form of below-market rent subsidies, which were not also provided to Plaintiff. (ECF 1 ¶¶ 45-46) Plaintiff also claims that Defendant failed to provide it vehicles in "reasonable quantities . . . [of] the appropriate mix or models" necessary to hit its sales targets. (*Id.* ¶¶ 81-82)

Based on these facts, Plaintiff asserts four causes of action: (1) violations of Section 2(a) of the Robinson-Patman Act, 15 U.S.C. § 13(a), for price discrimination based on the provision of vehicle subsidies and below-market rental subsidies; (2) violations of Sections 2(d) and 2(e) of the Robinson-Patman Act for price discrimination; (3) violations of California Vehicle Code § 11713.3(a) for the willful failure to deliver Plaintiff vehicles in "reasonable quantities"; and (4) breach of the implied duty of good fair and fair dealing. Plaintiff seeks relief in the form of damages, including treble damages, injunctive relief, and reasonable attorneys' fees. (ECF 1 at 21)

## II. LEGAL STANDARDS

### A. Rule 12(b)(6)

Defendant brings its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Such a motion tests the legal sufficiency of the claims alleged in a complaint. *Ileto v. Glock, Inc.,* 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Dismissal under Rule 12(b)(6) may be based either "on the lack of a cognizable legal theory or the absence of sufficient facts alleged." *Balistreri v. Pacifica Police Dept.*, 901 F. 2d 696, 699 (9th Cir. 1988)

To survive a motion to dismiss, a complaint must plead sufficient "factual matter, accepted as true" to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The emphasis is on factual pleadings, as a pleading that offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement" will not do. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

In assessing the sufficiency of a plaintiff's pleadings, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The plausibility standard "asks for more than a sheer

4

1   possibility that a defendant has acted unlawfully," and a complaint that pleads facts that are
2   "merely consistent with" a defendant's liability "stops short of the line between possibility and
3   plausibility." *Iqbal*, 556 U.S. 662, 678 (internal quotations omitted).
4    Under Rule 8(a)(2) of the Federal Rules, a complaint must include "a short and plain
5   statement of the claim showing that the pleader is entitled to relief." Any complaint that fails to
6   meet this standard can be dismissed pursuant to Rule 12(b)(6) for "failure to state a claim upon
7   which relief can be granted."
8    In the Ninth Circuit, when a Court is faced with "two alternative explanations" for a cause
9   of action, "one advanced by defendant and the other advanced by plaintiff, *both of which are*
10  *plausible*, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*,
11  652 F.3d 1202, 1216 (9th Cir. 2011) (emphasis added). It is not sufficient for a defendant to argue
12  that its explanation of events is more likely than that proffered by plaintiff; rather, "[p]laintiff's
13  complaint may be dismissed only when defendant's plausible alternative explanation is so
14  convincing that plaintiff's explanation is *im*plausible." *Id.* (emphasis in original); *see also Iqbal*,
15  556 U.S. 662, 678 (demanding that a plaintiff plead facts to show his claim is "plausible on its
16  face").
17   **B.** **Leave to Amend**
18   A court should freely grant leave to amend a complaint "when justice so requires." Fed. R.
19  Civ. P. 15(a); *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) ("[T]he
20  purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or
21  technicalities."). The Court may deny leave to amend, however, for a number of reasons, including
22  "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure
23  deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue
24  of allowance of the amendment, [and] *futility of amendment*." *Eminence Capital, LLC v. Aspeon,*
25  *Inc.*, 316 F.3d 1048, 1052 (2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962) (emphasis
26  added)).

5

### III. DISCUSSION

#### A. Claims under the Robinson-Patman Act

The Robinson-Patman Act "generally makes it unlawful for a wholesaler to discriminate in price between different purchasers of similar commodities." *Portland 76 Auto/Truck Plaza, Inc. v. Union Oil Co. (Portland 76)*, 153 F.3d 938, 941 (9th Cir. 1998). The Supreme Court has described the Act's purpose as "to curb the use by financially powerful corporations of localized price-cutting tactics which had gravely impaired the competitive position of other sellers," *FTC v. Anheuser-Busch, Inc.*, 363 U.S. 536, 543 (1960), and to ensure that "businessmen at the same functional level . . . start out on equal competitive footing so far as price is concerned." *FTC v. Sun Oil Co.*, 371 U.S. 505, 520 (1963).

Robinson-Patman, however, does not "ban all price differences charged to different purchasers of commodities of like grade and quality." *Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc. (Volvo)*, 546 U.S. 164, 176 (2006) (citing *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 220 (1993)). Reading the Act in its historical context, the Supreme Court has held that it bars "price discrimination only to the extent that it threatens to injure competition." *Id.* "We would resist interpretation [of Robinson-Patman] geared more toward the protection of existing competitors than to the stimulation of competition." *Volvo*, 546 U.S. 164, 181 ("[W]e continue to construe the Act consistently with broader policies of the antitrust laws.").

Section 2(a) of the Robinson-Patman Act precludes a seller from discriminating in price between two customers when that discrimination leads to a reasonable possibility that competition will be adversely affected. *See, e.g.*, *FTC v. Morton Salt Co.*, 334 U.S. 37, 43-44 (1948). Section 2(a) claims can take three forms: primary-line cases, which involve competition between a seller and its direct competitors; secondary-line cases, which involve competition among the seller's customers; and tertiary-line cases, which involve competition among the purchaser's customers. *See, e.g.*, *Texaco, Inc. v. Hasbrouck*, 496 U.S. 543, 558 n.15 (1990). As Plaintiff complains about competition between itself and other franchise dealers – all Chrysler customers – it is pleading a secondary-line case.

To state a claim for a secondary-line injury, a plaintiff must plead sufficient facts to show

6

four elements: (1) the relevant sales were made in interstate commerce; (2) the products were of like grade and quality; (3) the seller discriminated in price between the Plaintiff and another purchaser of the same products; and (4) that the effect of that price discrimination was to injure, destroy, or prevent competition to the advantage of a favored purchaser. *See, e.g.*, *Volvo*, 546 U.S. 164, 176.[1]

Read in this context, the Court considers in turn Plaintiff's two allegations under the Robinson-Patman Act: (1) claims that Chrysler's vehicle subsidies, specifically the volume growth incentives, were price discriminatory as applied to Plaintiff, and (2) claims that the rent subsidies provided by Chrysler to one of Plaintiff's competitors were price discriminatory toward Plaintiff.

### 1.  *Claims Related to Vehicle Volume Growth Incentives*

Defendant moves to dismiss on the ground that Plaintiff has not pleaded sufficient facts to meet the third and fourth elements outlined by the Supreme Court in *Volvo*. Defendant's argument is two-fold: first, that Plaintiff has not sufficiently alleged that the vehicle incentives in question were "functionally unavailable" to it, thus failing to show price discrimination; and second, that Plaintiff has not shown a "significant price reduction over a substantial period of time," thereby failing to show an adverse effect on competition. (Mot. to Dismiss, ECF 23 at 10 (citing *Volvo*, 546 U.S. 164, 177)) The Court disagrees, and DENIES the Motion to Dismiss with regard to Plaintiff's Section 2(a) claims regarding the volume growth incentive program.

#### a.  *Functional Unavailability*

The Robinson-Patman Act does not prohibit manufacturers from utilizing promotional arrangements or other incentive-based sales programs. *Smith Wholesale Co. v. R.J. Reynolds Tobacco Co. (Smith Wholesale)*, 477 F.3d 854, 866 (2007) ("[A m]anufacturer may utilize promotional arrangements and provide financial incentives to favor its product . . . [which] will lead to different outcomes for different purchasers"). In interpreting the anti-competitive effects of such promotional programs, courts have focused on the question of "functional availability," which requires that price incentives be "available to all purchasers, not only in theory but in fact."

---

[1] Defendant does not contest that Plaintiff has adequately pleaded the first or second *Volvo* elements.

7

*FLM Collision Parts, Inc. v. Ford Motor Co. (FLM Collision)*, 543 F.2d 1019, 1025-26 (2d Cir. 1976). Functional availability is "a judicial graft on §2(a) and is not explicitly embodied in the text of the statute." *Precision Printing Co., Inc. v. Unisource Worldwide, Inc.*, 993 F. Supp. 338, 350 (W.D. Pa. 1998). It is a fact-specific doctrine, which requires an evaluation of "actual market realities . . . [focusing] on the particular facts disclosed by the record." *Smith Wholesale*, 477 F.3d 854, 864 (6th Cir. 2007) (citing *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 466-67 (1992)). Defendant states that a program is functionally unavailable only "if it is not reasonably applied in an even-handed manner." (Mot. to Dismiss, ECF 23 at 11 (emphasis added))

Plaintiff and Defendant dispute whether or not functional unavailability is an element of the Plaintiff's prima facie case, or, instead, an affirmative defense to Section 2(a). Both sides agree that the Ninth Circuit has not yet decided this question. For purposes of this Motion to Dismiss, the Court believes that a determination on this question would be premature, because it is immaterial to the Court's Order on the Motion. If functional availability is an affirmative defense, it is irrelevant for purposes of surviving the pleading requirements of the Motion to Dismiss. If, instead, it is a part of Plaintiff's prima facie case, the Court agrees with Plaintiff that it has adequately alleged sufficient facts in its Complaint to plead functional unavailability.

Plaintiff claims that the volume growth incentives program was not available to it because Chrysler failed to adjust Plaintiff's sales formula in recognition of new competition within its geographic region, and because Chrysler failed to allocate it an appropriate mix of vehicles necessary to meet its sales objectives. (ECF 1 ¶¶ 22, 29, 31) Defendant's incentive program could not be applied in an even-handed manner, Plaintiff alleges, because its formula as applied to Plaintiff took into account Plaintiff's prior year sales, while the formulas put in place for the San Leandro and Fremont dealerships did not, because neither new dealer had prior-year sales. (*Id.* ¶ 35; Resp. to Mot. to Dismiss, ECF 32 at 9 ("[The competing dealers'] Objectives could not have been set using the same methodology that Chrysler used in setting Stevens Creek's Objectives.")). Plaintiff alleges that this inequality of treatment led to Fremont receiving vehicle subsidies during July 2012, despite selling only sixty vehicles, while Plaintiff failed to receive incentives, despite selling 130 vehicles. (ECF 1 ¶ 36)

8

Based on the foregoing, the Court finds that Plaintiff has alleged sufficient facts to support the third element necessary to pleading a violation of the Robinson-Patman Act to survive a Rule 12(b)(6) motion to dismiss. Plaintiff has alleged that it did not qualify for the incentive program during two time periods: one lasting four months, and the other lasting twelve months. (ECF 1 ¶¶ 25, 31) It has alleged that the program was not applied in an even-handed manner, as a competing car dealership, Fremont, qualified for the incentive program despite lower sales, and that the formulas used to determine qualifications for the growth incentives program were different – Plaintiff's was based on prior-year sales, while Fremont's was based on some other, as-yet-unknown metrics. (*Id.* ¶ 35) Thus, Plaintiff's allegations meet the requirement to plead such incentives were available to it in theory, but not in fact. *Cf. FLM Collision*, 543 F.2d 1019, 1026.

Defendant further argues that quotas based on a prior year's sales history cannot violate the Robinson-Patman Act, citing *Rod Baxter Imports v. Saab-Scania of America.* In *Rod Baxter Imports*, however, all dealers qualified for an incentive program based upon their prior three-month sales history. *Rod Baxter Imports*, 489 F. Supp. 245, 249 (D. Minn. 1980). The Plaintiff in *Rod Baxter Imports* argued merely that the use of that *particular* time period left the dealer at a competitive disadvantage. *Id.* This is not the case in Plaintiff's instant Complaint: the incentive qualification formulas were allegedly different for the newly opened dealers than they were for Plaintiff because the new dealers did not have a "prior year" on which to base their sales quotas.

In its Motion to Dismiss, Defendant insists that since any one dealer's sales formula is based on their prior year sales, it cannot be "inherently biased against . . . any class of dealers." (Mot. to Dismiss, ECF 23 at 13) Essentially, however, Plaintiff is alleging that Chrysler has set up its newly opened dealers as a class of "favored purchasers," subject to lower sales incentive qualifications requirements during their first year in business, while at the same time imposing more onerous sales objectives on its pre-existing dealerships, thus creating a class of "disfavored purchasers." (*See, e.g.*, Resp. to Mot. to Dismiss, ECF 32 at 17-20) Based on these allegations, the court is satisfied that Plaintiff has pleaded sufficient facts to allege that the volume growth incentives offered by Chrysler were functionally unavailable to it during the time period for which it did not qualify for such incentives.

### b. Effect on Competition

Even if Plaintiff sufficiently pleads functional unavailability, an incentive program can only violate the Robinson-Patman Act if it is likely to substantially limit, injure, destroy, or prevent competition. *Smith Wholesale*, 477 F.3d 854, 862. To state a claim for such an adverse effect on competition, Plaintiff can allege facts showing direct evidence of diversion of sales or profits from a disfavored purchaser to a favored purchaser caused by price discrimination. *Volvo Trucks, North America v. Reeder-Simco GMC, Inc.* 546 U.S. 164, 177 (citing *Fall City Industries, Inc. v. Vanco Beverages, Inc.* 460 U.S. 428, 437-38). Alternatively, Plaintiff may allege that a favored competitor received "a significant price reduction over a substantial period of time" to support a permissible inference of competitive injury. *Volvo*, 546 U.S. 164, 177 (citing *FTC v. Morton Salt Co.*, 334 U.S. 37 (1948)).

Applying these requirements to this case, Plaintiff alleges that volume growth incentives are worth approximately $700 per vehicle. (ECF 1 ¶ 33) In the year prior to the opening of the Fremont dealership, Plaintiff received just over $1.1 million in volume growth incentives. (*Id.* ¶ 34) In the year following Fremont's opening, Plaintiff received only $26,200 in such incentives. (*Id.*) Plaintiff further alleges that it is engaged in substantial price competition with its competing dealers, Fremont and San Leandro, and that a disadvantage of $700 in the price of a vehicle has a significant effect on sales and profits, because vehicle profit margins average about three percent. (*Id.* ¶¶ 50-51) When its competing dealers are able to reap the benefits of the volume growth incentives, Plaintiffs avers, it cannot effectively compete against them in the market. (*Id.* ¶ 52)

Plaintiff further alleges facts showing that its sales decreased significantly during the time period that it did not qualify for the $700 per vehicle subsidy, and the concomitant sales increase of the alleged favored dealers who did reap the benefits of the subsidy. (*Id*. ¶¶ 57-59)

Defendant argues that Plaintiff has failed to plead facts to show that the alleged price discrimination caused a diversion in sales from Plaintiff, the disfavored competitor, to San Leandro and Fremont, the favored competitors. The Court, however, agrees with Plaintiff's argument. The Complaint alleges facts showing the effect on sales with and without the benefit to Plaintiff of qualifying for the sales incentive program. Moreover, Plaintiff further demonstrates

10

1  that without the benefit of the subsidies its monthly sales declined, while San Leandro's sales
2  increased during the same period when it reaped the benefits of the incentive program. From these
3  factual allegations, the Court finds Plaintiff's allegation of diverted sales to be plausible. Although
4  Plaintiff acknowledges that other factors contributed to its declining sales, such as increased
5  competition and geographic convenience to customers, those other factors are not *more plausible*
6  than Plaintiff's allegations of diverted sales. Under the pleading requirements set forth by the
7  Supreme Court in *Twombly* and *Iqbal,* Plaintiff is not required to disprove Defendant's
8  explanations nor is it required to demonstrate a probability of success. *Iqbal*, 556 U.S. 662, 678.
9  Based on the foregoing, the court is satisfied that Plaintiff has met its pleading burden to plead
10 facts that would demonstrate diverted sales.

11 Defendant further argues that the claim should be dismissed because Plaintiff has not
12 alleged facts to demonstrate substantial injury over any significant period of time. Defendant
13 argues that Plaintiff misconstrues its pleading requirements to trigger the *Morton Salt* presumption
14 after *Volvo*, (Reply at 14-15), Defendant argues that "[n]o such inference is permitted unless 'the
15 alleged discrimination was substantial.'" *Volvo*, 546 U.S. 164,180.

16 Defendant's argument is unpersuasive. Plaintiff has pleaded two time periods, four months
17 from December 2010 through March 2011, and twelve months from July 2012 through June 2013,
18 in which the subsidies were functionally unavailable. The Court is not willing to state that, as a
19 matter of law, pleading sixteen months of injury is insufficient to plead a "significant period of
20 time," given that courts in other circuits have found periods of time between one year and two
21 years sufficient to meet the significance requirement. *See, e.g.*, *J.F. Feeser, Inc. v. Serv-a-Portion,*
22 *Inc.*, 909 F.2d 1524, 1539 (3d Cir. 1990) (one year of price discrimination); *Coastal Fuels, Inc. v.*
23 *Caribbean Petro. Corp.*, 79 F.3d 182, 193 (1st Cir. 1996) (eighteen months of price
24 discrimination); *Rose Confections Inc. v. Ambrosia Chocolate Co.*, 816 F.2d 381, 385 (8th Cir.
25 1987) (two years of price discrimination). Further, Plaintiff alleges that a $700 price difference
26 due to the vehicle incentives is a significant one, particularly given the low profit margin, roughly
27 three percent, that franchise dealers make on automobiles. (ECF 1 ¶¶ 51-52)

28 Thus, in addition to pleading sufficient facts to show diversion of sales due to price

11

1 discrimination, the Court is satisfied that Plaintiff has pleaded sufficient facts to trigger the *Morton Salt* inference of injury to competition due to Defendant's implementation of its volume growth incentive program.

Defendant's Motion to Dismiss Plaintiff's claims under the Robinson-Patman Act for price discrimination with regard to the volume growth incentive program is therefore DENIED.

### 2. *Claims Relating to Rental Subsidies*[2]

Plaintiff further claims that Chrysler has provided favorable rent concessions to its competitor, the San Leandro dealership. (ECF 1 ¶¶ 38-48). Plaintiff alleges that the San Leandro dealership is owned by Ytransport, LLC ("York Capital"), a hedge fund that also operates other CJDR dealerships throughout California. (*Id.* ¶¶ 39-41) Plaintiff believes that Chrysler provides favorable lease terms to York Capital-owned dealerships, "in the form of below-market rent," when those dealerships lease property directly from Chrysler. (*Id.* ¶ 42) These rent terms, Plaintiff argues, are actually "disguised reductions in the net prices that San Leandro CJDR pays for Vehicles purchased from Chrysler," (*id.* ¶ 45), which provide San Leandro a further advantage over Plaintiff in the prices it can charge customers for the same vehicle. (*Id.* ¶ 48)

Defendant moves to dismiss Plaintiff's claims for two reasons. First, Defendant argues that real estate agreements are not covered by the terms of the Robinson-Patman Act. Second, Defendant argues that, if rental agreements are included within the ambit of Robinson-Patman, that Plaintiff has not pleaded sufficient facts to allege that the rental agreement is in fact a vehicle discount in disguise.

Defendant argues that a rental agreement cannot be considered a commodity under the Robison-Patman Act, citing *TV Signal Co. of Aberdeen v. Am. Tel. & Tel. Co.*, 462 F.2d 1256, 1259 (8th Cir. 1972) ("[A] real estate transaction . . . is not a commodity within Robinson-

---

[2] In its Complaint, Plaintiff alleges that these rental subsidies violate sections 2(a), 2(d), and 2(e) of the Robinson-Patman Act. (*See* Compl., ECF 1 ¶¶ 38-48) However, in its Response to the Motion to Dismiss, Plaintiff only re-asserts its rental subsidies claim under Section 2(a). (Resp. to Mot. to Dismiss, ECF 32 at 26 ("Section 2(a) deals with price discrimination in the original sale to the purchaser, whereas sections 2(d) and (e) address the purchaser's subsequent resale of the product.") (emphasis in original)). In light of this concession, the Court only considers Plaintiff's claims under Section 2(a).

1  Patman."); *see also Portland 76*, 153 F.3d 938, 942 (9th Cir. 1998) ("[Reading the Robinson-
2  Patman Act] to include leaseholds, however, would put us in conflict with the other circuits who
3  have considered the question."). Plaintiff cites no case law from this Circuit, and the Court is
4  aware of none, that has held a real estate transaction to fall within the ambit of the Act.

5        Plaintiff argues, in response, that the rental agreement is actually a "disguised price
6  discount," which lowers the prices that San Leandro paid Chrysler for vehicles. (ECF 32 at 26) To
7  support its argument, Plaintiff cites only *Bargain Car Wash v. Standard Oil*, in which the Seventh
8  Circuit held that a seller who provided certain favored franchise dealers with rental credits based
9  upon their net sales of gasoline was a "classic example of [price] discrimination." *Bargain Car
10 Wash*, 466 F.2d 1163, 1169 (7th Cir. 1972). The nature of the lease-back agreement, which
11 provided a discount to a favored seller based on the number of gallons of gasoline it sold, was
12 critical to the court's holding in *Bargain Car Wash*. *Id.* at 1169-70 ("[T]he lease-back is a mere
13 subterfuge and a classic example of discrimination. . . . This is a handsome kickback on [the
14 favored dealer's] 1,200,000 gallons pumped in 1968. . . .").

15       Plaintiff has not pleaded any facts, however, that would show that the San Leandro rental
16 agreement is in any way based on the *volume of cars sold* by the dealership. Instead, it has made a
17 general allegation that San Leandro has received below-market rent while Plaintiff has not
18 received similar rent benefits. (*See* ECF 1 ¶ 45 ("The Vehicle Subsidies that Chrysler provides
19 with respect to San Leandro CJDR are disguised reductions in the net prices that San Leandro
20 CJDR pays for Vehicles purchased from Chrysler."); *see generally id.* ¶¶ 38-48). Plaintiff has not
21 met its burden under *Twombly* or *Iqbal* to plead sufficient facts "that allow[] the court to draw the
22 reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S., 662,
23 678. Nowhere does Plaintiff allege that Defendant's rent terms change with regard to their net
24 sales. Plaintiff pleads no facts regarding the nature of the rental agreement whatsoever, only that it
25 is "below-market." (ECF 1 ¶ 42) Since the rental agreement itself cannot be considered a
26 "commodity" under Robinson-Patman, *see, e.g.*, *Portland 76*, 153 F.3d 158, 162, Plaintiff would
27 need to plead facts that permit the Court to infer that the rental agreement is in some way tied to
28 the volume of cars sold in order for the Court to find sufficient its "disguised discount" claims. *Cf.*

13

*Bargain Car Wash*, 466 F.2d 1163, 1169.

The Court therefore GRANTS Defendant's Motion to Dismiss with regard to Plaintiff's rent subsidy claims, but grants Plaintiff leave to amend in order to cure the pleading deficiencies outlined by the Court.

### B. Claims under Section 11713.3(a) of the California Vehicle Code for Failure to Deliver Reasonable Quantities of Vehicles Ordered

California Vehicle Code §11713.3(a) makes it unlawful for a dealer to fail to deliver, "in reasonable quantities and within a reasonable time after receipt of an order," vehicles that are covered under the franchise agreement and which have been "publicly advertised as being available for delivery or [were] actually being delivered." Cal. Veh. Code § 11713.3(a) (creating an exception when the causes for failure to deliver are outside of the distributor or manufacturer's control).

In order to adequately allege a violation of the statute, Plaintiff must plead facts to show four elements: (1) that it has placed an order with Chrysler, (2) for vehicles that were publicly advertised as being available for delivery, which (3) Chrysler failed to deliver, and (4) that Chrysler's failure to so deliver was unreasonable. *Cf. Colonial Dodge, Inc. v. Chrysler Corp.*, 11 F. Supp. 2d 737, 749-750 (D. Md. 1996) (discussing a similar test in a case alleging failure to deliver); *Deas v. PACCAR*, 775 F.2d 1498, 1507 (11th Cir. 1985) (adopting a three-part test, including these same four elements, in interpreting a failure to deliver claim).

Defendant argues that Plaintiff has failed to allege sufficient facts under this test. Plaintiff provides the Court with no alternative test, and instead states, concerning to the first and third factors, that "[w]ith regard to the 'order' and 'delivery' issues, Stevens Creek will show at trial that Chrysler's ordering and delivery system does not permit a dealer to order or receive delivery of Vehicles other than those Chrysler chooses to allocate to the dealer in the first instance." (Resp. to Mot. to Dismiss, ECF 32 at 28)

The Court agrees with Defendant. Plaintiff has failed to plead facts sufficient to show any of the four factors necessary to prove a claim under Section 11713.3(a). It does not allege that it placed an order for vehicles from Chrysler, or that the order was for a reasonable quantity of

publicly available vehicles. It also does not allege that Chrysler failed to deliver *any* order that was placed by Plaintiff. Plaintiff's Complaint merely consists of a cursory allegation that Chrysler "refuse[d] or fail[ed] to deliver Vehicles to Plaintiff 'in reasonable quantities.'" (ECF 1 ¶ 81)

Plaintiff's claim as styled does not seem to implicate Section 11713.3(a) whatsoever. Plaintiff seems to allege that Chrysler elects what vehicles to allocate to its franchise dealers, and that Plaintiff is unsatisfied with that mix of vehicles. (ECF 1 ¶ 82) Thereafter, Plaintiff states that Chrysler's failure to deliver an "appropriate mix" of vehicles, without ever describing what such a mix would be or how it differs from the mix Chrysler currently provides, is unreasonable because it prevents Plaintiff from meeting its monthly sales objectives for volume growth incentives. (*Id.*) For purposes of § 11713.3(a), however, Plaintiff must specifically plead that Chrysler has unreasonably failed to deliver an actual order placed by Plaintiff for cars that it has advertised as publicly available. It does not contemplate suit for general disagreement with Chrysler's process for vehicle allocation to its franchisees. Mere allegations that Plaintiff disagrees with the way in which Chrysler chooses to distribute vehicles to its franchisees is not sufficient to state a claim under § 11713.3(a) when the statute makes clear the specific elements that must be proven.

Plaintiff's claim under Section 11713.3(a) is therefore DISMISSED, with leave to amend to allege facts supporting the four elements outlined above.

### C. Claims for Breach of the Implied Duty of Good Faith and Fair Dealing

Defendant moves to dismiss Plaintiff's claim for violations of the implied duty of good faith and fair dealing, under the theory that it did not state a claim under California law. In response, Plaintiff argues that the claim is governed under Michigan law, because the "Sales and Service Agreement," on which Defendant relies in its Motion to Dismiss, elects to govern the contract pursuant to Michigan law. (*See* Handmaker Decl., ECF 23-1, Exh. A-B) Defendant does not dispute that it validly entered into the contract selecting Michigan law. (*See generally* Def.'s Reply, ECF 33) Accordingly, the Court will interpret the implied duty of good faith and fair dealing claim under Michigan law. *Cf. Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 466 (1992) (describing the Restatement (Second) Choice of Law Section 187, subdivision (2), which "reflect[s] a strong policy favoring enforcement of such [choice of law] provisions").

15

Michigan law does not recognize a general implied duty of good faith and fair dealing. *Fodale v. Waste Mgmt. of Mich., Inc.*, 718 N.W. 2d 827 (2006). However, such a duty can be recognized when "a party to a contract makes the manner of its performance a matter of its own discretion." *Burkhardt v. City Nat. Bank of Detroit*, 226 N.W. 2d 678, 681 (Mich. 1975) (implying a duty of good faith to a bank that has contractual discretion to establish an escrow fund for a mortgagor that was "sufficient" to pay the mortgagor's taxes and insurance, but that did not specify the dollar amount nor define "sufficiency"). This implied duty, however, is dependent on "the contractual obligations fixed by [and] emanating from the terms" of the contract. *Gen. Motors Corp. v. New A.C. Chevrolet, Inc. (Gen. Motors)*, 263 F.3d 296, 334 (2001). Further, such a duty will *not* be recognized when one party is vested with express authority with regard to a particular matter. *See, e.g.*, *Stephenson v. Allstate Ins. Co.,* 328 F.3d 822, 827 (6th Cir. 2003), ("[W]hen the parties have unmistakably expressed their respective rights . . . the covenant does not adhere."); *see also Clark Bros. Sales Co. v. Dana Corp.*, 77 F. Supp. 2d 837, 852 (E.D. Mich. 1999) ("The implied covenant *does not override* the express terms of the parties' contract.") Thus, Plaintiff needs to plead sufficient facts to show that Defendant lacks express authority *in the terms of the contract* to set Plaintiff's sales targets. If it shows this lack of authority, Plaintiff then must plead sufficient facts to show that Defendant has breached its duty.

Plaintiff alleges in its Complaint that Defendant has breached the implied duty of good faith and fair dealing "by establishing unreasonable monthly objectives . . . in order [for Plaintiff] to receive the Vehicle Subsidies . . . while providing them to the Favored Competing Dealers," (Compl., ECF 1 ¶ 88), and by "making Vehicle Subsidies in the form of rent reductions available to San Leandro CJDR without making them also available to Plaintiff." (*Id.*) In its briefing, Plaintiff alleges that Chrysler has "abused its discretion" in setting sales targets pursuant to the terms of the Sales and Service Agreement. (Resp. to Mot. to Dismiss, ECF 32 at 30)

Defendant offered additional argument under Michigan law in its Reply, asserting that Defendant was granted express authority, under the Sales and Service Agreement, to set Plaintiff's sales quotas, thus preventing the implied duty of good faith and fair dealing from attaching to the agreement under Michigan law. For this proposition, Defendant cites a Michigan state appellate

16

court decision, *Jacobson v. BH Associates*, which held that when "a contract expressly grants a party complete discretion with respect to particular matters, the covenant of good faith *will not be imposed* to restrict the exercise of that discretion and thereby override the contract." *Jacobson v. BH Associates Ltd. P'ship*, 2001 WL 738408, at *1 (Mich. Ct. App. June 29, 2001). Defendant argues that, since Plaintiff concedes that the contract vests in Defendant the express authority to determine whether to modify a dealer's sales targets, (Resp. to Mot. to Dismiss, ECF 32 at 30), Plaintiff's implied covenant claims are barred by law. The Sixth Circuit, in interpreting Michigan law, has "declined to ascribe a covenant of good faith and fair dealing in the interpretation of a contract 'to override express contract terms.'" *Stephenson*, 328 F.3d 822, 826.

The Court agrees with Defendant. The Sales and Service Agreement vests in Defendant the absolute express authority to determine and modify a dealer's sales targets. ("Sales and Service Agreement," Handmaker Decl., ECF 23-2 at 4 ("Upon DEALER's written request, [Chrysler] *may* adjust DEALER's Minimum Sales Responsibility, if appropriate in [Chrysler's] judgment . . . .") (emphasis added)) Plaintiff has not pled any facts that show Chrysler lacks complete authority in setting a given dealer's sales targets. *See Stephenson*, 328 F.3d 822, 827 ("[W]hen the parties have unmistakably expressed their respective rights . . . the covenant does not adhere.") Under the terms of the contract, Defendant could set Plaintiff's sales targets at zero vehicles, or one thousand vehicles, or any number that Defendant so chooses. The contract includes no window of numbers within which Defendant has discretion; it permits Defendant to choose to modify Plaintiff's sales targets as it sees fit. This differentiates the instant case from the situation considered by the Michigan Supreme Court in *Burkhardt.* 226 N.W. 2d 678, 680 (stating that the defendants had "a considerable amount of discretion in the evaluation of the sum necessary" for meeting its obligations under the agreement, but not *total* discretion, because the amount needed to "provide an adequate and available fund from which to pay taxes and insurance premiums"). In *Burkhardt*, the defendants' discretion was circumscribed based on this adequacy requirement. The Sales and Service Agreement contemplates no such limits on Defendant's authority to set sales quotas. Since the contract has exclusively granted Defendant full authority as to determinations of dealer sales targets, the covenant of good faith and fair dealing does not apply.

17

1  The Court thereby GRANTS Defendant's Motion to Dismiss with regard to Plaintiff's Implied Duty of Good Faith and Fair Dealing Claims. The Court grants this dismissal WITH PREJUDICE because, as a matter of Michigan law, the implied covenant of good faith and fair dealing cannot by applied to override the express terms of this contractual agreement between the parties. Thus, any amendment would be futile. *Cf. Foman v. Davis*, 371 U.S. 178, 182 (1962).

## IV. ORDER

The Court GRANTS IN PART and DENIES IN PART Defendant's Motion to Dismiss. The Court (1) DENIES Defendant's Motion with regard to Plaintiff's price discrimination claims regarding the volume growth incentive program; (2) GRANTS Defendant's Motion WITH LEAVE TO AMEND with regard to Plaintiff's rental subsidy claims and claims under the California Vehicle Code § 11713.3(a) for failure to deliver vehicles in reasonable quantities; and (3) GRANTS Defendant's Motion WITH PREJUDICE with regard to Plaintiff's implied covenant of good faith and fair dealing claim. Any amended complaint must be filed with this Court no later than August 1, 2014, twenty-one (21) days from the date this Order is issued.

**IT IS SO ORDERED.**

Dated: July 11, 2014

BETH LABSON FREEMAN
United States District Judge