Colin R. Kass, admitted *pro hac vice*
Scott M. Abeles, admitted *pro hac vice*
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2533
T: (202) 416-6800
F: (202) 416-6899
ckass@proskauer.com
sabeles@proskauer.com

(Additional counsel in signature block)

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ) | Case No. 13-cv-04236-BLF-PSG |
| ) | |
| **MATHEW ENTERPRISE, INC.,** ) | **Chrysler's Motion for Entry of a** |
| ) | **Protective Order** |
| Plaintiff, ) | |
| v. ) | Date:          January 6, 2015 |
| ) | Time:          10:00 am |
| ) | Courtroom:  5 |
| ) | Location:     280 South 1st Street, 4th Floor |
| **CHRYSLER GROUP LLC,** ) | San Jose, CA 95113 |
| ) | Action Filed: September 12, 2013 |
| Defendant. ) | Trial Date:   To Be Determined |
| ) | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on January 6, 2015, at 10:00 a.m., or as soon thereafter as possible, in Courtroom 5 of the above-entitled Court, located at 280 South 1st Street San Jose, CA 95113, Defendant Chrysler Group LLC will and does hereby move the Court for entry of a protective order governing discovery confidentiality under Federal Rule of Civil Procedure 12(c).

Chrysler seeks entry of a protective order to protect confidential and competitively sensitive information, reduce e-discovery costs, and expedite the production of relevant information without impacting the volume of information produced or the public's access to it.

DATED:  November 21, 2014                 Respectfully submitted,

/s/ *Colin R. Kass*

Colin R. Kass, admitted *pro hac vice*
Scott M. Abeles, admitted *pro hac vice*
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2533
T: (202) 416-6800
F: (202) 416-6899

David A. Munkittrick, admitted *pro hac vice*
PROSKAUER ROSE LLP
11 Times Square
New York, NY 10036
T: (212) 969-3000
F: (212) 969-2900
dmunkittrick@proskauer.com

Robert E. Davies, SBN 106810
DONAHUE DAVIES LLP
P.O. Box 277010
Sacramento, CA 95827-7010
T: (916) 817-2900
F: (916) 817-2644

*Attorneys for Defendant*
*Chrysler Group LLC*

1

**Table of Contents**

I.    INTRODUCTION. .................................................................................... 1

II.   CHRYSLER'S PROPOSED PROTECTIVE ORDER SHOULD BE ENTERED
      BECAUSE IT IS THE BEST WAY TO BALANCE COMPETING INTERESTS
      OF CONFIDENTIALITY AND ACCESS TO INFORMATION. ................................. 6

      A.    Courts Increasingly Recognize that Front-End Bulk Confidentiality
            Designations Are the Best Solution to Contain Burgeoning E-Discovery
            Costs .................................................................................................. 7

      B.    Chrysler's Proposed Order Reduces Costs, Expedites Production of
            Relevant Information, and Ensures that Those Directing the Litigation
            Have Access to All Appropriate Information. .......................................... 10

III.  CONCLUSION ...................................................................................... 13

2

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## Table of Authorities[1]

2

**Cases**

3

*Defreitas v. Tillinghast*, 2013 WL 209277
4
   (W.D. Wa. 2013)............................................................................ 9

5

*Deutsche Bank Nat'l Trust Co. v. WMC Mortg., LLC*,
6
   2014 U.S. Dist. LEXIS 110109 (D. Conn. 2014) ....................... 9

7

*Fifty-Six Hope Road Music, Ltd. v. Mayah Collections, Inc.*,
8
   2007 WL 1726558 (D. Nev. 2007) ............................................ 9

9

*In re Imperial Corp. of America*,
   174 F.R.D. 475 (S.D. Cal. 1997) ............................................... 9

10

*NCUA Bd. v. UBS Secs., LLC*,
11
   2014 U.S. Dist. LEXIS 9287 (D. Kan. 2014) ........................... 9

12

*Phillips v. GMC*,
   307 F.3d 1206 (9th Cir. 2002) .................................................. 6

13

*Prof'l Real Estate Investors v Columbia Pictures Indus, Inc.*,
14
   508 US 49 (1993)...................................................................... 11

15

*Rec Solar Grade Silicon LLC v. Shaw Group, Inc.*,
16
   2011 U.S. Dist. LEXIS 51459 (E.D. Wash. 2011) .................... 9

17

*Rutman Wine Co. v. E. & J. Gallo Winery*,
   829 F.2d 729 (9th Cir. 1987) .................................................... 7

18

*Seattle Times v. Rhinehart*,
19
   467 U.S. 20 (1984)..................................................................... 6

20

**Other Authorities**

21

Breitenbach & Wilson, *Managing the Fact Discovery Tsunami: Tips When Defending a Federal Antitrust Case*,
22
   N.Y.L.J., Jan. 18, 2011 ............................................................. 8

23

Gideon Mark, *Federal Discovery Stays*,
24
   45 U. Mich. J. L. Ref. 405 (2012)........................................... 7, 8

25

---

[1] Unless otherwise noted, all emphasis is added and all citations and internal quotation marks are omitted.

26

3

27

28

H.R. 4115: Triggering Soaring E-Discovery Costs,
Metropolitan Corp. Counsel, July 2010 ....................................................................... 7

Mandel & Rapp, *E-Discovery Alignment in Antitrust Actions,*
Law360 (Sept. 17, 2010) .............................................................................................. 8

*Manual for Complex Litigation* § 11.446
(4th ed. 2004) ............................................................................................................... 7

*The Sedona Conference Best Practices Commentary on the Use of Search and Information Retrieval Methods in E-Discovery,*
Sedona Conf. J. 189 (2007) ................................................................................. 8, 9, 10

*The Sedona Guidelines on Confidentiality and Public Access*
(March 2007) ............................................................................................................. 6, 9

Voltaire, Philosophical Dictionary, *Men of Letters*
(Knopf, N.Y., 1924) .................................................................................................... 12

## I.      INTRODUCTION.

Chrysler seeks entry of a confidentiality order that will substantially reduce e-discovery costs and expedite the production of relevant information *without* impacting – in any way – the volume of information produced or the public's access to it.  Specifically, Chrysler seeks entry of a protective order that allows the parties to initially bulk-designate produced documents as Attorneys' Eyes Only ("AEO"), so as to eliminate – in the first instance – the costs of a document-by-document confidentiality review of discovery materials.

Such protective orders are becoming increasingly common as courts grapple with the burgeoning costs of e-discovery.  *See* Declaration of S. Abeles, Exs. 1 and 2 (protective orders used in antitrust cases permitting bulk AEO designations).  These courts recognize that the voluminous data created in the digital age, and the availability of computer assisted review, renders front-end document-by-document confidentiality review wasteful.  Such a review does not increase the amount of information produced or the public's access to it, since the procedures for sealing information filed with the Court remain unchanged.  Rather, the tedious document-by-document exercise merely imposes needless costs on parties by requiring the designation of thousands, or even millions, of documents that will have no bearing on the case's outcome.

Here, Stevens Creek ***concedes*** that bulk designation is both necessary and appropriate in this case.  In fact, the parties agree as to the form of protective order, which is attached as Exhibit A, save for one critical aspect: whether "bulk designated" documents should be marked "Attorneys' Eyes Only" (or "AEO") or just "Confidential."  *See* Abeles Decl., Ex. 3 (email reflecting the parties' meet and confer).

The difference is not a minor one.  Stevens Creek's proposal renders the benefits of bulk designation wholly illusory because any document bulk designated "Confidential" could be

handed directly to Stevens Creek's employees, including Mr. Mathew Zaheri – the person who stands to benefit most from access to competitively sensitive information.

That is a non-starter. Once the cat is out of the bag, it is too late to seek further protection. Thus, plaintiff's proposal leaves Chrysler with a Hobson's choice: either it can waive all or virtually all AEO designations and allow its (and other dealers') sensitive information to fall into Mr. Zaheri's hands, or it can spend one hundred thousand dollars or more conducting a confidentiality review of documents that are barely relevant to the case. Obviously, it will choose the latter if so forced.

This is an antitrust case, which by definition involves competitively sensitive issues. Stevens Creek claims that Chrysler favored two new surrounding dealers over it. To prove its claim, Stevens Creek seeks sensitive information regarding not just its confidential dealings with Chrysler but also information about surrounding dealers. For example, Stevens Creek seeks, *inter alia*, information concerning:

- Competing Dealers' retail customer addresses (Request No. 3);

- Competing Dealers' incentive payments received (Request No. 8);

- Competing Dealers' planning (sales) potential by month (Request No. 16);

- Competing Dealers' vehicle orders (Request No. 29);

- Competing Dealers' financial statements (Request No. 36); and

- Competing Dealer MSR calculations, MSR reports, Dealer Scorecards, and Fair Shares (Requests 21, 22, 63, 73).

These documents will reveal Chrysler's dealer network strategies, including Stevens Creek's role in the network, and confidential information about surrounding dealers' performance. As explained in the accompanying declarations, the release of this information could cause

Chrysler's Motion for Protective Order
13-cv-04236-BLF-PSG

significant competitive injury.  *See* Abeles Decl., Exs. 4-6 (declarations of three Chrysler employees explaining the competitively sensitive nature of the information sought).

Chrysler's proposal guards against the improper release of such information without breaking the bank. By permitting *initial* AEO designations and limiting subsequent confidentiality review to a *subset* of relevant documents, this proposal eliminates the need to hire attorneys to conduct a page-by-page or document-by-document confidentiality review for every produced document. This will dramatically reduce costs by one hundred thousand dollars or more *while speeding up production*.

A focus on cost reduction (for both parties) is particularly appropriate here because Stevens Creek claims only 16 months of missed incentive payments – totaling approximately $1 million – and ***no*** ongoing injury.  Antitrust cases are notoriously expensive – and even when damages are in the tens of millions, or hundreds of millions of dollars – discovery costs can be prohibitive.  The costs here are not necessarily lower just because the exposure is smaller.  Issues of diversion, the competitive effects of Chrysler's incentives programs, and their impact on Stevens Creek and surrounding dealers will require extensive, and expensive, expert testimony. Both parties need to think creatively on ways to minimize costs and to focus expenditures where they will do the most good. Wasting money conducting a document-by-document confidentiality review is not one of the better ways to proceed.

Stevens Creek offers no good reason for rejecting Chrysler's proposal.  It simply argues that there are documents Mr. Zaheri wants to see.  But Mr. Zaheri's access to Chrysler's competitively sensitive documents ***will not change*** based on whether the Court sides with Chrysler, or with Stevens Creek.  That is because given the nature of this case and counsels'

3

obligation to protect Chrysler's (and Chrysler's franchises') highly sensitive information, Chrysler would likely mark most of the interesting internal Chrysler documents as "Attorneys' Eyes Only" were it required to conduct a document-by-document review.  The only difference between the two proposals is the cost.[2]

This is especially true because Chrysler's proposed Protective Order contains no less than *five* procedures designed to ensure that the parties, including Mr. Zaheri, have access to all appropriate information.

*First,* at Stevens Creek's request, Chrysler added a provision to the proposed order that allows outside counsel to discuss, at a general level, issues relating to the case, even if such issues are informed by outside counsel's review of AEO information. As Section IV.E. states:

> "Nothing in this Protective Order shall prevent or otherwise restrict counsel from rendering advice to their clients in this Action and, in the course thereof, relying generally on examination of designated Protected Materials; provided, however, that in rendering such advice and otherwise communicating with such client, counsel shall not disclose the contents of Protected Materials to persons not authorized to receive such material pursuant to the Protective Order."

Here, Stevens Creek hired two outside law firms to represent it in this matter.  They are perfectly capable of reviewing relevant information and discussing it with Mr. Zaheri.

*Second*, again at Stevens Creek's request, Chrysler agreed that depositions attended by a party may be designated as "Confidential," rather than AEO (without waiver to making question-by-question AEO designations).  Stevens Creek has said that Mr. Zaheri intends to attend all

---

[2] Mr. Zaheri, of course, would still have access to any information that he received in the ordinary course of business, even if he had not retained such information.  This is because even AEO information may be shown to any natural person who "authored, received or otherwise has been provided access to (in the ordinary course, outside this action) the Attorneys' Eyes Only Information."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Chrysler depositions.  Thus, there is no question that he will be sufficiently informed of the facts of the case to be able to direct the litigation.

*Third*, the proposed protective order permits Stevens Creek to request a document-by-document confidentiality review.  Specifically, Chrysler will make a document-by-document confidentiality designation for up to 150 documents at its own expense.  If Stevens Creek requests additional document-by-document designations, it may do so if it reimburses Chrysler for the costs of conducting such a review.  As Section VI.D. states:

> "[A] Party that receives information that is automatically designated Attorneys' Eyes Only may request that the Designating Party make a document-by-document designation of confidentiality.  If that Party requests such a document-by-document designation for more than 150 documents, the Designating party may, at its option, retain attorneys, including contract attorneys, to conduct a document-by-document confidentiality review of such documents.  The attorneys conducting such a confidentiality review will perform the review under the direction of the Designating Party, and all applicable privileges will be preserved.  The party requesting the confidentiality review pursuant to this paragraph shall reimburse the Designating Party for the reasonable costs, including attorneys' fees, of such review."

This provision ensures that the document-by-document review process is not abused and that each party seeks review only where the benefits of such a review outweigh its costs.[3]

*Fourth,* the parties may simply raise with one another the appropriateness of any designation by document or document category.  *See* Exhibit A, Section VI.  Neither party will have the incentive to waste the other's time with unreasonable requests or rejections, given the avenue for court intervention provided for in the same section.

---

[3] It should be noted that under the antitrust laws a prevailing plaintiff may recover the costs of suit and reasonable attorneys' fees.  Thus, if Stevens Creek prevails on its antitrust claims, it would be able to recover its cost of any document-by-document review it reasonably authorizes under this procedure.

*Finally*, as noted, the proposed order permits Stevens Creeks to challenge the designation of any document, including any bulk designated documents.  Under Section VI.C., Stevens Creek would merely "have the burden to establishing that there is a need for a lower level of confidentiality."  If it carries this burden, Chrysler would then have the burden of establishing that that the designation was proper, i.e., that the information warranted such protection.  *See id.* Section VI.C.

These procedures should fully resolve plaintiff's concerns about confidentiality, while still preserving the efficiencies of bulk designation.  For that reason, Chrysler respectfully requests that the Court enter the Protective Order attached as Exhibit A.

## II.  CHRYSLER'S PROPOSED PROTECTIVE ORDER SHOULD BE ENTERED BECAUSE IT IS THE BEST WAY TO BALANCE COMPETING INTERESTS OF CONFIDENTIALITY AND ACCESS TO INFORMATION.

Rule 26(c) authorizes a court to enter a protective order to "protect a party" from "undue burden or expense."  Fed. R. Civ. P. 26(c).  The Court may do so by, *inter alia*, "prescribing a discovery method other than the one selected by the party seeking discovery," and "requiring that a trade secret or other confidential … or commercial information not be revealed or be revealed only in a specified way."  *Id.*  District courts have broad discretion and flexibility to achieve these ends.  *See Phillips v. GMC*, 307 F.3d 1206, 1211 (9th Cir. 2002).  In shaping relief, courts should bear in mind that "restraints placed *only* upon the … use of information exchanged in discovery do not restrict 'a traditionally public source of information,' … [and] the good cause standard generally should be considered to be satisfied if the parties can articulate a legitimate need … for privacy or confidentiality."  *The Sedona Guidelines on Confidentiality & Public Access* (March 2007), at 7 (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984)).

In recent times, courts have sought innovative solutions that advance discovery's truth-seeking mission (by requiring production of all relevant documents, electronic or otherwise) but account for the fact that e-discovery imposes unique costs and challenges, especially to large firms with vast amounts of employees, data, and documents. This is especially necessary when it comes to antitrust litigation, which is famous for wide ranging and expensive discovery, if not properly cabined. And this is doubly true where a party seeks confidential information about its competitors that could be used to interfere with the proper functioning of the consumer market.

One way courts have advanced these interests is in the context of entering protective orders. By permitting the parties, in cases with especially competitively sensitive information, to bulk-designate as AEO on the front-end and then confer over designations in controversy on the back-end, significant resources are saved, and no one is prejudiced. This case is a textbook example in which bulk AEO designations should be permitted.

### A.   Courts Increasingly Recognize that Front-End Bulk Confidentiality Designations Are the Best Solution to Contain Burgeoning E-Discovery Costs.

Courts have long recognized the inordinate cost of discovery, particularly in antitrust cases. Nearly thirty years ago, the Ninth Circuit recognized that "the costs of discovery in [antitrust] actions are prohibitive." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). Those costs have risen in the age of e-discovery. *See* Gideon Mark, *Federal Discovery Stays*, 45 U. Mich. J. L. Ref. 405, 414-15 (2012); H.R. 4115: Triggering Soaring E-Discovery Costs, Metropolitan Corp. Counsel, July 2010, at 6 ("E-discovery is in many cases the most significant cost in litigation."); *Manual for Complex Litigation* § 11.446 (4th ed. 2004) ("The sheer volume of [computerized] data, when compared with conventional paper documentation, can be staggering.").

Like old fashioned discovery costs, e-discovery costs are magnified in antitrust cases. "In complex antitrust disputes, the amount of ESI often is so vast, and the preservation and production issues so complex, that e-discovery issues quickly spin out of control and destroy the entire defense budget."  Breitenbach & Wilson, *Managing the Fact Discovery Tsunami: Tips When Defending a Federal Antitrust Case*, N.Y.L.J., Jan. 18, 2011, at S8.  Such burdens are placed most acutely on defendants, who "are producing the vast majority of discovery."  *See* Mandel & Rapp, *E-Discovery Alignment in Antitrust Actions*, Law360 (Sept. 17, 2010).

Manual attorney review (the kind Stevens Creek demands) is the single most costly aspect of e-discovery.  *Federal Discovery Stays*, 45 U. Mich. J. L. Ref. at 420.  When large amounts of data are at issue, the "cost of manual review … is prohibitive, often exceeding the damages at stake."  *The Sedona Conference Best Practices Commentary on the Use of Search and Information Retrieval Methods in E-Discovery*, 8 Sedona Conf. J. 189, 198 (2007).  Because "new challenges require new solutions," *id.* at 192, progressive entities like the Sedona Conference and many courts have sought to identify ways to decrease these kinds of costs while maintaining a vigorous adversary system.

One thoughtful solution is through the entry of protective orders that permit front-end bulk confidentiality designations, including bulk AEO designations.  For example, "to expedite production of voluminous Discovery material," the district of Connecticut recently permitted "a Designating Party [to], at its sole option … produce Discovery material without a detailed review, … In doing so, the Designating Party may designate Discovery material that may by its nature contain Confidential or Highly Confidential material with the appropriate designation, notwithstanding that some of the Discovery Material ***may not qualify*** for such designation."

*Deutsche Bank Nat'l Trust Co. v. WMC Mortg., LLC*, 2014 U.S. Dist. LEXIS 110108 (D. Conn. 2014); *NCUA Bd. v. UBS Secs., LLC*, 2014 U.S. Dist. LEXIS 9287 (D. Kan. 2014) (same).

Similarly, the district of New Jersey, adjudicating an antitrust case, permitted "*[a]ll* documents and information produced by a party … and transcripts or videography of depositions … [to be] *initially* [] deemed "Attorneys' Eyes Only." Ex. 1 (Dkt. 109, Protective Order entered in *Castro v. Sanofi*, 11-cv-07178 (D.N.J., August 10, 2012)); *see also Rec Solar Grade Silicon LLC v. Shaw Group, Inc.*, 2011 U.S. Dist. LEXIS 51459 (E.D. Wash. 2011) (granting protective order that allowed for default confidentiality designation); *Defreitas v. Tillinghast*, 2013 WL 209277, at *3 (W.D. Wa. 2013) (declining to require review of 135 gigabytes of data for confidentiality because it "would be extremely costly and burdensome").[4]

This process is straight out of the Sedona Handbook. *Sedona Principles*, at 54 (terms of production should accommodate "the enormous volume of electronic documents generated and retained in today's business environment"). While singing the praises of a broad confidentiality order balanced by a narrow, document-by-document consideration at the time of *sealing*, if any, Sedona's "Best Practice" is to require the designating party to demonstrate good cause for a designation only when "the need for confidentiality is questioned." *Sedona Guidelines on Confidentiality,* at 9. Under the practice contemplated, "[t]he party wishing to prevent the dissemination of information may *eventually* be required to prove the basis for protecting specific information, even if not required to do so at the time the information is produced." *Id.*

---

[4] Courts have taken a similar tack regarding document-by-document privilege review, permitting categorical privilege logs where a document-by-document log would be unduly burdensome. *E.g.*, *In re Imperial Corp. of America*, 174 F.R.D. 475, 478-79 (S.D. Cal. 1997) (authorizing categorical privilege log given that there were thousands if not millions of documents that were subject to attorney-client privilege or work-product protection); *Fifty-Six Hope Road Music, Ltd. v. Mayah Collections, Inc.*, 2007 WL 1726558 at *8 (D. Nev. 2007) (same).

**B.**      *Chrysler's Proposed Order Reduces Costs, Expedites Production of Relevant Information, and Ensures that Those Directing the Litigation Have Access to All Appropriate Information.*

Chrysler's requested protective order minimizes the cost and burden of confidentiality review by eliminating the need to review and identify each document as non-confidential, confidential, or highly confidential (AEO), in the first instance.  Most of the documents produced will not be used in either party's case, so the time and expense spent to review each document for confidentiality is unnecessary.  Instead, Chrysler's proposed order would focus the expenditure of resources on specific documents that the parties actually intend to use.  This is accomplished by allowing the receiving party to request a final confidentiality determination of particular documents and to challenge final designations as needed.  Ex. A at ¶¶ I.D-E.  For the first 150 documents made subject to second review, the designating party will pay, as in the typical case.  Thereafter, the requesting party will fund the review.  This method is both efficient and furthers counsels' "ethical duty to guard zealously the confidences and secrets of their clients."  *See Sedona Principles*, at 54.

None of the bases raised by Stevens Creek justifies denying this motion.

*First,* plaintiff's claim that it cannot "show a single document to our client or have him present at any deposition without first going through the process of meeting and conferring with you," is a red-herring.  *See* Abeles Decl., Ex. 3. Most of the relevant discovery (including depositions) from parties besides the plaintiff will fall into one of two categories: (i) sensitive, non-public information concerning Chrysler's dealer network strategies, including trade secrets relating to Chrysler's incentive program algorithms; and (ii) sensitive, non-public information concerning Stevens Creek's competitors, including cost, price, and planning information that

Chrysler's Motion for Protective Order
13-cv-04236-BLF-PSG

could damage those competitors (and their customers) in the wrong hands.  Stevens Creek would **never** be entitled to such information outside of the litigation context, and it is not permitted to use the discovery process as a weapon against its supplier (Chrysler) or local dealers.  *Cf. Prof'l Real Estate Investors v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 50 (1993) (firm may violate antitrust laws when it seeks to use litigation "process," not its "outcome," to advance its competitive standing).[5]

Accordingly, the injury plaintiffs point to is either *de minimis* or non-existent.  Stevens Creek's principal will rightly be denied access to many discovery materials either at the outset of discovery, or according to an inefficient, document-by-document demarcation of confidentiality.  That said, nothing in the proposed order prevents plaintiff's counsel from rendering advice to their client and relying generally on confidential materials, provided plaintiff's counsel does not disclose the contents of the confidential materials.  *See* Ex. A, at Section IV.E.  To the extent any of Chrysler's designations are called into question, the exact same process is available to Stevens Creek under either proposal: a request to revisit the designation, *see id.,* Section I.D.;  a good faith meet and confer, *see* L.R. 37-1; and, in rare cases in which each party forms a position that it is willing to defend before the Court, a motion.  *Id.*, Section I.E.

*Second,* the contention that Chrysler's proposal is unlike "the method used in every other case in which" Stevens Creek's counsel has "been involved" is unpersuasive.  Abeles Decl., Ex. 3. As an initial matter, by conceding that bulk designation is necessary and appropriate in this case, they have already crossed the Rubicon. The question now is only whether the bulk

---

[5] In response to plaintiffs' request to have Mr. Zaheri present at Chrysler depositions, despite the inefficiency of the approach, Chrysler withdrew its proposal for all deposition testimony to be automatically designated AEO.  Instead, to the extent Mr. Zaheri or his in-house counsel is present at any deposition, Chrysler will make such designations on a question-by-question basis prior to any answer being provided.

designation ought to be AEO, or Confidential.  For reasons discussed above the former is necessary, as the latter renders the benefits of bulk designation illusory.  Moreover, the fact that plaintiff's counsel has not personally experienced the benefits of bulk designation in the past is no reason not to proceed with it now.  As the great philosopher Voltaire observed, our "species is so made that those who walk on the well-trodden path always throw stones at those who are showing a new road."  Voltaire, Philosophical Dictionary, *Men of Letters* (Knopf, N.Y., 1924). More importantly, as noted above, a number of courts have already accepted Protective Orders virtually identical to the one Chrysler is proposing, and the concept – of bulk designating documents – is gaining judicial adherents as a means for efficiently reducing e-discovery costs. *See* Abeles Decl., Exs. 1 and 2.

*Finally,* while not (yet) raised by Stevens Creek, for the Court's comfort we want to make plain that there is no basis to believe that Chrysler's proposal will result in an increased number of litigated disputes. Anecdotally, Chrysler's counsel notes that since 2011 it has participated in the *Castro v. Sanofi* case noted above, which permitted an initial bulk AEO designation.  *See id.*, Ex. 1.  Notwithstanding the size of discovery in that nationwide antitrust class action (larger than will be the case here), the parties, including many third parties, have brought **zero** disputes regarding confidentiality designations to the Court in what has otherwise been a hotly contested matter.  As has already occurred in this case, various parties in *Castro* have moved to seal a limited number of documents submitted to the court.  No *Castro* party has ever opposed such a motion.

While the sample size may be small, the *Castro* experience is driven by objective realities present in all cases under the Federal Rules, including this one. That is because the Federal Rules

Chrysler's Motion for Protective Order
13-cv-04236-BLF-PSG

include a check on litigants who are overprotective of information disclosed in discovery, or who, alternatively, lack a good faith basis to seek to share it.  Rule 26(c)(3) permits the award of expenses to the prevailing party in a litigated confidentiality dispute under the terms of Rule 37(a)(5).  Rule 37 provides, in turn, for automatic cost-shifting unless the losing party's position was substantially justified.  There is no reason to believe, in a case with so much sensitive information, that there will be a significant number of documents or deposition excerpts that are at once (i) on the confidentiality "borderline," and (ii) worthy of sharing.  As to that subset, there is even less reason to believe that experienced counsel, as in this case, are likely to bring picayune disputes or defend unsound positions before the Court against the threat of sanctions.  And there is once more no reason to conclude that the ***focused*** analysis of confidentiality conducted in the shadow of motion practice will give rise to more disputes than a tedious, document-by-document analysis, conducted months before a dispute.

## III.  CONCLUSION

For the forgoing reasons, Chrysler respectfully requests that the Court enter the proposed Protective Order, attached as Exhibit A hereto.

Chrysler's Motion for Protective Order
13-cv-04236-BLF-PSG

DATED:  November 21, 2014                    Respectfully submitted,


                                             /s/ *Colin R. Kass*
                                             Colin R. Kass, admitted *pro hac vice*
                                             Scott M. Abeles, admitted *pro hac vice*
                                             PROSKAUER ROSE LLP
                                             1001 Pennsylvania Avenue, N.W.
                                             Washington, D.C. 20004-2533
                                             T: (202) 416-6800
                                             F: (202) 416-6899

                                             David A. Munkittrick, admitted *pro hac vice*
                                             PROSKAUER ROSE LLP
                                             11 Times Square
                                             New York, NY 10036
                                             T: (212) 969-3000
                                             F: (212) 969-2900
                                             dmunkittrick@proskauer.com

                                             Robert E. Davies, SBN 106810
                                             DONAHUE DAVIES LLP
                                             P.O. Box 277010
                                             Sacramento, CA 95827-7010
                                             T: (916) 817-2900
                                             F: (916) 817-2644

                                             *Attorneys for Defendant*
                                             Chrysler Group LLC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I, Colin R. Kass, hereby certify that on November 21, 2014, I caused to be electronically filed Chrysler's Motion for Protective Order with the Clerk of Court using the CM/ECF system that will send notification of such filing to all attorneys of record.

DATED: November 21, 2014                    Respectfully submitted,


/s/ *Colin R. Kass*

Colin R. Kass, admitted *pro hac vice*
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2533
T: (202) 416-6800
F: (202) 416-6899