United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

MATHEW ENTERPRISE, INC.,

Plaintiff,

v.

CHRYSLER GROUP LLC,

Defendant.

Case No. 13-cv-04236-BLF

**ORDER GRANTING DEFENDANT'S PARTIAL MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

[Re: ECF 111]

Before the Court is Defendant's third attempt to dismiss Plaintiff's claim under Section 2(a) of the Robinson-Patman Act, 15 U.S.C. § 13(a) ("Section 2(a) Claim"). The Court first dismissed the claim without prejudice on July 11, 2014, *see* Dismissal Order, ECF 45, and then with prejudice on January 1, 2015, *see* Partial Dismissal Order, ECF 86. Following Plaintiff's discovery of a new fact in a related state proceeding, however, the Court modified its dismissal to be without prejudice and allowed Plaintiff to again amend its complaint to bolster the Section 2(a) Claim. *See* Recon. Order, ECF 106.

As before, Plaintiff asserts that rental incentive payments ("Payments") Defendant made to a new franchise dealership, California Superstores San Leandro Chrysler Jeep Dodge and Ram ("San Leandro CJDR" or "San Leandro"), but not to Plaintiff, an established dealership in the same region, constituted disguised price reductions in violation of Section 2(a). *See* SAC, ECF 110. Defendant argues that Plaintiff fails to state a claim, first, because the Payments bear a

reasonable relationship to a service and, second, because Plaintiff and San Leandro were not contemporaneous customers of Defendant. *See* Def.'s Mot., ECF 111.

For the reasons below, the Court GRANTS Defendant's motion to dismiss with prejudice.

## I. BACKGROUND

### A. Procedural History

Plaintiff filed this action on September 12, 2013. Compl., ECF 1. Defendant moved to dismiss all counts, including the Section 2(a) Claim, on November 12, 2013. ECF 23. On July 11, 2014, the Court granted Defendant's motion with respect to the Section 2(a) Claim, but gave Plaintiff leave to amend. *See* Dismissal Order at 14, 18.

Plaintiff filed the First Amended Complaint on August 1, 2014. ECF 51. Defendant filed a partial motion to dismiss, again including the Section 2(a) Claim, on August 22, 2014. ECF 56 ("Def.'s FAC Mot.").

To determine the motion, the Court considered whether or not Plaintiff had presented sufficient facts that could plausibly show that the "dominant nature" of the agreement governing the Payments to San Leandro ("Agreement") was to reduce the price of vehicles rather than rent. *See* Partial Dismissal Order at 6. In interpreting the Agreement, the Court first noted that the majority of the Payments under the Agreement were automatic, paid to San Leandro "merely for opening its doors," and therefore "bore *only* a relationship to rent assistance." *Id.* at 6, 8. The Court next considered the portion of the Payments that Plaintiff termed "sales-based incentives," which were triggered only after San Leandro sold a certain number of vehicles. *Id.* at 7, 8-10.

Each party offered the Court an explanation for these "sales-based" Payments. Plaintiff argued that the payments were a cash windfall, or a "reduction in the buyer's cost of goods," rather than a rent incentive. *Id*. at 8 (citing *Am. Booksellers Ass'n v. Barnes & Noble, Inc.,* 135 F. Supp. 2d 1031, 1068 (N.D. Cal. 2001)). In contrast, Defendant argued that, due to the high cost of establishing new dealers and the risk involved therein, it needed to condition certain incentives for dealers operating on land leased by Chrysler Realty in order to ensure that the realty was only being offered to viable dealers. *Id.* at 10 (citing Def.'s FAC Mot. at 4, 10).

The Court considered these explanations in combination with the terms of the Agreement,

which "specifically show that the sales-based incentives were not provided on a per-vehicle basis." *Id.* at 9. The Court found Defendant's representation "convincing" and relied on it in reaching its decision. *Id.* The Court cited to Defendant's representation no less than three times in the Partial Dismissal Order. *Id.* at 8 (summarizing Defendant's argument), 9 ("It is convincing that Chrysler would attempt to ensure that its own land was rented only to dealers that would be able to establish themselves as viable members of the marketplace"), 10 (rejecting an alternative argument by Plaintiff regarding the Payments' dominant nature "because the payments would only be made to a York-owned dealer operating on land leased from Chrysler Realty").

In light of Defendant's representation, the Court found Plaintiff's alternative explanation to be implausible as a matter of law, *id.* at 9, and determined that the dominant nature of the Payments related to the lease, not the vehicles. As a result, and relying on *Portland 76 Auto/Truck Plaza, Inc. v. Union Oil Co.*, 153 F. 3d 938, 946 (9th Cir. 1995), which held that the Robinson-Patman Act cannot apply to a leasehold, the Court dismissed Plaintiff's Section 2(a) Claim with prejudice.

In a related state action, Plaintiff discovered that, contrary to Defendant's representation, Defendant provided Payments to a dealership in Valencia, California that does not lease Chrysler-owned realty. *See* Pl.'s Mot. for Recon., ECF 89. In light of this discovery, and the doubt it cast upon Defendant's critical representation, the Court modified its dismissal of the Section 2(a) Claim to be without prejudice. *See* Recon. Order at 2-3.

Plaintiff filed the operative SAC on June 12, 2015, which contains new allegations related to the Valencia dealership and Defendant's bookkeeping practices. Defendant filed the instant partial motion to dismiss on June 26, 2015.

**B. Factual Allegations in the SAC**

The Court's Dismissal Order sets forth the general factual background of this case. *See* Dismissal Order at 2-4. The Court's Partial Dismissal Order describes in detail Plaintiff's allegations regarding the Section 2(a) Claim. *See* Partial Dismissal Order at 2-3. The Court summarizes the allegations relevant to the Section 2(a) Claim, including Plaintiff's new allegations, below.

United States District Court
Northern District of California

Defendant sells vehicles to Plaintiff, a long-time franchise dealership located in San Jose, California. SAC ¶ 11. Defendant also sells vehicles to other dealerships in Northern California, including San Leandro. SAC ¶¶ 14, 21. San Leandro opened in December 2010, *id.*, is owned by Ytransport, LLC ("York Capital"), and is located on Chrysler-owned land. SAC ¶¶ 43, 45, 47.

Chrysler and York entered into a sales and service agreement ("Framework Agreement") which included both terms for sale of vehicles by Chrysler to San Leandro CJDR as well as lease provisions including "rental incentives." SAC ¶¶ 44, 45. Plaintiff contends that, under the Framework Agreement, Defendant "paid so-called 'rental incentives' to San Leandro." SAC ¶ 45. Notwithstanding their label, Plaintiff alleges that the "dominant nature" of the payments was to reduce the price San Leandro paid Defendant for vehicles, not rent. SAC ¶ 46.

Plaintiff supports this contention with seven allegations. Three mirror allegations made in the First Amended Complaint. Plaintiff again argues that the dominant nature of the Payments is to lower the cost of goods rather than rent because (1) although Plaintiff, too, leases its facility from Chrysler Realty, Defendant never offered it similar rental incentives, SAC ¶ 54, (2) a portion of San Leandro's rental incentives was contingent upon San Leandro selling a minimum number of vehicles, SAC ¶ 45, and (3) Defendant paid San Leandro directly, rather than crediting or rebating Chrysler Realty, the landlord,[1] SAC ¶ 47.

In addition, Plaintiff now offers four new allegations to support its characterization of the Payments' dominant nature. Most significantly, Plaintiff alleges that, in at least one instance, Defendant made "rental incentive payments" to a York dealership, located in Valencia, California, which "did not even lease real estate from Chrysler Realty" ("Valencia Allegation"). SAC ¶ 50. In addition, Plaintiff points to bookkeeping practices to suggest that neither San Leandro nor Chrysler considered the payments rent-related: Plaintiff alleges that San Leandro recorded the Payments as "miscellaneous income"—the label under which dealerships sometimes report incentives directly related to the vehicles—instead of offsetting them against rent expense, SAC ¶¶

[1] This reflects the allegation as stated in the Second Amended Complaint. In the FAC, Plaintiff focused on which entity paid San Leandro, rather than which entity Defendant paid. FAC ¶¶ 47, 49.

48, 49, and that Chrysler Realty accounted for and reported San Leandro's rent without deducting the Payments, SAC ¶ 50. Finally, Plaintiff alleges that Chrysler did not restrict how San Leandro could use the Payments, SAC ¶ 52. *See also* Pl.'s Opp. at 2-3. In light of these allegations, Plaintiff concludes that the "'rental incentives' were designed and intended to help San Leandro CJDR sell more [v]ehicles . . . by reducing the cost per [v]ehicle." SAC ¶ 53.

Plaintiff alleges that the Payments gave San Leandro a price advantage per vehicle sold from December 2010 to December 2013 over Plaintiff. SAC ¶ 61.

## II. LEGAL STANDARD

Defendant brings its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Dismissal under Rule 12(b)(6) may be based either "on the lack of a cognizable legal theory or the absence of sufficient facts alleged." *Balistreri v. Pacifica Police Dept.*, 901 F. 2d 696, 699 (9th Cir. 1988).

The Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519, F.3d 1025, 1031 (9th Cir. 2008). The Court, however, need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Kane v. Chobani, Inc.*, 973 F. Supp. 2d 1120, 1127 (N.D. Cal. 2014) (citing *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam)).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," and a complaint that pleads facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). (internal quotations omitted). Instead, a plaintiff must "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In the Ninth Circuit, when a defendant and a plaintiff each advance an explanation for a claim, both of which are plausible, the claim survives a Rule 12(b)(6) motion to dismiss. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "Plaintiff's complaint may be dismissed only when

defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible." *Id*.

**III. DISCUSSION**

Section 2(a) of the Robinson-Patman Act ("RPA") makes it "unlawful for any person engaged in commerce . . . to discriminate in price between different purchasers of commodities of like grade and quality." 15 U.S.C. § 13(a). The Supreme Court has described the Act's purpose as "to curb the use by financially powerful corporations of localized price-cutting tactics which had gravely impaired the competitive position of other sellers," *FTC v. Anheuser-Busch, Inc.*, 363 U.S. 536, 543 (1960), and to ensure that "businessmen at the same functional level . . . start out on equal competitive footing so far as price is concerned." *FTC v. Sun Oil Co.*, 371 U.S. 505, 520 (1963).

**A. Dominant Nature of Payments**

The RPA extends only to transactions involving commodities—that is, "sale[s] of goods, wares, or merchandise." *May Dep't Store v. Graphic Process Co.*, 637 F.2d 1211, 1214 (9th Cir. 1980). A rental agreement itself does not qualify for RPA protection. *See* Dismissal Order at 13 (citing, among other cases, *Portland 76.* 153 F.3d at 942), Partial Dismissal Order at 5.

However, Plaintiff contends that the Agreement concerns provision not only of the leasehold, but also of vehicles. *See, e.g.,* SAC ¶ 55. Where, as here, a party alleges that a transaction involves commodities *and* a service, courts in this circuit "adopt[] a 'dominant nature' standard to determine if transactions are for sale of services or goods." *May Dep't Store v. Graphic Process Co.*, 637 F.2d 1211, 1215 (9th Cir. 1980).

As before, Plaintiff alleges that the "dominant nature" of the Payments is "to reduce the price that San Leandro CJDR and the other York Capital dealerships paid Chrysler for purchased vehicles." SAC ¶ 46.

When the Court last considered this allegation, it dismissed the Section 2(a) Claim with prejudice because it found Plaintiff's characterization of the Payments implausible. *See* Partial Dismissal Order at 8-9, 11*; see also Starr*, 652 F.3d at 1216. In reaching this determination, the Court relied heavily on Defendant's alternative explanation and representation that the Payments

were provided only to dealerships located on land leased from Chrysler Realty. *See* Partial Dismissal Order at 8-9, 11 (citing Def.'s FAC Mot. at 4, 10). In addition, the Court trusted the plain language of the Agreement because of the "dearth of factual allegations from Plaintiff" to contest it. *Id.* at 11.

Plaintiff now challenges both of these bases with its Valencia Allegation, which contends that Chrysler provided payments to a York dealership that did not rent from Chrysler Realty. *See* Pl.'s Opp. at 3; SAC ¶ 51. Plaintiff argues that this fact makes Defendant's alternative explanation for the Payments implausible. *See* Pl's Mot. for Recon. at 5. In addition, Plaintiff contends that the allegation "negates the value of the [Agreement's] terms as probative evidence" because Defendant providing Payments to a dealership not located on Chrysler-owned land violated the express terms of the Agreement. Pl.'s Opp. at 3.

Defendant responds that, if Plaintiff's allegations are true, the Valencia arrangement simply constituted an "exception" to the Agreement and "has no bearing on how the San Leandro payments should be treated." Def.'s Mot. at 7. Defendant argues that "as pled, Valencia's rent assistance *also* bears a reasonable relationship to [] rental expenses under the dominant nature test." *Id.* at 6 (emphasis in original). Chrysler's desire "to be a good steward of its resources" by "ensur[ing] that it does not provide land at below-market rates to dealers who do not meet minimum performance standards. . . applies whether the assistance provided takes the form of below-market leases or cash disbursements to defray third-party leasing costs." *Id.* at 7. Thus, the Payments relate to rent whether or not the dealership is located on land owned by Chrysler Realty. This new explanation directly contradicts Defendant's prior representation, which proved critical to the Court's most recent dismissal of the Section 2(a) Claim. It also calls the plain language of the Agreement into question.

As the Court noted in its Partial Motion to Dismiss Order, at this stage, Plaintiff need only allege facts that make it plausible that the dominant purpose of the Agreement was to discount vehicles, a good, rather than rent, a service. Partial Dismissal Order at 6; *see also May*, 637 F.2d at 1216. In light of the doubt the Valencia Allegation has cast upon both Defendant's prior representation and the plain language of the Agreement, the Court can no longer find that

United States District Court
Northern District of California

Defendant's plausible alternative explanation is so convincing as to make Plaintiff's explanation implausible. As a result, further development of the factual record would be necessary to determine the dominant nature of the Payments. On this ground alone, Plaintiff's Section 2(a) Claim would survive the motion to dismiss.

**B. Contemporaneous Customer Requirement**

However, Defendant argues, in the alternative, that the Section 2(a) Claim must be dismissed because Plaintiff has failed to allege that it and San Leandro were contemporaneous customers of Defendant, as required by Section 2(a). *See* Def.'s Mot.at 10.[2]

To establish a prima facie violation of Section 2(a), a plaintiff must allege the existence of six elements: 1) two or more contemporaneous sales by the same seller, 2) at different prices, 3) of commodities of like grade and quality, 4) where at least one sale was made in interstate commerce, 5) the discrimination had the requisite effect upon competition generally, and 6) the discrimination caused injury to the plaintiff. *See Rutledge v. Electric Hose & Rubber Co.*, 511 F. 2d 668, 677 (9th Cir. 1975); *see also* 15 U.S.C. § 13(a).

The date of the contract setting the price is the controlling date for comparing sales. *See Texas Gulf Sulphur Co. v. J.R. Simplot Co.*, 418 F. 2d 793, 806 (9th Cir. 1969). Holding otherwise would "pointlessly freez[e] the level of the allowances." *England v. Chrysler Corp.*, 493 F.2d 269, 272 (1974).

Both parties rely on *England* in their briefs—Defendant to argue that Plaintiff fails the contemporaneity requirement and Plaintiff to argue the opposite. Defendant asserts that, under *England*, two sellers must commence business at the same time in order to meet Section 2(a)'s contemporaneity requirement. As a result, Plaintiff's claim must be dismissed because Plaintiff "does not allege that it was competing with York Capital to establish a new dealership in late 2010, when San Leandro was established." Def.'s Mot. at 10. Rather, "the foundation of its [Section 2(a) Claim] is that San Leandro and [Plaintiff] entered at *different* times, and Chrysler treated *new* dealers like San Leandro . . . differently than it treated [Plaintiff], an *incumbent*." *Id.*

---

[2] In its prior order, the Court declined to reach this issue based on its ruling regarding the "dominant nature" of the Payments.

(emphasis in original).

Plaintiff does not contest Defendant's framing of the facts. Instead, Plaintiff argues that, under *England*, Section 2(a) simply requires Plaintiff to allege that two dealerships *are* in business—not that they *commence* business—at reasonably contemporaneous times. Pl.'s Opp at 10. Plaintiff easily meets that standard, it argues, because it "was in business and in competition with San Leandro [from] December 2010 to December 2013 during which Chrysler was paying 'rental incentives' to San Leandro." *Id.*

Defendant's reading of *England* is correct. In *England*, the plaintiff, a trustee for a bankrupt Chrysler dealership, sued Chrysler and other defendants for discriminating in the bonuses it paid to dealers whenever they opened or relocated. 493 F.2d at 271. Chrysler paid the plaintiff $2,325 upon its opening, compared to a $24,000 opening bonus and a $10,500 relocation bonus to a nearby competitor. *Id.* at 271. The two dealerships opened sixteen months apart. *Id.* The plaintiff had not yet opened when the $24,000 payment occurred and had closed by the time of the $10,500 relocation payment. *Id.*

The Ninth Circuit noted that, under Sections 2(d) and (e) of the RPA,[3] "the advantaged and disadvantaged parties must be shown to be competing customers of the giver." *Id.* at 271-72. "Where allowances are awarded at the commencement of business, as in this case, the requirement means that both enterprises must have *begun* operations at reasonably contemporaneous times." *Id.* at 272 (emphasis added). Because the plaintiff and its competitor commenced business sixteen months apart, the court held that Chrysler had not violated the RPA. *Id.* at 272 and n.4.

The same logic applies here. As Defendant notes, Plaintiff does not allege that it and San Leandro commenced business at a reasonably contemporaneous time. Instead, Plaintiff identifies itself as a long-time, established dealership whose business was disrupted by the entry of new dealerships. *See* SAC ¶ 22. Nothing in *England* or the RPA requires that later-offered commencement of business-related allowances be offered to incumbent competitors. Thus,

[3] *England* considered Sections 2(d) and 2(e) of the RPA. While those sections of the RPA are not before the Court for this motion, *England* is nevertheless controlling regarding the "contemporaneous requirement" because the Ninth Circuit found that the same requirement applies under Section 2(a). *Id.* at 272 n. 3.

United States District Court
Northern District of California

Plaintiff cannot meet Section 2(a)'s contemporaneity requirement.

**IV. ORDER**

Accordingly, Defendant's Partial Motion to Dismiss the Second Amended Complaint is GRANTED with prejudice.

**IT IS SO ORDERED.**

Dated: October 27, 2015

BETH LABSON FREEMAN
United States District Judge