UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MATTHEW ENTERPRISE, INC.,

                Plaintiff,

        v.

CHRYSLER GROUP LLC,

                Defendant.

Case No. 13-cv-04236-BLF

**ORDER GRANTING-IN-PART MOTION TO COMPEL**

**(Re:  Docket No. 131)**

      Before the court is a motion by Defendant FCA US LLC, formerly known as Chrysler Group LLC, to compel responses to certain interrogatories and produce certain documents.[1] Chrysler's motion is GRANTED, but only IN-PART.  All discovery ordered below must be completed within 21 days.

## I.

      Plaintiff Mathew Enterprise, Inc. operates and does business as Stevens Creek Chrysler Jeep Dodge Ram, a car dealership in San Jose that buys and resells vehicles from Chrysler.[2] Stevens Creek alleges that Chrysler denied it access to so-called volume growth incentives, even as Chrysler made those incentives available to competing dealerships in the area.[3]  According to Stevens Creek, the competing dealerships that did receive these incentives effectively paid lower prices to Chrysler for vehicles of like grade and quality, and these differences were reflected in the

---

[1] *See* Docket No. 131.

[2] *See* Docket No. 110 at ¶ 1; *id.* at 23.

[3] *See id.* at ¶¶ 17-56.

United States District Court
Northern District of California

1    prices offered to customers.[4]  Stevens Creek alleges that the result was price discrimination in

2    violation of the Robinson-Patman Act.[5]

3                                          **II.**

4           This court has jurisdiction under 28 U.S.C. §§ 1332, 1337 and 1367.  The undersigned was

5    assigned discovery matters in this case pursuant to Fed. R. Civ. P. 72(a).

6           The Federal Rules of Civil Procedure provide that "[p]arties may obtain discovery

7    regarding any nonprivileged matter that is relevant to any party's claim or defense."[6]  This

8    discovery must be "proportional to the needs of the case."[7]  Relevant factors include "the

9    importance of the issues at stake in the action, the amount in controversy, the parties' relative

10   access to relevant information, the parties' resources, the importance of the discovery in resolving

11   the issues, and whether the burden or expense of the proposed discovery outweighs its likely

12

13   [4] *See id.* at ¶¶ 71-81.

14   [5] *See id.* at ¶¶ 82-83 (citing 15 U.S.C. § 13(a)).

15   [6] Fed. R. Civ. P. 26(b)(1).

16

17   [7] *Id.*  The court acknowledges that these standards are taken from amendments to the Federal
     Rules of Civil Procedure that became effective on December 1, 2015, after the filing of the
18   pending motion.  *See* Docket No. 131.  But the Supreme Court's April 2015 order that
     accompanied the transmittal of the amendments to Congress states that the new rules "shall govern
19   in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all
     proceedings then pending."  Supreme Court of the United States, Order Regarding Amendments to
20   the Federal Rules of Civil Procedure (Apr. 29, 2015), available at
     http://www.supremecourt.gov/orders/courtorders/frcv15(update)_1823.pdf.
21

22   In addressing the applicability of previous amendments to pending matters, courts have held that it
     is "just and practicable" to apply the new rules in all cases as soon as they are promulgated.  For
23   example, when assessing whether to apply the amendment to Rule 56 in 2011, the First Circuit
     cited the Supreme Court's "just and practicable" language in deciding to apply the rule as
24   amended, rather than the version of the rule in place when the case was originally filed.  *See
     Mendez-Aponte v. Bonilla*, 645 F.3d 60, 64 n.4 (1st Cir. 2011); *Farmers Ins. Exchange v. RNK,
25   Inc.* 632 F.3d 777, 782 n.4 (1st Cir. 2011); *see also Hodges-Williams v. Barnhart*, 221 F.R.D. 595,
     600-02 (N.D. Ill. 2004) (finding it "just and practicable" to apply the revised version of Rule 58 in
26   a case initiated before the rule was adopted because it was "neither prejudicial nor unjust" to do
     so).  It is similarly just and practicable to apply the new standards to this case.
27

28   Case No. 13-cv-04236-BLF
     ORDER GRANTING-IN-PART MOTION TO COMPEL

2

benefit."[8]  "Once the moving party establishes that the information requested is within the scope of permissible discovery, the burden shifts to the party opposing discovery."[9]  "An opposing party can meet its burden by demonstrating that the information is being sought to delay bringing the case to trial, to embarrass or harass, is irrelevant or privileged, or that the person seeking discovery fails to show need for the information."[10]

### III.

As an initial matter, the court rules on Chrysler's requests to compel responses to interrogatories as follows:

- Interrogatory No. 1:[11]  Stevens Creek has decided to withdraw the claim to which this interrogatory relates.[12]  The motion with respect to this interrogatory is DENIED AS MOOT.

- Interrogatory No. 3:[13]  This interrogatory also relates to the withdrawn claim.[14]  The motion with respect to this interrogatory is DENIED AS MOOT.

- Interrogatory No. 6:[15]  The volume growth incentives were lump sums not allocated to specific vehicles.  This interrogatory nevertheless asks Stevens Creek to identify each of the vehicles that a competing dealer received at a lower price than Stevens Creek.  Because the incentives were not allocated to specific vehicles, the identity of specific vehicles is irrelevant.  The motion with respect to this interrogatory is DENIED.

- Interrogatory Nos. 12-14:[16]  Stevens Creek alleges that Chrysler's refusal to provide

---

[8] Fed. R. Civ. P. 26(b)(1).

[9] *Khalilpour v. CELLCO P-ship*, Case No. 3:09-cv-02712-CW-MEJ, 2010 WL 1267749, at *1 (N.D. Cal. Apr. 1, 2010) (citing *Ellison v. Patterson-UTI Drilling*, Case No. V-08-67, 2009 WL 3247193, at *2 (S.D. Tex. Sept. 23, 2009)).

[10] *Id.* (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353 & n.17 (1978)).

[11] *See* Docket No. 131-2, Ex. 5 at 14.

[12] *See* Docket No. 143 at 4.

[13] *See* Docket No. 131-2, Ex. 5 at 15.

[14] *See* Docket No. 143 at 4-5.

[15] *See* Docket No. 131-2, Ex. 5 at 16.

[16] *See id.* at 18-19.

Case No. 13-cv-04236-BLF
ORDER GRANTING-IN-PART MOTION TO COMPEL

incentives meant that Stevens Creek was unable to offer prices low enough to compete with other dealerships.[17]  It also implies that it would have used the incentives "to lower its retail prices to meet or beat competitor's [sic] prices."[18]

Stevens Creek's current responses to these interrogatories are deficient in two respects. First, they are nearly identical and refer only to "retail prices."[19]  Stevens Creek must supplement its responses to clarify whether "retail prices" mean the prices advertised to customers, negotiated with customers or paid by customers.

Second, the responses must indicate clearly a particular element of Stevens Creek's theory of the case.  If Stevens Creek alleges only that the lack of incentives affected its pricing in the aggregate, it cannot and need not point to individual prices that it might have lowered.  This appears to be the theory that Stevens Creek has put forth in its expert report.[20]  In that case, the responses must say so.  But if Stevens Creek claims that there were specific competitor prices that Stevens Creek would have matched or beaten if it had access to Chrysler incentives, it must identify those prices.[21]  The motion with respect to these interrogatories is GRANTED-IN-PART.

- Interrogatory No. 20:[22]  This interrogatory goes to the heart of Stevens Creek's theory of the case—exactly how it would have used the incentives it would have received, as reflected in how it used the incentives that it did receive.  Stevens Creek's response gives essentially no details.[23]  In its opposition to this motion, Stevens Creek points to deposition testimony from its owner, Mathew Zaheri, and an expert report,[24] but these sources do not provide a full response to the interrogatory.  The motion with respect to

---

[17] See Docket No. 143 at 6.

[18] Id.

[19] Docket No. 131-2, Ex. 6 at 15-18.

[20] See Docket No. 143 at 6.

[21] Several of Stevens Creek's responses appear to stray from this theory.  For example, the response to Interrogatory No. 14 says that Stevens Creek "disclaims any obligation to show competitive harm or damages by evidence of lost sales to specific customers rather than by quantitative methods or other statistical means."  Docket No. 131-2, Ex. 6 at 18.  Also, Stevens Creek's supplemental response says that Stevens Creek "does not contend that any retail prices were necessarily higher during the Price Discrimination Periods than they would have been but for the price discrimination."  Docket No. 131-3, Ex. 8 at 4.  The combination of these responses implies that Stevens Creek subscribes to the first of the two theories above, but they still do not give Chrysler the unambiguous answer it is entitled to receive.

[22] See Docket No. 131-2, Ex. 5 at 22.

[23] See Docket No. 131-2, Ex. 6 at 22-23; Docket No. 131-3, Ex. 8 at 5.

[24] See Docket No. 143 at 6-7.

4

United States District Court
Northern District of California

this interrogatory is GRANTED.

- Interrogatory No. 22:[25] Stevens Creek admits that its response to this interrogatory is incomplete.[26] Instead of supplementing that response, however, Stevens Creek simply refers Chrysler to its expert report.[27] That is not enough. The motion to compel with respect to this interrogatory is GRANTED.

Chrysler also moves to compel Stevens Creek to produce additional electronically stored information, including emails from employees' corporate Gmail accounts and financial documents. Chrysler notes three general problems with what Stevens Creek has produced. First, there are significant time gaps. Stevens Creek alleges that the price discrimination occurred between July 1, 2012 and June 30, 2013.[28] However, in response to Chrysler's request for documents "relating to any communications with any actual or potential customer,"[29] Stevens Creek has produced as few as three emails from the relevant period. Second, Chrysler claims that Stevens Creek used inadequate search parameters in its effort to locate responsive emails. Stevens Creek did not provide its employees with a copy of Chrysler's requests; nor did it provide any meaningful direction on how to identify the requested emails.[30] Third, Chrysler says that Stevens Creek has not asked all the relevant custodians to search for documents. In particular, Stevens Creek asserts that it need not produce documents from non-sales employees, even though Chrysler

---

[25] *See* Docket No. 131-2, Ex. 5 at 23.

[26] *See* Docket No. 143 at 7.

[27] *See id.*

[28] *See* Docket No. 110 at ¶¶ 31-42; Docket No. 143 at 2.

[29] Docket No. 131-2, Ex. 1 at 16.

[30] *See* Docket No. 142-2 at 23:25-26:7. Stevens Creek merely "suggested that [employees] . . . pull any email that had 'Chrysler' in it." *Id.* at 25:23-24. Employees did not search for any other communications, even though Chrysler requested documents related to sales strategies and customer complaints, among other topics. *See* Docket No. 131-2, Ex. 1 at 15-17. Chrysler also claims—and Stevens Creek does not dispute—that the vast majority of the emails produced were only those that employees received, meaning that employees may not have searched sent and deleted emails. *See* Docket No. 130-4 at 14 n.9.

Case No. 13-cv-04236-BLF
ORDER GRANTING-IN-PART MOTION TO COMPEL

United States District Court
Northern District of California

1    has asked for a broader set of financial documents.[31]

2         Stevens Creek has failed to "show that the information [requested] is not reasonably

3    accessible because of undue burden or cost."[32]  It argues that it already has undertaken reasonable

4    efforts in good faith to comply with Chrysler's requests for production, but the evidence that

5    Chrysler has provided suggests otherwise.  Stevens Creek must search for and produce documents

6    from the period of alleged price discrimination and not just from the following years.  It must

7    coordinate the search for documents properly by telling its employees exactly what Chrysler has

8    asked for and suggesting a broader set of search terms.[33]  And it must ask all of its salespeople and

9    all other employees who may have relevant documents to cooperate with the search.  Chrysler's

10   motion to compel production of these documents is GRANTED.

11        Chrysler also moves to compel Stevens Creek to produce emails from the personal

12   accounts of Stevens Creek employees and from Stevens Creek's customer communications

13   database.  Because Stevens Creek does not furnish all its employees with email accounts, many of

14   them use their personal accounts for business purposes.[34]  Stevens Creek argues that these

15   accounts are outside its "possession, custody, or control,"[35] so they are beyond the scope of party

16   discovery.  Similarly, because an outside vendor, AVV, maintains and operates Stevens Creek's

17   customer communications database, Stevens Creek contends that those communications cannot be

18   discovered either.  Chrysler responds that Stevens Creek still has control over its company

19   information, whether it is stored in personal email accounts or in a vendor's database.

20

21   ───────────────

22   [31] *See* Docket No. 131-2, Ex. 1 at 15-17.  Stevens Creek's opposition to this motion implies, but
     does not explicitly argue, that some of these requests are irrelevant to the case.  *See* Docket No.
23   143 at 13.  If nothing else, however, these documents would bear on the issue of damages.

24   [32] Fed. R. Civ. P. 26(b)(2)(B).

25   [33] The court encourages the parties to confer and decide jointly what these search terms should be.

26   [34] *See* Docket No. 142-2 at 34:22-35:11.

27   [35] Fed. R. Civ. P. 34(a)(1).

28                                            6
     Case No. 13-cv-04236-BLF
     ORDER GRANTING-IN-PART MOTION TO COMPEL

United States District Court
Northern District of California

What does it mean for a party to have control over data like the data disputed here? "Control is defined as the legal right to obtain documents upon demand."[36]  Like the majority of circuits, the Ninth Circuit has explicitly rejected an invitation "to define 'control' in a manner that focuses on the party's practical ability to obtain the requested documents."[37]  Documents are not discoverable under Rule 34 if the entity that holds them "could legally—and without breaching any contract—continue to refuse to turn over such documents."[38]  "The party seeking production

---

[36] *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999) (quoting *United States v. Int'l Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989)).

[37] *Id.* at 1107-08; *accord Cochran Consulting, Inc. v. Uwatec USA, Inc.*, 102 F.3d 1224, 1229-30 (Fed. Cir. 1996) (holding that "control" was "defined not only as possession, but as the legal right to obtain the documents requested upon demand"); *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995) (explaining that a party has possession, custody, or control only when the party has the legal right to obtain the documents upon demand); *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1427 (7th Cir. 1993) ("[T]he fact that a party could obtain a document if it tried hard enough and maybe if it didn't try hard at all does not mean that the document is in its possession, custody, or control; in fact it means the opposite."); *Gerling Int'l Ins. Co. v. C.I.R.*, 839 F.2d 131, 140 (3d Cir. 1988) ("In the absence of control by a litigating corporation over documents in the physical possession of another corporation, the litigating corporation has no duty to produce."); *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984) (holding that "control is the test" for whether documents need to be produced, where control "is defined not only as possession, but as the legal right to obtain the documents requested upon demand"); *cf. Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 821 (5th Cir. 2004) (finding plaintiff's subpoena requesting all documents to which the defendant had "access" overly broad, and limiting the scope of documents requested pursuant to Rule 34(a) to those over which the defendant had "control"); *see also In re Lululemon Athletica Inc. 220 Litig.*, C.A. No. 9039-VCP, 2015 WL 1957196, at *4-7 (Del. Ch. Apr. 30, 2015) (finding it unwarranted to search the personal email accounts of a company's non-employee directors for documents responsive to discovery request); *The Sedona Conference Commentary on Rule 34 and Rule 45 "Possession, Custody, or Control"* 27 (2015), *available at* https://thesedonaconference.org/system/files/sites/sedona.civicactions.net/files/private/drupal/files ys/publications/The%20Sedona%20Conference%20Commentary%20on%20Rule%2034%20and %20Rule%2045%20Possession%20Custody%20or%20Control.pdf ("A responding party will be deemed to be in Rule 34 or Rule 45 'possession, custody, or control' of Documents and ESI when that party has actual possession or the legal right to obtain and produce the Documents and ESI on demand.").

[38] *In re Citric Acid*, 191 F.3d at 1107-08; *see also Dugan v. Lloyds TSB Bank, PLC*, Case No. 12-cv-02549, 2013 WL 4758055, at *2 (N.D. Cal. Sep. 4, 2013) ("In the Ninth Circuit, 'control' is defined as 'the legal right to obtain documents upon demand.'" (quoting *In re Citric Acid*, 191 F.3d at 1107)); *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, Case No. 12-cv-02582, 2013 WL 1767960, at *1-3 (N.D. Cal. Apr. 15, 2013) (applying the control test); *In re NCAA Student-*

Case No. 13-cv-04236-BLF
ORDER GRANTING-IN-PART MOTION TO COMPEL

United States District Court
Northern District of California

1    of the documents . . . bears the burden of proving that the opposing party has such control."[39]

2         Chrysler has not carried this burden for the emails in personal accounts.  Chrysler points to

3    a Stevens Creek employee handbook that instructs employees to keep "internal information" in the

4    "sole possession" of Stevens Creek,[40] but this is not a contract and so does not create a legal right

5    for Stevens Creek to take back any such information now stored in personal accounts.[41]  And as

6    Stevens Creek pointed out at the hearing on this motion, even if the court were to order that

7    Stevens Creek collect emails from its employees' personal accounts, Chrysler has not identified

8    any authority under which Stevens Creek could force employees to turn them over.  The Ninth

9    Circuit has recognized that "[o]rdering a party to produce documents that it does not have the legal

10   right to obtain will oftentimes be futile, precisely because the party has no certain way of getting

11   those documents."[42]  That is the case here.[43]  The motion to compel production from employees'

12   personal email accounts is DENIED.[44]

---

*Athlete Name & Likeness Litig.*, Case No. 09-cv-01967, 2012 WL 161240, at *2-4 (N.D. Cal. Jan. 17, 2012) (same).

[39] *Int'l Union of Petroleum & Indus. Workers*, 870 F.2d at 1452.

[40] Docket No. 148-1, Ex. A at 15.

[41] The handbook claims to reprint parts of a confidentiality agreement that all employees are required to sign.  *See id.* at 15-16.  As reprinted in the handbook, the confidentiality agreement provides that "[u]pon request from [Stevens Creek], [the employee] must promptly return to [it] all confidential information and materials in [the employee's] possession."  *Id.* at 16.  However, there is no evidence that any employee ever signed this contract.

[42] *In re Citric Acid*, 191 F.3d at 1108.

[43] *Cf. Ubiquiti Networks*, 2013 WL 1767960, at *2-3 (refusing to compel a defendant corporation to produce business-related emails from the personal email address of a person who did some work for the corporation).

[44] Cases in other circuits have implied that emails in employees' personal accounts can be subject to party discovery in suits involving their employers.  *See, e.g.*, *P.R. Tel. Co., Inc. v. San Juan Cable LLC*, Case No. 11-cv-2135, 2013 WL 5533711, at *1 (D.P.R. Oct. 7, 2013) (finding spoliation where company failed to preserve emails from personal accounts that company officers had used to manage the company); *Bozic v. City of Wash.*, 912 F. Supp. 2d 257, 276 (W.D. Pa. 2012) (observing that defendant's counsel had corrected an "an inadvertent mistake" by searching

8

Case No. 13-cv-04236-BLF
ORDER GRANTING-IN-PART MOTION TO COMPEL

The AVV database is different.[45]  Although the contract that governs Stevens Creek's relationship with AVV is not before the court, Stevens Creek clearly has access to information from the AVV database that Stevens Creek pays AVV to maintain.[46]  In fact, Stevens Creek already did "go to AVV and ask them to do a special production generation" of certain data,[47] but the data produced was not from the relevant time period.  Furthermore, days before the hearing on this motion—and weeks after the motion was filed—Stevens Creek asked AVV to produce the information that Chrysler seeks here.  Stevens Creek argues that Chrysler should have to subpoena information from AVV directly, but the burden of a non-party subpoena is unnecessary when the information sought lies within Stevens Creek's legal control.[48]  Chrysler's motion with respect to the documents in the AVV database is GRANTED.

Finally, Chrysler asks the court to compel Stevens Creek to respond to Chrysler's Yelp-related discovery requests.[49]  Stevens Creek does not oppose.[50]  Chrysler's motion is GRANTED with respect to these inquiries.

---

and producing documents from personal email accounts of defendant's employees); *E.I. du Pont De Nemours & Co. v. Kolon Indus., Inc.*, 803 F. Supp. 2d 469, 501 (E.D. Va. 2011) (finding spoliation where employees deliberately deleted files and emails from their personal computers).  However, each of these cases is distinguishable on its facts, and none of these district courts were bound by the Ninth Circuit's holding in *In re Citric Acid*.

[45] At the hearing on this motion, Stevens Creek represented that essentially all communication between its salespeople and customers went through the AVV system.  If so, most of the information that Chrysler seeks is stored in the AVV database and not in personal email accounts.

[46] Stevens Creek does not dispute that it hired AVV to maintain this database.  *See* Docket No. 143 at 14-15.

[47] Docket No. 143-7 at 94:20-21.

[48] *Cf. Netbula, LLC v. Chordiant Software, Inc.*, Case No. 08-cv-00019, 2009 WL 3352588, at *1-2 (N.D. Cal. Oct. 15, 2009) (refusing to force defendants to subpoena documents from a non-party under Fed. R. Civ. P. 45 when plaintiffs could permit access to the documents far more easily).

[49] These requests include Interrogatory No. 25 and Requests for Production Nos. 66 and 67.  *See* Docket No. 131-4, Ex. 14 at 14-15.

[50] *See* Docket No. 143.

Case No. 13-cv-04236-BLF
ORDER GRANTING-IN-PART MOTION TO COMPEL

**SO ORDERED.**

Dated: December 10, 2015

PAUL S. GREWAL
United States Magistrate Judge

Case No. 13-cv-04236-BLF
ORDER GRANTING-IN-PART MOTION TO COMPEL