UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW ENTERPRISE, INC., <br><br>  Plaintiff, <br><br> v. <br><br> CHRYSLER GROUP LLC, <br><br>  Defendant. | Case No. 13-cv-04236-BLF <br><br> **ORDER GRANTING-IN-PART MOTION FOR SANCTIONS FOR SPOLIATION** <br><br> **(Re:  Docket No. 172)** |

The rules governing parties' duties to preserve data do not demand perfection. Only when a party should have preserved electronically stored information "in the anticipation or conduct of litigation" and when that party "failed to take reasonable steps to preserve it" may a court order corrective measures.[1] The standard is an attainable one.

Nearly four years ago, Plaintiff Mathew Enterprise, Inc., which does business as Stevens Creek Chrysler Jeep Dodge Ram,[2] sent Defendant Chrysler Group LLC a letter threatening litigation.[3] But for almost a year afterwards—much of the period during which Chrysler allegedly violated the Robinson-Patman Act[4]—Stevens Creek made no effort to preserve communications from customers or internal emails. Instead, the outside vendor storing the customer communications deleted them automatically without complaint from Stevens Creek.[5] Meanwhile,

---

[1] Fed. R. Civ. P. 37(e).

[2] *See* Docket No. 110 at 23.

[3] *See* Docket No. 172-6, Ex. 11.

[4] *See id.* at ¶¶ 82-83 (citing 15 U.S.C. § 13(a)).

[5] *See* Docket No. 172-5, Ex. 10 at 5-6.

1

Case No. 13-cv-04236-BLF
ORDER GRANTING-IN-PART MOTION FOR SANCTIONS FOR SPOLIATION

Stevens Creek discarded all its old messages while switching email providers.[6] This was not enough. Chrysler's motion for sanctions for spoliation[7] is GRANTED in its entirety, except for the proposed remedy.

**I.**

In amending Fed. R. Civ. P. 37(e), the advisory committee lamented the "excessive effort and money" litigants needed to spend on preservation because of inconsistent standards among the federal appellate circuits.[8] In particular, the committee stressed that the amended rule was designed to "reject[] cases such as *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99 (2d Cir. 2002), that authorize the giving of adverse-inference instructions on a finding of negligence or gross negligence."[9] The committee also sought to foreclose "reliance on inherent authority or state law to determine when certain [curative or sanctioning] measures should be used."[10] To that end, Rule 37(e) now provides a genuine safe harbor for those parties that take "reasonable steps" to preserve their electronically stored information.[11]

Stevens Creek, a car dealership in San Jose, buys and resells vehicles from Chrysler.[12] Chrysler provides so-called volume growth incentives to dealers that meet or exceed a monthly sales objective; Chrysler sets those objectives for each individual dealer based on a formula that takes into account the dealer's past sales history.[13] From April 2011 to June 2012, Stevens Creek

---

[6] *See id.* at 5.

[7] *See* Docket No. 172.

[8] Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

[9] Fed. R. Civ. P. 37(e)(2) advisory committee's note to 2015 amendment.

[10] Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

[11] Fed. R. Civ. P. 37(e).

[12] *See id.* at ¶ 1; *id.* at 23.

[13] *See id.* at ¶¶ 18-19, 30.

met its sales objective nearly every month.[14] In July 2012, however, a new Chrysler dealer, Fremont CJDR, opened 14 miles away.[15] Despite knowing that the Fremont dealership would cannibalize Stevens Creek's sales, Chrysler did not adjust Stevens Creek's sales objectives, rendering the volume growth incentives essentially unavailable.[16] Sure enough, from July 2012 to June 2013, Stevens Creek was unable to earn those incentives, while its nearby competitors continued to receive them even though their sales numbers were smaller in absolute terms.[17] As a result, over that eleven-month period, the prices that Stevens Creek could offer during negotiations with customers were higher than its competitors', diverting sales to the latter.[18]

To prove this contention, Stevens Creek intends to rely on statistical evidence of a decline in its actual sales relative to its expected sales based on past performance.[19] Stevens Creek has retained an expert, Edward Stockton, who has analyzed the statistical data and corroborates that conclusion.[20] Chrysler, on the other hand, believes that Stevens Creek raised its prices intentionally (or at least decided not to offer lower prices during negotiations with customers) in order to set a lower baseline sales objective for the following year's volume growth incentives.[21]

Chrysler therefore has sought two categories of electronically stored information: (1) internal communications within Stevens Creek that may shed light on its pricing decisions and negotiation strategies, and (2) external communications with customers that may reflect whether it

---

[14] *See id.* at ¶ 29.

[15] *See id.* at ¶ 31.

[16] *See id.* at ¶¶ 32-35.

[17] *See id.* at ¶¶ 37-38, 41.

[18] *See id.* at ¶¶ 42, 65-68; Docket No. 172-5, Ex. 10 at 2.

[19] *See* Docket No. 188-1 at 7-8.

[20] *See* Docket No. 173-20, Ex. 19.

[21] *See* Docket No. 172 at 1-2 (citing Docket No. 172-13, Ex. 26 at 700:9-701:17).

was price or some other factor that drove those customers to competing dealers.[22] When Stevens Creek failed to hand over these documents from the alleged price discrimination period, the court granted Chrysler's motion to compel production.[23]

After further investigation, however, Stevens Creek discovered that it simply had very few documents to produce. The only emails it could find dated from the last few weeks of the period at issue[24] because, "around June or July 2013, [Stevens Creek] changed email vendors for its corporate-assigned email accounts" and "did not retain . . . the emails contained on the previous email system."[25] Separately, AVV, the outside vendor that maintains and operates Stevens Creek's customer communications database, deletes "all prospect notes"—including "all records of communication; inbound/outbound email, read receipt notifications and manually entered notes by a dealership representative"—automatically after 25 months.[26] Because Stevens Creek did not reach out to AVV until July 2015,[27] effectively all customer communications from the period at issue were lost irretrievably.

Stevens Creek did manage to produce certain data in other forms. Stevens Creek maintains a separate customer relationship management database called ProMax, in which the dealership tracks many, if not all, customer contacts.[28] That database included a "Last Note" field in which salespeople could, and sometimes did, record a summary of the last conversation with the

---

[22] *See* Docket No. 172-1 at ¶¶ 4-14. The court previously granted Chrysler's motion to compel this information. *See* Docket No. 150 at 5-6, 9.

[23] *See* Docket No. 150 at 5-6, 9.

[24] *See* Docket No. 172-13, Ex. 27.

[25] Docket No. 172-5, Ex. 10 at 5.

[26] *Id.* at 6.

[27] *See* Docket No. 172-9, Ex. 16 at 28:12-29:7.

[28] *See* Docket No. 189-3.

4
Case No. 13-cv-04236-BLF
ORDER GRANTING-IN-PART MOTION FOR SANCTIONS FOR SPOLIATION

potential customer.[29] Stevens Creek did produce its ProMax database for the relevant period. Furthermore, Stevens Creek produced all of the data in the AVV database other than the customer communications themselves.[30] This consisted of customer contact information, the desired vehicle and whether a sale was completed.[31] Stevens Creek also claims that it searched the personal email account of Mathew Zaheri, MEI's principal owner, using a list of terms that Chrysler provided.[32] According to Zaheri, that search hit on very few emails because he is not a native English speaker and avoids communicating in writing.[33] That said, at least a few emails from Chrysler—sent to Zaheri's personal account and containing the search terms—should have turned up in the search,[34] but Stevens Creek did not produce them.

Unsatisfied with Stevens Creek's efforts, Chrysler filed the instant motion.[35] Chrysler observes, and Stevens Creek does not dispute, that the duty to preserve documents attached when Stevens Creek sent a litigation threat letter in August 1, 2012.[36] Chrysler argues that the loss of the internal emails and customer communications from almost all of the alleged price discrimination period constituted spoliation, so that Chrysler is entitled to a remedy under Fed. R. Civ. P. 37(e)(1). Specifically, Chrysler seeks an order precluding Stevens Creek from offering testimony from Zaheri or Stockton or interrogatory responses, to the extent that the testimony or interrogatory responses relate to the following topics: (1) diversion; (2) the effect of Chrysler's

---

[29] *See id.* at 7.

[30] *See* Docket No. 189-4.

[31] *See id.* at 1-3.

[32] *See* Docket No. 186 at ¶¶ 2-7.

[33] *See* Docket No. 187 at ¶ 7.

[34] *See* Docket Nos. 191-5, 191-6, 191-7.

[35] *See* Docket No. 172.

[36] *See* Docket No. 172-6, Ex. 11.

incentive program on Stevens Creek's decision to raise prices in August 2012; (3) the rationality or reasonableness of raising prices in August 2012 and (4) the reasons Stevens Creek changed its prices or negotiation strategy in August 2012.[37]

## II.

This court has jurisdiction under 28 U.S.C. §§ 1332, 1337 and 1367. The undersigned was assigned discovery matters in this case pursuant to Fed. R. Civ. P. 72(a).

## III.

As recently revised, Rule 37(e) now explicitly defines when spoliation has occurred and what remedies a court may order to correct it. The rule lists three requirements for spoliation: (1) the "electronically stored information" at issue "should have been preserved in the anticipation or conduct of litigation"; (2) that information "is lost because a party failed to take reasonable steps to preserve it" and (3) "it cannot be restored or replaced through additional discovery."[38] If these requirements are satisfied, and if another party is prejudiced by the loss, under Rule 37(e)(1) the court "may order measures no greater than necessary to cure the prejudice." If the party that lost the evidence "acted with the intent to deprive another party of the information's use in the litigation," more severe sanctions are available under Rule 37(e)(2), including a presumption that the lost information was unfavorable to the party, instructing the jury that it may or must apply such a presumption or even dismissing the action entirely.[39] Here, Chrysler only seeks relief under Rule 37(e)(1).[40]

---

[37] *See* Docket No. 172 at 15. Chrysler alternatively seeks the same remedy under Fed. R. Civ. P. 37(b)(2) for Stevens Creek's alleged failure to search Zaheri's personal email account.

[38] Fed. R. Civ. P. 37(e).

[39] Fed. R. Civ. P. 37(e)(2).

[40] *See* Docket No. 172 at 5, 13. The court notes that, because this case was pending at the time Rule 37(e) was amended, it must consider whether new Rule 37(e) even applies. When transmitting the amendments to Congress, the Chief Justice ordered that the new rule was to apply "insofar as just and practicable [to] all proceedings then pending." "[B]ecause the amendment is in some respects more lenient as to the sanctions that can be imposed for violation of the preservation obligation, there is no inequity in applying it." *CAT3, LLC v. Black Lineage, Inc.*,

Rule 37(e) intentionally leaves to the court's discretion exactly what measures are necessary.[41] "In an appropriate case, it may be that serious measures are necessary to cure prejudice found by the court," including preclusive sanctions, allowing parties to argue spoliation to the jury and instructing the jury on how it should evaluate evidence or argument about spoliation.[42] The court should take care, however, "to ensure that curative measures under subdivision (e)(1) do not have the effect of measures that are permitted under subdivision (e)(2) only on a finding of intent to deprive another party of the lost information's use in the litigation."[43]

There is no question that spoliation has occurred. Stevens Creek does not dispute that it should have preserved the emails and the AVV communications. Stevens Creek took literally no action to preserve the information. And, despite Stevens Creek's belated best efforts, these communications are lost forever.

Stevens Creek instead argues that Chrysler has suffered no prejudice from the spoliation. Individual customer communications, Stevens Creek contends, could not overcome its statistical evidence of sales diversion. Moreover, Chrysler cannot show that those communications contained any evidence of customers choosing other dealerships for any reason other than price, in part because Stevens Creek always negotiated in person or on the phone instead of by email.[44] In any case, the customer data that Stevens Creek did produce adequately substitute for what it could not. And as to the internal emails, they would not contain any relevant information either because Zaheri never discussed strategy over email.

---

Case No. 14-cv-05511, 2016 WL 154116, at *5 (S.D.N.Y. Jan. 12, 2016).

[41] Fed. R. Civ. P. 37(e)(1) advisory committee's note to 2015 amendment.

[42] *Id.*

[43] *Id.*

[44] Stevens Creek also suggests that any customer communications would have been inadmissible hearsay, but hearsay objections are impossible to evaluate without the documents themselves; any number of exceptions may have applied.

Stevens Creek's reasoning is most persuasive with respect to its internal communications. Although Chrysler argues that Stevens Creek did not search Zaheri's personal email account at all, Zaheri and Stevens Creek's in-house counsel have submitted declarations in which they aver under penalty of perjury that Stevens Creek conducted the search.[45] Taking these statements as true, the only possible explanation for Stevens Creek's failure to produce the emails to Zaheri that Chrysler identifies[46] is that Zaheri deleted those—and, presumably, other—emails as well.[47] Still, Chrysler has not "come forward with plausible, concrete suggestions" about what the internal emails might have contained.[48] It has failed to show prejudice from the loss of internal emails.

Customer communications are a different story. The key problem here, as with spoliation in general, is that neither party can say with any certainty what the deleted communications would have shown. Stevens Creek has provided some evidence that Zaheri and Stevens Creek, like most in their line of work, preferred to negotiate over the telephone or in person.[49] But, in the customer communications post-dating the alleged discrimination period, Chrysler has identified several instances of a Stevens Creek salesperson offering a written price quote.[50] Zaheri also testified at deposition that most Internet shoppers "like[] to finish the deal before they come in."[51] The lost emails could have shed some light on the negotiating process itself.

Similarly, the destroyed documents could have helped explain why customers chose other

---

[45] *See* Docket No. 186 at ¶ 7; Docket No. 187 at ¶ 10.

[46] *See* Docket Nos. 191-5, 191-6, 191-7.

[47] For this reason, the issue with respect to these emails is spoliation and not compliance with the court's previous order on the motion to compel. And so, to the extent that Chrysler brings its motion under Rule 37(b), the motion is DENIED.

[48] *Hynix Semiconductor Inc. v. Rambus Inc.*, 897 F. Supp. 2d 939, 981 (N.D. Cal. 2012) (emphasis omitted) (quoting *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1328 (Fed. Cir. 2011)).

[49] *See* Docket No. 187 at ¶¶ 4-5; Docket No. 189-5.

[50] *See* Docket No. 130-11; Docket No. 189-5 at 3, 7.

[51] Docket No. 192-4 at 59:24-60:12.

dealerships. Zaheri testified that talking to potential customers was the only way he knew that they were choosing Stevens Creek's competitors on price.[52] But at least some customers did give their reasons in writing,[53] and Stevens Creek denied Chrysler the chance to contradict Zaheri's testimony with that evidence.

Even if Stevens Creek intends to use statistical evidence to make its point, Chrysler's litigation strategy is not restricted by its opponent's. In a case that hinges on Stevens Creek's negotiations with customers and the reasons that customers chose other dealerships, contemporaneous communications with customers certainly could have been probative. The information that Stevens Creek has produced is no replacement—customer contact information and salespeople's shorthand notes are not nearly as valuable as what salespeople and customers actually said.[54] Chrysler should have had the opportunity to ask the jury to decide whether Chrysler's anecdotal evidence undercut Stevens Creek's statistical showing. Stevens Creek's lackadaisical attitude towards document preservation took away that opportunity. Not only has spoliation occurred, but it also has prejudiced Chrysler.

The only remaining question is the remedy. Despite the significant prejudice, Chrysler's suggested preclusive sanctions are too stringent. The advisory committee notes to the recent amendment of Rule 37(e) observe that "[a]n example of an inappropriate (e)(1) measure might be an order . . . precluding a party from offering any evidence in support of[] the central or only claim or defense in the case." Diversion, for example, is a critical element of Stevens Creek's theory, and precluding evidence on diversion would effectively decide the case for Chrysler.

At the hearing on this motion, Stevens Creek proposed an alternative: allowing Chrysler to

---

[52] *See* Docket No. 173-18 at 33:8-35:25.

[53] *See* Docket No. 173-20, Exs. 21, 24, 25.

[54] Stevens Creek also suggests in passing that Chrysler could have used the customer contact information to conduct a survey. *See* Docket No. 185 at 6. That approach would have its own obvious drawbacks, including but not limited to its cost, the difficulty of ensuring participation and the fact that customers' memories inevitably have faded.

9
Case No. 13-cv-04236-BLF
ORDER GRANTING-IN-PART MOTION FOR SANCTIONS FOR SPOLIATION

introduce communications, subject to the Federal Rules of Evidence, post-dating the alleged price discrimination period as if they came from that period itself.  That hits closer to the mark, but it does not go far enough.  Chrysler suggests that Stevens Creek intentionally changed its negotiation strategy during the period at issue.  Later communications would not reflect that behavior.

The court opts for a middle ground.  First, it adopts Stevens Creek's suggestion; at the very least, Chrysler can use this evidence to support its argument that customers chose other dealerships for many reasons besides price.  Second, to the extent Zaheri or anyone else testifies as a percipient witness about why he or she believes customers were diverted to other dealerships, Chrysler may present evidence and argument about Stevens Creek's spoliation of customer communications.  Third, Chrysler may do the same if and when a Stevens Creek percipient witness offers testimony about negotiations, individually or in the aggregate, that took place during the alleged discrimination period.  Fourth, if the presiding judge deems it necessary in light of any such evidence or argument by Chrysler, she may "giv[e] the jury instructions to assist in its evaluation of such evidence or argument."[55]  Fifth, and finally, Chrysler is awarded the reasonable attorney's fees it incurred in bringing this motion.

**SO ORDERED.**

Dated: May 23, 2016

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[55] Fed. R. Civ. P. 37(e)(1) advisory committee's note to 2015 amendment.  Of course, as noted earlier, in the absence of intentional spoliation, Rule 37(e) precludes any "instruct[ion to] the jury that it may or must presume the [lost] information was unfavorable to" Stevens Creek.  Fed. R. Civ. P. 37(e)(2)(B).