UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MATTHEW ENTERPRISE, INC., <br><br> Plaintiff, <br><br> v. <br><br> CHRYSLER GROUP LLC, <br><br> Defendant. | Case No. 13-cv-04236-BLF <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO EXCLUDE** <br><br> [Re: ECF 178] |

Defendant seeks to exclude several of the opinions, models, and tabs offered by Plaintiff's expert, Edward Stockton. Defendant does not challenge Mr. Stockton's qualifications, but attacks his opinions as "unsupported, unreliable, or misleadingly irrelevant" under Federal Rule of Evidence 702. Mot. at 1, ECF 178. For the reasons stated below, the motion is GRANTED IN PART and DENIED IN PART.

I. **LEGAL STANDARD**

Rule 702 requires that "expert testimony be both relevant and reliable." *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 860 (9th Cir. 2014) (internal citation and alteration omitted). "This requires district courts, acting in a 'gatekeeping role,' to assess 'whether the reasoning or methodology underlying the testimony' is valid and 'whether that reasoning or methodology properly can be applied to the facts in issue.'" *Id.* (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93, 597 (1993)). In other words, "[i]t is not 'the correctness of the expert's conclusions' that matters, but 'the soundness of his methodology.'" *Id.* (quoting *Estate of Barabin v. AstenJohnson*, *Inc.*, 740 F.3d 457, 463 (9th Cir. 2014)).

III. **DISCUSSION**

A. **Functional Availability Opinions**

Defendant first seeks to exclude Mr. Stockton's opinions that Chrysler's objectives were "functionally unavailable" to Plaintiff because they do not consider whether Plaintiff could have achieved the objectives through "commercially reasonable" efforts.

Defendant relies on *Southwest Paper Co., LLC v. Hansol Paper,* No. CV 12-8721 CAS (RZX), 2013 WL 11238487, at *4 (C.D. Cal. Apr. 15, 2013) for this argument, but as Plaintiff correctly identifies, *see* Opp. at 2, this misreads *Southwest Paper*, which discusses the need for a "commercially reasonable relationship between the amount of the discount and . . . costs" for a defense of functional discounts, not the need to evaluate commercially reasonable efforts to establish functional unavailability. *Id.* at *4. In other words, both the method (i.e., comparing the discount to costs versus assessing whether a plaintiff could satisfy sales objectives through commercially reasonable efforts) and the object of the analysis (i.e., functional discounts versus functional unavailability) at issue here and in *Southwest Paper* are distinct.[1] Therefore, Defendant's first argument fails.

Defendant next argues that Mr. Stockton's functional availability opinions must be excluded because they do not rely on any treatise or standard. Mot. at 1. Plaintiff responds that Mr. Stockton's opinion is based on his gravity model and regressions that compare Plaintiff's objectives following Fremont's entry to their historic trend. *See* Stockton Report ¶¶ 37-39, ECF 171-5. Because, as discussed below, the Court finds Mr. Stockton's gravity model to be admissible and Defendant does challenge the regressions, the Court finds that Defendant challenges "the correctness of the expert's conclusions" rather than "the soundness of his methodology." *See Ollier,* 768 F.3d at 860. Accordingly, the Court DENIES Defendant's motion to exclude the functional availability opinions.

---

[1] Functional availability is a judicially-created doctrine that requires that price incentives be "available to all purchasers, not only in theory but in fact." *FLM Collision Parts, Inc. v. Ford Motor Co.*, 542 F.2d 1019, 1025-26 (2d Cir. 1976). Where discounts are functionally available, "it has been held that either no price discrimination has occurred, or that the discrimination is not the proximate cause of the injury." *Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 866 (6th Cir. 2007) (internal citation omitted). Functional discounts, on the other hand, are discounts "given to a purchaser based on its role in the supplier's distributive system," *Southwest Paper,* 2013 WL 11238487, at *3 (quoting *Texaco Inc. v. Hasbrouck*, 496 U.S. 543, 554 n. 11 (1990)), and may serve as a defense, *id.* at *3 (quoting *American Booksellers Ass'n v. Barnes & Noble, Inc.*, 135 F.Supp.2d 1031, 1061 (N.D.Cal.2001)).

**B. Economic Rationality Opinion**

Defendant next seeks to exclude Mr. Stockton's opinion that Plaintiff acted economically rationally when it raised its prices in August 2012 because the opinion is not and could not be based on economic analysis as Mr. Stockton failed to consider the effect on expected profits. Mot. at 2 (citing Stockton Depo. at 725:23-726:8). However, Mr. Stockton testified that such analysis is only "one thing an economist might do" to assess rational behavior, *see* Stockton Depo. at 726:17, 727:11, 728:12, and Mr. Stockton explains in his report that he instead relied on an economic model, *see* Stockton Report ¶¶ 42-43. Therefore, as above, Defendant challenges "the correctness of the expert's conclusions" rather than "the soundness of his methodology." *See Ollier,* 768 F.3d at 860. Accordingly, Defendant's motion to exclude the economic rationality opinion is DENIED.

**C. Alternative Objectives Opinion**

Defendant next challenges Mr. Stockton's opinion that, to avoid incentive discrimination, Defendant should have set different objectives for Plaintiff because Mr. Stockton failed to offer alternative objectives in his Initial Report and does not explain how the objectives he offers in his Rebuttal Report are superior to those used by Chrysler. Mot. at 2-3. Because the Court has already stricken Mr. Stockton's discussion of but-for objectives in his Rebuttal Report, that portion of Defendant's motion is DENIED as moot. *See* Order Granting in Part and Denying in Part Motion to Strike ("Strike Order") at 5-6, ECF 265 (striking Rebuttal Report Tab 10 and ¶ 27).

As Plaintiff correctly responds, the other opinions and tabs that Defendant now seeks to exclude—Stockton Report ¶¶ 17, 38-39, 44 and Rebuttal Report ¶¶ 24-26 and Tabs 8-9—concern functional availability, not the superiority of some undefined alternative objectives, and Mr. Stockton need not offer a superior alternative to criticize the objectives set by Defendant. As above, Defendant challenges "the correctness of the expert's conclusions" rather than "the soundness of his methodology," *see Ollier,* 768 F.3d at 860, and the Court therefore DENIES Defendant's motion to exclude what Defendant deems the "alternative objectives" opinion.

**D. Inter/Intra-Brand Competition Opinion**

Defendant next asks the Court to exclude Mr. Stockton's opinion that inter-brand price competition is dwarfed by intra-brand competition because it is solely "intuitive" and not based on

3

any actual analysis. Mot. at 3. While Defendant's characterization of Mr. Stockton's opinion at Rebuttal Report ¶ 19 is correct, the remaining opinions and tabs rely on regression analysis and calculations of how many cars competing dealers sold to customers living in one another's territory. Accordingly, Defendant's motion to exclude Mr. Stockton's opinion regarding inter/intra-brand competition is GRANTED for Rebuttal Report ¶ 19, which is not based on any methodology, but otherwise DENIED.

### E. Diversion Opinion

Defendant asks the Court to exclude Mr. Stockton's opinion that sales were diverted from Plaintiff to any favored dealer because it is not based on any model or data and because he failed to disaggregate lost sales from diverted sales. As the Court discussed at length in its Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment ("Summary Judgment Order"), Defendant is correct that Mr. Stockton apparently invented his own definition of diversion, mistakenly opining that "there can be diversion even if no customer that declined to purchase from Stevens Creek later purchased a similar vehicle from a favored dealer" and that diversion "does not have to be [to] a favored dealer." Def.'s Exh. 8 (Stockton Depo. 3) at 545:1-6, 542:4-9, 546:18-24, ECF 171-4. Therefore, the Court GRANTS Defendant's motion to preclude Mr. Stockton from testifying that sales were diverted from Stevens Creek to any favored dealer.

### F. Objective Discrimination Opinion

Defendant next seeks to exclude Mr. Stockton's opinions to the extent that they assert "objective discrimination"—that is, harm from the simple fact of having to meet higher objectives, rather than harm from the price discrimination that resulted from failure to meet those objectives.[2] As Plaintiff correctly argues, however, Mr. Stockton does not offer any such opinions. At his deposition, Mr. Stockton testified that he did not attempt to disaggregate the effect of the objectives alone. *See* Stockton Depo. at 648:9-13, 679:8-20. Accordingly, Defendant's motion to exclude opinions regarding objective discrimination is DENIED.

---

[2] Defendant seeks to exclude four opinions on this basis. Of these, the Court has already considered and rejected Defendant's arguments regarding Mr. Stockton's functional availability and alternative objectives opinions.

### G. Reduced Traffic Opinion

Defendant next moves to exclude Mr. Stockton's opinion that incentive discrimination reduced customer traffic due to changes in Stevens Creek's pricing practices or non-price activities as precluded by Plaintiff's interrogatory responses and for lack of foundation. The Court agrees with Defendant. Plaintiff's interrogatory response that "price discrimination did not cause Stevens Creek to increase its advertised or offered prices during the [price discrimination period]" precludes Mr. Stockton's opinion about pricing practices. *See* Def.'s Exh. 3 (Interrog. 12), ECF 171-3. And Mr. Stockton's opinion about non-price activities is based entirely on economic theory and conjecture that lack an adequate foundation. Accordingly, Defendant's motion to exclude this opinion is GRANTED.

### H. "Residual Effects" Opinion

Defendant also seeks to exclude Mr. Stockton's opinion that the price discrimination had residual effects after the price discrimination period because it is based solely on theory. As above, Defendant's challenge establishes that Mr. Stockton lacks foundation for this opinion and the motion is therefore GRANTED.

### I. Geographic Market Opinion

Defendant next moves to exclude Mr. Stockton's opinions concerning geographic market because the asserted market is too large and is not based on any generally-accepted test. Defendant relies on *Madani v. Equilon Enterprises LLC*, No. CV 04-10370 JVS JTLX, 2009 WL 2148664, at *6 (C.D. Cal. July 13, 2009), which discounted an expert's "methods for analyzing . . . price zones [as] inadequate" on a Motion for Judgment as a Matter of Law because the methods failed to consider inter-brand competition and actual data. Importantly, *Madani* found that the method deserved minimal weight, not that it was inadmissible.[3] Therefore, the Court again finds that Defendant challenges "the correctness of the expert's conclusions" rather than "the soundness of his methodology," *see Ollier,* 768 F.3d at 860, and the Court DENIES Defendant's motion to exclude Mr. Stockton's geographic market opinion.

---

[3] In addition, Plaintiff distinguishes from *Madani* by noting that Mr. Stockton considered actual data, such as cross-sales reports showing significant sales by dealers in one another's trade zones.

**J. Gravity Model**

Defendant next asks the Court to exclude Mr. Stockton's gravity model because it has not been tested, its error rate is unknown, and it has not been shown to be a reliable method for estimating lost sales, the effect of a new entrant, or the effects of incentive discrimination.

Plaintiff responds that gravity models have been accepted as a reliable method for estimating how many customers are expected to come to a business based on location. *See In re Emerald Casino, Inc.*, 530 B.R. 44, 217 (N.D. Ill. 2014) (finding that a gravity model satisfies the second *Daubert* factor because "gravity models have been used [by] . . . grocery stores, health care businesses, ATM operations, and other retail businesses[ ] to select the optimal locations based on projected visitors" and gravity models "are commonly used . . . in the field of economics due to their fortunate empirical validity"). Plaintiff additionally offers a decision by the California New Motor Vehicle Board finding Mr. Stockton's "gravity-based sales models . . . inherently more credible" than another expert's model for estimating the effect of a dealer's relocation on another dealer's expected sales. *See* Attachment A to Norman Decl. ¶ 123, ECF 199-2. Finally, Plaintiff argues that the gravity model is largely based on the same principles and methods that Defendant and other manufacturers use to evaluate dealer performance. Opp. at 9 (citing Stockton ¶¶ 18-24).

Given the wide acceptance of gravity models in economic literature and the California New Motor Vehicle Board's recent reliance on Mr. Stockton's model specifically, the Court finds that Plaintiff has established "the soundness of his methodology." *See Ollier*, 768 F.3d at 860. The Court is not persuaded otherwise by Defendant's contention that Mr. Stockton failed to test his model in this case, *see* Reply at 4, because Mr. Stockton outlines precisely how he tested its validity. *See* Stockton ¶¶ 26-27, Tab 8. Defendant's remaining objections to the model—for example, that the model does not distinguish the effects of convenience versus price—may go to the weight but not the admissibility of Mr. Stockton's gravity model. Accordingly, Defendant's motion to exclude Mr. Stockton's gravity model is DENIED.

**K. Lost Sales Opinion**

Defendant next challenges Mr. Stockton's lost sales analysis because it does not isolate lost sales from diverted sales and therefore cannot reliably establish damages. Defendant bases this

6

argument on two cases that refuse to accept a damages model "[w]here an antitrust plaintiff challenges multiple business practices of the defendant yet fails to disaggregate its proof of damages." *Litton Sys., Inc. v. Honeywell, Inc.*, No. CV 90-4823 MRP(EX), 1996 WL 634213, at *2-*3 (C.D. Cal. July 24, 1996); *see also Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433-34 (2013) (refusing to accept a model for damages that assumed four market distortions when only one remained at issue in the case). Defendant contends that Mr. Stockton similarly fails to isolate the damage caused by its alleged wrongdoing from the effects of other potential changes over the same time period.

The Court disagrees. Unlike the plaintiffs in the cases offered by Defendant, Plaintiff does not challenge other wrongdoing by Defendant and Mr. Stockton's model therefore does not aggregate the effects of multiple alleged harms. Furthermore, Mr. Stockton's gravity model "accounts for the spatial impact that the establishment of [Fremont] has on [Plaintiff]" and the possibility that Fremont "as a new dealership with benefits inherent in that status or simply as a stronger operator, could have impact on [Plaintiff] beyond spatial impact." Stockton ¶ 60. Mr. Stockton additionally attempted to disaggregate Fremont's inherent attractiveness to consumers from the attractiveness caused by the price discrimination. *Id.* ¶¶ 61-62.

"Although damages may be ascertained from a jury's just and reasonable inference from proof of the wrongful act, its tendency to injure plaintiff's business, and evidence of decline in profits, there must nevertheless be a reasonable foundation from which a jury can calculate the amount of damages." *Yentsch v. Texaco, Inc.*, 630 F.2d 46, 59 (2d Cir. 1980) (citing *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 264 (1946)). Plaintiff argues that Mr. Stockton provides such a reasonable foundation here and the Court agrees because Mr. Stockton reasonably attempted to isolate the effect of Defendant's alleged price discrimination. Therefore, as above, Defendant challenges "the correctness of the expert's conclusions" rather than "the soundness of his methodology," *see Ollier,* 768 F.3d at 860, and the Court DENIES Defendant's motion to exclude Mr. Stockton's lost sales analysis.

**L.  "Substantial and Sustained" Opinion**

Defendant similarly challenges Mr. Stockton's opinion that the alleged discrimination was

"substantial and sustained" because Mr. Stockton failed to measure diverted, rather than lost, sales and therefore cannot speak to the effect on competition. However, as discussed at length in the Summary Judgment Order, the Court disagrees with Defendant's reading of the law and finds that evidence of "substantial and sustained" discrimination can give rise to a presumption of competitive injury absent direct proof of diverted sales. Defendant additionally challenges this opinion because "it does not take an economist to *characterize* a discount," Reply at 5 (emphasis in original), but the Court again disagrees. An opinion regarding the effect of a discount is precisely the sort of analysis that an expert must provide. Thus, the Court DENIES Defendant's motion to exclude this opinion.

### M. Post-Initial Sale Damages Opinion

Defendant moves to exclude Mr. Stockton's damages estimates to the extent that they include damages for reduced used vehicle sales because the alleged injury concerns only competition for new vehicles. Mot. at 11.

The relevant inquiry for damages is "what plaintiff's situation would have been in the absence of the defendant's violation." *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356, 1367 (9th Cir. 1986) (quoting *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 566 (1981)). "It is inimical to the antitrust laws to award damages' for losses stemming from continued competition." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990) (internal citation omitted).

Here, Plaintiff asserts that its diminished used car, parts, and services sales all "stemmed from" Defendant's price discrimination because Plaintiff could have sold the used vehicles that would have been traded in for new vehicles and could also have sold parts and services to customers who bought new vehicles. Opp. at 11. While Defendant may challenges "the correctness of the expert's conclusions" at trial, it has failed to challenge "the soundness of his methodology," *see Ollier,* 768 F.3d at 860, and Defendant's motion to exclude the post-initial sale damages opinion is therefore DENIED.

### N. Rebuttal Report Tab 3

Defendant next attacks Rebuttal Tab 3, which purports to show competition among dealers

in the area closest to Plaintiff, as irrelevant because the results show minimal competition. Plaintiff disagrees with this characterization of Mr. Stockton's results. As above, this challenge goes to "the correctness of the expert's conclusions," not "the soundness of his methodology," *Ollier,* 768 F.3d at 860, and is therefore DENIED.

### O. Rebuttal Tab 6

Defendant asks the Court to exclude Rebuttal Tab 6 because it does not support Mr. Stockton's opinion that the CJDR market exhibits intra-brand price competition. Mot. at 11. As with Rebuttal Tab 3, Plaintiff disagrees with this characterization and correctly notes that Defendant does not challenge the methodology Mr. Stockton used for this analysis. Because Defendant challenges "the correctness of the expert's conclusions" rather than "the soundness of his methodology," the Court DENIES its motion to exclude Rebuttal Tab 6. *See Ollier,* 768 F.3d at 860.

### P. Rebuttal Tab 7

Defendant next asks the Court to exclude Rebuttal Tab 7 because it relies on a single "cherry-picked" example, rather than a quantitative analysis, from more than 17 years ago. Plaintiff responds that the example is relevant, but does not address the age of the data and the anecdotal nature of the analysis. Accordingly, the Court agrees with Defendant that the methodology Mr. Stockton relies upon in Rebuttal Tab 7 is not sound and therefore GRANTS Defendant's motion to exclude Rebuttal Tab 7.

### Q. Rebuttal Report Tabs 10, 13-16, 25

Defendant asks the Court to exclude Rebuttal Report Tabs 10, 13-16, and 25. Mot. at 12-15. Having already granted Defendant's Motion to Strike these tabs, the Court DENIES this portion of the motion to exclude as moot.

### R. Initial Report Appendix Page 1

Defendant next moves the Court to exclude page 1 of the Appendix to Mr. Stockton's Initial Report because it "just calculates 'mass' via regression rather than via simple arithmetic average," establishes that Mr. Stockton's models explain at most 50% of Plaintiff's sales, and does not consider Fremont's entry. Mot. at 15. Plaintiff responds, and the Court agrees, that there is no

1 reason to exclude an analysis based on regression. In addition, Plaintiff explains that the analysis
2 is relevant because it tests the reliability of the gravity model generally, not with regard to
3 Fremont's entry specifically. While Defendant correctly replies that Plaintiff does not contend that
4 the page shows that the gravity model validly estimates the effect of new entrants, Plaintiff
5 explains that it is not offered for this purpose. Accordingly, Defendant's motion to exclude this
6 opinion is GRANTED to the extent that Plaintiff seeks to use it to show the model's validity with
7 respect to Fremont's entry but DENIED otherwise.

### S. Initial Report Tab 8

Finally, Defendant asks the Court to exclude Tab 8 of the Initial Report for the same reason: that it does not establish the gravity model's ability to disentangle the effects of Fremont's entry from those of the alleged discrimination. As above, Defendant's motion to exclude this opinion is GRANTED to the extent that Plaintiff seeks to use it to show the model's validity with respect to Fremont's entry but DENIED otherwise.

### IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion to Exclude

1. Functional Availability Opinions is DENIED;
2. Economic Rationality Opinion is DENIED;
3. Alternative Objectives Opinion is DENIED;
4. Inter/Intra-Brand Competition Opinion is GRANTED IN PART and DENIED IN PART;
5. Diversion Opinion is GRANTED;
6. Objective Discrimination Opinion is DENIED;
7. Reduced Traffic Opinion is GRANTED;
8. "Residual Effects" Opinion is GRANTED;
9. Geographic Market Opinion is DENIED;
10. Gravity Model is DENIED;
11. Lost Sales Opinion is DENIED;
12. "Substantial and Sustained" Opinion is DENIED;

13. Post-Initial Sale Damages Opinion is DENIED;

14. Rebuttal Report Tab 3 is DENIED;

15. Rebuttal Report Tab 6 is DENIED;

16. Rebuttal Report Tab 7 is GRANTED;

17. Rebuttal Report Tabs 10, 13-16, and 23 is DENIED as moot;

18. Initial Report Appendix Page 1 is GRANTED IN PART and DENIED IN PART; and

19. Initial Report Tab 8 is GRANTED IN PART and DENIED IN PART.

Dated: August 3, 2016

_____
BETH LABSON FREEMAN
United States District Judge