# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| MATHEW ENTERPRISE, INC., <br> Plaintiff, <br> v. <br> CHRYSLER GROUP LLC, <br> Defendant. | Case No. 13-cv-04236-BLF <br><br> **ORDER DENYING PLAINITFF'S MOTION FOR NEW TRIAL** <br><br> [Re: ECF 334] |

Plaintiff Mathew Enterprise, Inc., a Chrysler, Jeep, Dodge, and Ram ("CJDR") dealer operating at Stevens Creek CJDR ("Stevens Creek") brought this action alleging that Defendant Chrysler Group LLC ("Chrysler") offered incentive payments to other CJDR dealers in Northern California but not to Stevens Creek in violation of § 2(a) of the Robinson-Patman Price Discrimination Act ("RPA" or "Robinson-Patman Act"), 15 U.S.C. § 13.[1] On October 13, 2016, after a 7-day trial, the jury found in favor of Defendant Chrysler. *See generally* Verdict Form, ECF 331.

## I. BACKGROUND

### A. Statement of Facts

Chrysler manufactures and distributes CJDR vehicles through a network of authorized dealers, including Stevens Creek. Stipulation of Facts, Jury Instruction No. 13, ECF 329. Stevens Creek has been a CJDR dealer in San Jose, California since 2006, before alleged competitors San Leandro CJDR ("San Leandro") and Fremont CJDR ("Fremont") entered the market. *See* Tr. 177:4–9, ECF 345 (testimony of M. Zaheri).

---

[1] Stevens Creek initially brought four claims, but only the § 2(a) claim for damages remained at the time of trial.

Chrysler has a variety of incentive programs, which provide discounts or rebates to dealers or consumers. *Id.* at 180:4–16 (testimony of M. Zaheri). One such program, at issue in this case, is the Volume Growth Program ("VGP"), which generally provides dealers with incentives if they meet certain sales objectives in a given month. *Id.* at 312:1–11 (testimony of S. Begley). In this action, Stevens Creek claimed that for a period of time from July 2012 through June 2013, Chrysler violated the Robinson-Patman Act by engaging in price discrimination against Stevens Creek through the manner in which Chrysler set Stevens Creek's monthly sales objectives to qualify for incentive payments under Chrysler's VGP. Jury Instruction No. 2, EF 329.

During the time period in question, Stevens Creek was the largest CJDR dealer in the Bay Area. Tr. 194:10–11, ECF 345 (testimony of M. Zaheri). Stevens Creek brought this litigation because of a new entrant, Fremont, which had significantly fewer sales than did Stevens Creek but still received the incentives.[2] *Id.* at 194:11–12, 199:13–15, 199:22–200:7.

At trial, the uncontroverted evidence showed that Chrysler's formula for existing dealers' sales objectives was based on each dealer's prior year's actual sales plus a percentage increase in sales required to earn the incentive payments. *Id.* at 181:11–24 (testimony of M. Zaheri); *id.* at 448:19–21, ECF 346 (testimony of M. Thompson). This formula was applied to Stevens Creek and all other existing dealers during the relevant time. Stipulation of Facts, Jury Instruction No. 13.

For Fremont, a new dealership without a prior year's track record, no actual sales data was available. Chrysler allowed Fremont to participate in the incentive program by developing sales objectives generally based on Fremont's "planning potential," or projected sales. *Id.* at 449:10–25 (testimony of M. Thompson). That formula was in place for 6 months, and then replaced with Fremont's actual prior sales data. *Id.* at 458:7–14 (testimony of M. Thompson). Stevens Creek claimed that it was entitled to a modified sales objective because Fremont would take sales away

---

[2] This is in contrast to the typical RPA case, in which a smaller purchaser challenges volume based discounts for which it cannot qualify because of its size. *See, e.g.*, *FTC v. Morton Salt*, 334 U.S. 37 (1948); *Volvo Trucks*, 546 U.S. at 176 ("Congress responded to the advent of large chainstores, enterprises with the clout to obtain lower prices for goods than smaller buyers could demand[, by enacting the RPA].").

2

from it since the two dealers were 14 miles apart and Stevens Creek's prior year's sales data reflected high volume absent competition from Fremont. *Id.* at 199:2–25, 200:1–7, ECF 345 (testimony of M. Zaheri).

### B. The Robinson-Patman Act

Section 2, "when originally enacted as part of the Clayton Act in 1914, was born of a desire by Congress to curb the use by financially powerful corporations of localized price-cutting tactics which had gravely impaired the competitive position of other sellers." *FTC v. Anheuser-Busch, Inc.*, 363 U.S. 536, 543 & n.6 (1960) (citations omitted). By enacting the Robinson-Patman Act, "Congress sought to target the perceived harm to competition occasioned by powerful buyers, rather than sellers." *Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 175 (2006). The Act provides, in relevant part:

> It shall be unlawful for any person engaged in commerce . . . to discriminate in price between different purchasers of commodities of like grade and quality, . . . where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them . . . .

15 U.S.C. § 13(a). Thus, in order to establish a violation of the RPA, a plaintiff has the burden of proving: (1) sales were made in interstate commerce; (2) the product sold was of the same grade and quality as that sold to other buyers; (3) the seller discriminated in price between the two buyers; and (4) that the discrimination had a prohibited effect on competition. *See generally Volvo Trucks*, 546 U.S. 164; *Gen. Auto Parts Co. v. Genuine Parts Co.*, No. CIV 04-379, 2007 WL 704121, at *3 (D. Idaho Mar. 5, 2007) (citing 15 U.S.C. § 13(a)). The Supreme Court has explained "that Robinson-Patman does not ban all price differences charged to different purchasers of commodities of like grade and quality; rather, the Act proscribes price discrimination only to the extent that it threatens to injure competition." *Volvo Trucks*, 546 U.S. at 176 (citing *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 220 (1993)) (internal quotation marks omitted).

At issue here is the judicially created doctrine of "functional availability." "According to

3

this court-created rule, the plaintiff in a Robinson-Patman Act suit cannot recover damages for lower prices paid by its competitors to the defendant if those same prices were available to the plaintiff from a practical standpoint and on equal terms with its competitors." *See Smith Wholesale Co., Inc. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 866 (6th Cir. 2007) (citation and internal quotation marks omitted); *see also Gen. Auto Parts*, 2007 WL 704121, at *3.

### C. The Trial and This Motion

On September 26, 2016, a jury was empaneled, and the trial proceeded for 7 days. ECF 315, 316, 318, 320, 324, 325, 328, 330. On October 13, 2016, after deliberating for two days, the jury returned a verdict. ECF 330. The jury found that although Stevens Creek had proved by a preponderance of the evidence that (1) the vehicle sales from Chrysler that were being compared were of like grade and quality and (2) the sales from Chrysler that were being compared occurred at about the same time, Stevens Creek did not prove price discrimination by a preponderance of the evidence. *Id.* Accordingly, the jury returned a verdict for Defendant.

On November 8, 2016, Stevens Creek filed a motion for a new trial. Mot., ECF 334. Plaintiff challenges one jury instruction and the related verdict form question. *Id.* at 3. A hearing on the motion was held on January 19, 2017, and the motion was taken under submission. For the reasons stated herein, Stevens Creek's motion is DENIED.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 59(a)(1)(A) provides that, after a jury trial, a court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Such reasons may include a "verdict [that] is contrary to the clear weight of the evidence," a verdict "based upon false or perjurious evidence," or "to prevent a miscarriage of justice." *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000) (citation omitted). A court may also grant a new trial if it has given "erroneous jury instructions" or failed "to give adequate instructions." *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990) (citations omitted). To warrant a new trial, the movant must show that there was instructional error and that such error was prejudicial. *See Tritchler v. Cnty. of Lake*, 358 F.3d 1150, 1154 (9th Cir. 2004) (finding that "harmless errors do not require reversal"). In

4

evaluating whether a particular jury instruction was erroneous, the court must consider the jury instructions as a whole, and whether they "fairly and adequately cover the issues presented, correctly state the law, and are not misleading." *Duran v. City of Maywood*, 221 F.3d 1127, 1130 (9th Cir. 2000) (citation and internal quotation marks omitted).

## III. DISCUSSION

Plaintiff provides three grounds upon which it argues it is entitled to a new trial. First, Plaintiff argues that Jury Instruction 23 and Verdict Form Question No. 3 improperly stated the law regarding the burden of establishing functional availability by assigning the full burden of proof on that issue to Stevens Creek. Mot. 3. Second, Stevens Creek asserts that Jury Instruction 23 improperly stated the law regarding the elements of functional availability. *Id.* at 6. Finally, Stevens Creek contends that Jury Instruction 23 and Verdict Form Question No. 3 were confusing because they "toggl[ed] between the concepts of 'functional availability' and 'functional unavailability.'" *Id.* at 8. The Court addresses each of Plaintiff's arguments in turn below.

### A. Jury Instruction 23 and Question No. 3

Stevens Creek initially proposed the following jury instruction with respect to functional availability:

> A lower price is "functionally available" to a purchaser when (a) the seller takes steps to inform the purchaser that the lower price is available; (b) the lower price is made available to the purchaser on the same terms on which it is made available to other purchasers; and (c) if the seller imposes conditions on receiving the lower price, purchasers have the practical ability to satisfy those conditions if they choose to do so.

Revised Proposed Jury Instructions, Disputed Instruction No. 23B re Price Discrimination, Offered by Stevens Creek, ECF 303-1. The Court found the proposed instruction unsatisfactory, and instructed the parties to rewrite it. Thereafter, Stevens Creek proposed the following revision:

> In order for a price to be "functionally available" to Stevens Creek, (i) Chrysler must have administered its incentive program in an even-handed manner with respect to Stevens Creek and each competing dealer, and (ii) the incentives must have been practicably available to Stevens Creek had it engaged in commercially reasonable efforts to achieve them.

Jury Materials, Disputed Instruction No. 23 re Element 3, Price Discrimination Offered by Stevens Creek, ECF 321-1.

5

After extended discussions with the parties, the Court overruled Stevens Creek's objections to Instruction 23, and read the following version of Instruction 23 to the jury:

> In regard to element 3, discrimination in price, Stevens Creek must prove (1) that Chrysler sold goods to Stevens Creek at a price that was different from that charged another dealer; and (2) that the lower prices were functionally unavailable to Stevens Creek. . . .
>
> . . . . In order for Stevens Creek to prove unlawful price discrimination, it must prove that the incentive program was functionally unavailable to it. This requires Stevens Creek to prove that the incentives would not have been practically available had Stevens Creek engaged in commercially reasonable efforts to achieve them.

Jury Instruction No. 23, ECF 329. Pursuant to this instruction, Question No. 3 on the verdict form provided: "Did Stevens Creek prove by a preponderance of the evidence that Chrysler charged Stevens Creek and one or more competing dealers different net prices by virtue of the incentives, and that the incentives were not functionally available to Stevens Creek?" Verdict Form 2.

### B. Jury Instruction 23 and Question No. 3 on the Verdict Form Properly Assigned the Burden of Establishing Functional Availability to Stevens Creek

Stevens Creek argues that Instruction 23 misstated the law because the judicially created doctrine of functional availability is an affirmative defense, for which the burden of proof is on the defendant. Mot. 3. To support its position, Stevens Creek relies on cases in which courts have treated the doctrine of functional availability as an affirmative defense. *Id.* at 3–4 (citing *DeLong Equip. Co. v. Wash. Mills Abrasive Co.*, 887 F.2d 1499, 1516–17 (11th Cir. 1989) (summary judgment order); *Allied Sales & Serv. Co. v. Global Indus. Techs., Inc.*, No. Civ.A. 97-0017, 2000 WL 726216, at *17–18 (S.D. Ala. May 1, 2000) (summary judgment order); *Calumet Breweries, Inc. v. G. Heileman Brewing Co., Inc.*, 951 F. Supp. 749, 753–55 (N.D. Ind. 1994) (preliminary injunction order); *Cain v. Chevron U.S.A., Inc.*, 757 F. Supp. 1120, 1123 (D. Or. 1991) (summary judgment order)). Stevens Creek also asserts that the recently modified American Bar Association Model Jury Instructions in Civil Antitrust Cases supports its position, because it too defined functional availability as a defense. Mot. 4 (citing Am. Bar Assoc., Model Jury Instructions in Civil Antitrust Cases (2016) (hereinafter "ABA Model Jury Instructions"). Stevens Creek contends that as an affirmative defense, the burden of proof is properly on the defendant. *Id.* at 3.

6

Chrysler, however, argues that Instruction 23 is a correct statement of the law because functional availability negates two elements of a Section 2(a) claim—price discrimination and competitive injury—and therefore, functional availability must be addressed in the plaintiff's case-in-chief. Opp'n 5–7, ECF 337 (citing *Smith Wholesale*, 477 F.3d 854 (noting that the issue of "availability negates two essential elements of a § 13(a) claim")).

Both parties concede that no binding authority addresses this question. Mot. 3; Opp'n 5 (citing only an unpublished Ninth Circuit opinion). Indeed, the Ninth Circuit does not provide model jury instructions on this issue. *See* Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 282, *available at* http://www3.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Civil_Instructions_2017_1.pdf (last updated Jan. 2017). Instead, the Ninth Circuit directs district courts to consider three outside sources, none of which resolves this particular issue. *Id.* Having considered these sources in depth at the charging conference, and having reviewed them again in considering this motion, the Court concludes that Instruction 23 properly placed the burden of proof on Stevens Creek.

Stevens Creek first argues that functional availability is an affirmative defense for which the defendant bears the burden of proof. The Court disagrees. "An affirmative defense is an assertion raising new facts and arguments that, if true, will defeat plaintiff's claim, even if all allegations in [the] complaint are true." *Bay Area Roofers Health & Welfare Tr. v. Sun Life Assurance Co. of Canada*, No. 13-cv-4192, 2013 WL 6700017, at *2 (N.D. Cal. Dec. 19, 2013) (citation and internal quotation marks omitted). In contrast, a defense that points out a defect in the plaintiff's prima facie case is not an affirmative defense. *See, e.g.*, *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) ("A defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense."); *Flav-O-Rich v. Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988) ("A defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense."); *Masuen v. E.L. Lien & Sons, Inc.*, 714 F.2d 55, 57 (8th Cir. 1983) ("If the defense involved is one that merely negates an element of the plaintiff's prima facie case . . . it is not truly an affirmative defense[.]"); *see also Roberge v. Hannah Marine Corp.*, 124 F.3d 199 (Table), 1997 WL 468330, at*3 (6th Cir. Aug. 13, 1997) ("An affirmative

7

1  defense . . . is a defense that does not negate the elements of the plaintiff's claim, but instead

2  precludes liability even if all of the elements of the plaintiff's claims are proven.").

Because courts routinely recognize that the functional availability doctrine "negates" two essential elements of an RPA claim, the Court cannot agree that the doctrine is an affirmative defense. *Smith Wholesale*, 477 F.3d at 867 ("Where a purchaser does not take advantage of a lower price or a discount which is functionally available on an equal basis, it has been held that either no price discrimination has occurred, or the discrimination is not the proximate cause of the injury."); *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 326 n.17 (5th Cir. 1998) (citing Kintner & Bauer, 3 *Federal Antitrust Law,* § 25.7 (1983)); *Shreve Equip., Inc. v. Clay Equip. Corp.*, 650 F.2d 101, 105–06 (6th Cir. 1981) (citing cases); *Sweeny & Sons, Inc. v. Texaco, Inc.*, 637 F.2d 105, 120 (3d Cir. 1980) ("[A] uniform pricing formula applicable to all customers is not a price discrimination under the act."); *see also Tri-Valley Packing Ass'n v. F.T.C.*, 329 F.2d 694, 703–04 (9th Cir. 1964) ("[I]f the lower price would have been available to the nonfavored buyer in the same market where the favored buyer made his purchase, the probability of competitive injury due to the fact that the nonfavored buyer paid more for the product is not the result of price discrimination, but of the nonfavored buyer's failure to take advantage of the opportunity, equally available to him, of buying at the same low prices.").

Stevens Creek cites one case out of the Eleventh Circuit, and several district court cases, in which it argues that courts have identified the functional availability doctrine as an affirmative defense. Mot. 3–4. Stevens Creeks' reliance on these cases, however, is misplaced. First, although the Eleventh Circuit referred to functional availability as a defense in *DeLong Equipment Company v. Washington Mills Abrasive Company*, it also cited with approval the Sixth Circuit's determination that the doctrine negates two essential elements of a plaintiff's RPA claim. 887 F.2d at 1516–17 (citing and quoting *Shreve*, 650 F.2d at 105). Second, the cited district court cases make short hand references to the doctrine of functional availability as a defense, and, contrary to Plaintiff's assertion, do not evaluate whether functional availability is a true affirmative defense. *See Allied Sales*, 2000 WL 726216, at *17–18 (a summary judgment order referring to the doctrine of functional availability as a defense and holding that because defendants

8

had not introduced evidence to prove that the plaintiff was aware of the promotion at issue, it could not grant summary judgment on the issue of functional availability); *Calumet Breweries*, 951 F. Supp. at 753–55 (a preliminary injunction order referring to the doctrine as a defense and finding that the defense is not available to defendant on preliminary injunction); *Cain*, 757 F. Supp. at 1123–24 (a summary judgment order referring to functional availability as a defense and granting defendant's summary judgment motion as to plaintiff's claim for price discrimination after concluding that the evidence demonstrated that plaintiff was not in competition with any Chevron dealer and plaintiff's ability to compete was not injured by defendant's higher prices). Because these cases do not contradict or even question the weight of the case law establishing that the doctrine of functional availability negates two essential elements of a plaintiff's RPA claim, the Court does not find persuasive Plaintiffs' argument that functional availability is an affirmative defense.

Stevens Creek next contends that even if functional availability negates an element of a plaintiff's RPA case, the burden of proof would not be fully on an RPA plaintiff. Instead, Stevens Creek maintains that under this framework, the initial burden would be on the plaintiff to establish the elements of its RPA claim, including price discrimination, and then the burden would shift to the defendant to "convince the jury that the discounts were justified[.]" Mot. 5 (citing *Smith Wholesale*, 477 F.3d at 867); Reply ISO Mot. 4, ECF 338. Plaintiff mischaracterizes the *Smith Wholesale* court's statement. *See* Reply ISO Mot. 6.

In *Smith Wholesale*, plaintiffs argued that the district court erred in dismissing their claims of illegal price discrimination under the RPA after concluding that defendant's discounts were "functionally available" to plaintiffs. 477 F.3d at 861–62. Because the discounts were functionally available to the plaintiffs, the district court concluded that defendants demonstrated the lack of two essential elements of the plaintiffs' case: price discrimination and causation. *Id.* at 861. On appeal, the Sixth Circuit affirmed the district court's holding. *See generally id.* In discussing the doctrine of functional availability, the Sixth Circuit held that functional availability is "the negation of an element of the plaintiff's case," and

> [c]onsequently, if an essential element of the plaintiff's case . . . is

9

> negated by evidence showing that a pricing or discount scheme is not functionally available to all participants on an equal basis, summary judgment is appropriate. If, however, proof has been made that there has been discrimination in price, then "§2(b) of the Act specifically imposes the burden of showing justification upon one who is shown to have discriminated in prices."

*Id.* at 867 (citations omitted). From this, Stevens Creek extrapolates that functional availability requires a burden-shifting scheme. Mot. 5. In light of the standards on summary judgment, however, the Court cannot agree. Where defendants do not bear the burden of proof at trial but are the party moving for summary judgment, they must put forward evidence negating an essential element of the plaintiff's claim. *Milyakov v. JP Morgan Chase, N.A.*, No. C 11-2066, 2011 WL 6012633, at *3 (N.D. Cal. Dec. 1, 2011). Therefore, the more plausible inference from the excerpt is that on summary judgment, the moving defendant must put forward evidence negating an essential element of plaintiff's RPA claim, *i.e.*, showing that the discount is functionally available to the plaintiff. *See* Fed. R. Civ. P. 56(a); *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014). In other words, in the summary judgment context, there is burden shifting of a different sort. If the plaintiff is unable to provide sufficient evidence to create a genuine issue of material fact as to functional availability, then, summary judgment in favor of the defendant is appropriate because the plaintiff has not met its burden. However, if the plaintiff is able to submit evidence countering defendant's evidence on functional availability, then, construing the facts in the light most favorable to the non-moving party (*i.e.*, the plaintiff), the defendant must justify the alleged price discrimination for the court to grant its motion for summary judgment. *See City of Pomona*, 750 F.3d at 1049 ("The court must view the evidence in the light most favorable to the nonmovant[.]").

That same burden-shifting scheme does not apply here, where the Court is assessing the burden of proof at trial. Instead, the burden-shifting scheme described by the Court in *Smith Wholesale* strongly suggests that the burden of proof at trial with respect to functional availability is properly on the plaintiff in an RPA case.

The Ninth Circuit's decision in *General Auto Parts Company v. Genuine Parts Company*, No. CIV 04-379, 2007 WL 704121 (D. Idaho Mar. 5, 2007), *aff'd by* 293 Fed. Appx. 515 (9th Cir. 2008), supports this conclusion. There, the district court found that summary judgment was

10

appropriate in favor of defendant GPC and against plaintiff because the evidence indicated that the discount programs did not amount to price discrimination as they were functionally available to all buyers equally. Thus, the Court concluded that "General [would be] unable to carry its burden of proof at trial." 2007 WL 704121, at *5. The Ninth Circuit affirmed the district court's decision, rejecting General's contention that GPC's volume discount pricing system discriminated against General within the meaning of the antitrust laws because General "failed to meet its burden to show that there is an issue of fact as to whether the volume discounts in question were not functionally available to buyers such as General." 293 Fed. Appx. at 516. The Ninth Circuit concluded that GPC had presented unrebutted evidence suggesting that General had failed to take advantage of the discounts of its own volition, and not because of illegal price discrimination. *Id.* Construing this in light of the standard on summary judgment, GPC, as the moving party—and the party who does not bear the burden at trial—put forward evidence negating an essential element of the plaintiff's claim. Because General did not put forward evidence indicating a genuine dispute of material fact on this issue, the court properly granted summary judgment in favor of GPC.

Another factor in favor of the Court's interpretation is consideration of the Supreme Court's view of the burden of proof in regard to functional discounts under the RPA. In *Texaco v. Hasbrouck*, the Supreme Court noted with approval that "the burden of proof remains with the enforcement agency or plaintiff in circumstances involving functional discounts since functional pricing negates the probability of competitive injury, an element of a prima facie case of violation." *Texaco Inc. v. Hasbrouck*, 496 U.S. 543, 561 & n.18 (1990) (citing and quoting James F. Rill, *Availability and Functional Discounts Justifying Discriminatory Pricing*, 53 Antitrust L.J. 929, 935 (1985)). As noted by Chrysler, other courts relying in *Hasbrouck* have clearly placed the burden of proof on plaintiffs. In *Southwest Paper Company, LLC v. Hansol Paper*, No. CV 12-8721, 2013 WL 11238487, (C.D. Cal. Apr. 15, 2013), the district court, in ruling on a motion to dismiss, determined that "functional discounts are not an affirmative defense that must be pled and proven by the defendant." 2013 WL 11238487, at *4 (citing *Hasbrouck*, 496 U.S. at 561 n.18). The Court went on to state "because the plaintiff has the burden of pleading and proving competitive harm, the plaintiff bears the burden of proving that any price differences identified in

11

its complaint do not reflect legitimate functional discounts." *Id.* (citing *Hasbrouck*, 496 U.S. at 561 n.18).[3] Like the functional availability doctrine, functional discounts negate an essential element of a plaintiff's prima facie case. *See American Booksellers Ass'n, Inc. v. Barnes & Noble, Inc.*, 135 F. Supp. 2d 1031, 1062–63 (N.D. Cal. 2001). It would be nonsensical for the plaintiff or enforcement agency to bear the burden of proof on functional discounts at trial but not bear the burden as to functional availability, as they both operate to defeat a plaintiff's case in chief in the same manner. *Cf. United States v. Leal-Cruz*, 431 F.3d 667, 671 (9th Cir. 2005) ("Our own precedents have held that when a defense negates the element of a crime, it is unconstitutional to place the burden of proving the defense on the defendant.") (citation omitted). Moreover, Plaintiff has not argued that functional availability is different than functional discounts in this regard.

For the foregoing reasons, the Court concludes that it properly placed the burden on Stevens Creek to show functional unavailability, and thus, did not err with respect to Jury Instruction 23 or Question 3 on the Verdict Form. Moreover, even if the Court incorrectly assigned the burden to Stevens Creek, that error was harmless. Perhaps recognizing this, Stevens Creek makes the unsupported argument that "Stevens Creek offered ample indisputable evidence that during the Entry Period adjacent competing Chrysler dealers received incentives that Stevens Creek did not, it is highly likely that Stevens Creek was prejudiced by this error of law," without any citation to the record whatsoever. Mot. 6; *see also* Reply ISO Mot. 8. And, as Chrysler points out, it presented affirmative fact and expert evidence showing that Stevens Creek acted irrationally by raising prices, and had it acted in a commercially reasonable manner, it would have earned its incentives a majority of the time. Opp'n 9–10 (citing Tr. 693, 709–10, ECF 347; *id.* at 1013–30, ECF 349).

Accordingly, Stevens Creek's motion for a new trial on this ground is DENIED.

### C. Jury Instruction 23 Properly Stated the Law Regarding the Elements of Functional Availability

Stevens Creek next argues that Jury Instruction 23 improperly stated the law regarding the

---

[3] The Court previously distinguished *Southwest Paper* on other grounds not relevant here. *See* Order on Motion to Exclude, ECF 178.

12

elements of functional availability. Mot. 6. In particular, Stevens Creek contends that the Court failed to instruct the jury on the second element of functional availability—that the incentives must be available "on an equal basis" to each buyer—and instead only instructed the jury that the objectives must have been practicably attainable. *Id.* Stevens Creek submits that both elements must exist for an incentive to be considered functionally available to a buyer, and thus, Jury Instruction 23 misstated the law. *Id.*

Chrysler's position is that there was no need for the Court to instruct the jury as to evenhandedness for two reasons: First, a discount that is practically attainable to the plaintiff is functionally available because a buyer acting in a commercially reasonable manner would earn it, and thus, there is no need to inquire into evenhandedness. Second, even if functional availability requires that a discount be practically attainable and evenhanded, there was no need to instruct the jury on this issue because Stevens Creek did not challenge the evenhandedness of Chrysler's incentive program. Opp'n 10. Accordingly, Chrysler argues that Jury Instruction 23 was correctly given.

As with the prior issue, no binding authority addresses this question. However, the recently published *ABA Model Jury Instructions* provides the Court with some guidance. The notes to the *ABA Model Jury Instructions* state, "[t]he functional availability defense . . . only applies when the lower price *was known to and obtainable by* most competing purchasers." ABA Model Jury Instruction No. C-3, at 161 (emphasis added) (citing *Caribe BMW v. BMW AG*, 19 F.3d 745, 752 (1st Cir. 1994); *Comcoa, Inc. v. NEC Telephones, Inc.*, 931 F.2d 655, 664 (10th Cir. 1991); *Century Hardware Corp. v. Acme United Corp.*, 467 F. Supp. 350, 355–56 (E.D. Wis. 1979)); *see also id.* at 165 (citing *Morton Salt*, 334 U.S. 37 (1948)). That the recently updated model jury instructions do not mention evenhandedness as an element of functional availability is persuasive, but not dispositive.

Moreover, although Stevens Creek correctly points out that courts have mentioned both practical attainability and evenhandedness as elements of functional availability, many courts discuss only one or the other. Opp'n 6; *see, e.g.*, *Shreve*, 650 F.2d at 105 ("Where a purchaser does not take advantage of a lower price or discount which is *functionally available on an equal*

*basis*, it has been held that either no price discrimination has occurred, or that the discrimination is not the proximate cause of the injury." (emphasis added)); *Allied Sales*, 2000 WL 726216, at *18 (finding that the discount must be "functionally," "practically," and "realistically" available); *Labrador, Inc. v. Iams Co.*, No. CV 94-4463, 1995 WL 714454, at *6 (C.D. Cal. Sept. 18, 1995) (functional availability requires that a manufacturer "make[ ] certain terms and conditions available to a party"). Other courts consider different facts pertinent to the determination of whether a lower price is functionally available to a plaintiff. *See, e.g.*, *Hygrade Milk & Cream Co., Inc. v. Tropicana Prods., Inc.*, No. 88 Civ. 2861, 1996 WL 257581, at *5 (S.D.N.Y. May 16, 1996) (denying defendant's motion for summary judgment on the issue of functional availability given the limited notice of the promotional allowances provided by the defendant, the administrative difficulties faced by those stores participating in the plan, and the lack of any relationship between the allowance and the value of service provided). This wealth of precedent suggests that there are not two elements to functional availability, but rather that functional availability is a concept that can be captured in multiple ways.

At least one circuit court has agreed with this conclusion. In *Comcoa, Inc. v. NEC Telephones, Inc.*, 931 F.2d 655, the Tenth Circuit upheld the following jury instruction on the availability of volume discounts:
> If you find that defendants' volume discounts were *functionally available* to the plaintiffs, then as a matter of law either there is no price discrimination or the discrimination is not the proximate cause of injury. The implementation of a discount program need not guarantee that all customers benefit to the same degree as other customers, as long as the program is evenly administered.

931 F.2d at 664 (emphasis in original). On appeal, the *Comcoa* plaintiffs argued that the above jury instruction was erroneous "because it did not properly address the required showing that the volume discounts were equally or functionally available to all purchasers." *Id.* Specifically, the plaintiffs "argue[d] that the district court should have given their proposed jury instruction, which defined 'functional available' in greater detail."[4] *Id.* One omission was any reference to

---

[4] The plaintiffs in *Comcoa* had proposed the following language:
> To be functionally available to all purchasers means that the level of discounts offered by defendants were equally available to all purchasers. If

14

"practical attainability," which had been included in the proposed jury instruction. *Id.* (proposed jury instruction provided "[i]f only large purchasers . . . could, as a practical matter, qualify for the . . . discount). In upholding the instruction given by the Court, the Tenth Circuit found that "[a]lthough the district court's instruction was abbreviated, it contained substantially the same information as plaintiffs' proposed instruction." *Id.* at 665 (citations omitted).

The instructions given in *Comcoa* and here both provide sufficient detail into the doctrine of functional availability. Whereas the final jury instruction in *Comcoa* did not refer to practicable attainability, it did explain that the program must be "evenly administered." *Id.* at 664. Here, by contrast, the final jury instruction stated that to prove the incentive program was functionally unavailable to it, Stevens Creek had to prove practicable attainability, not that it was also "evenhanded." Like the Tenth Circuit, this Court concludes that the jury instruction "offered the jury an accurate statement of the law," even if it did not provide all of the detail Plaintiff desired. *See id.* at 665 (citation and internal quotation marks omitted). Even if there was error, it was harmless. The jury's verdict indicates that the jury believed that Chrysler's VGP was practically attainable to Stevens Creek.

Moreover, as Chrysler points out, Stevens Creek does not make clear precisely what it believes must be "evenhanded" in order for a program to be functionally available. Opp'n 11 n.6. According to the Eleventh Circuit, the "proportionately equal terms" requirement does not have a single, fixed meaning, but requires that "purchasers be given an equal opportunity to participate" and receive benefits "on equal terms . . . in proportion to some objective value of their participation." *Alan's of Atlanta, Inc. v. Minolta Corp.*, 903 F.2d 1414, 1423 (11th Cir. 1990). At least one district court has used a similar definition. *See, e.g.*, *Century Hardware*, 467 F. Supp. at 355 ("[A] discount is functionally available when objective standards exist to guide [purchasers] in qualifying for the category of purchasers receiving the discount."). Chrysler argues that there is

---

only large purchasers from defendants could, as a practical matter, qualify for the highest level of discount, then defendants' discounts were not functionally available to plaintiffs and therefore the price discrimination element of section 2(a) has been satisfied.
931 F.2d at 664 & n.13.

no dispute that all dealers who achieve their sales level receive the same payment of $700 per vehicle or that incumbent dealers are subject to the same formula, and there is no challenge to the use of a proxy for Fremont during its first six months in the market. Opp'n 12 (citing Tr. 476–79, ECF 346). Chrysler also asserts that there is no dispute that Chrysler used the exact same formula for all dealers beginning in December 2012. *Id.* (citing Tr. 480, 481–83, ECF 346). Stevens Creek does not contest this. Instead, it argues that it offered evidence that Chrysler favored Fremont by lowering Fremont's incentive objectives while during the same month rejecting the request of Chrysler's California Business Center to lower Stevens Creek's objectives due to Fremont's entry. Reply ISO Mot. 9 (citing Trial Exs. 25, 27).

Stevens Creek's argument is unavailing. Stevens Creek does not dispute that Chrysler's VGP gives it and the other CJDR dealers an equal opportunity to participate in the VGP program—they are all eligible so long as they meet their sales objectives. Stevens Creek's objection is that its objectives were higher than those set for Fremont. Reply ISO Mot. 10. Evenhandedness, as defined above, however, does not require that the objectives be equal; it requires only that some objective standard exists to guide the dealers in qualifying for VGP and that the standard for each dealer is similar, or on "equal terms." There is no argument or evidence that the standard is not objective or that the standards set for each dealer was not on "equal terms," and thus, any error in failing to instruct the jury on evenhandedness was harmless, as none of the evidence suggests that the VGP was not evenhanded.

For the foregoing reasons, the Court DENIES Stevens Creek's motion on this ground.

### D. Neither Jury Instruction 23 Nor Question No. 3 on the Verdict Form Was Confusing

Stevens Creek's final argument is that Instruction Number 23 and Verdict Form Question 3 were confusing because they "toggl[ed] between the concepts of 'functional availability' and 'functional unavailability.'" Mot. 8. The argument that juror confusion entitled the plaintiff to a new trial may be persuasive under certain conditions, but is not convincing here. First, as Chrysler correctly indicates, Stevens Creek failed to present "confusion" as a basis for challenging the instruction before the instant motion, and has thus waived the argument. *See* Opp'n 13 (citing and

quoting Fed. R. Civ. P. 51(c)). In reply, Stevens Creek contends that it did raise the issue by saying that lead counsel objected to the Court "not instructing the jury that functional availability, as opposed to functional unavailability, requires both even-handed treatment and practical attainability." Reply ISO Mot. 9 (quoting Tr. 1295:17–21, ECF 350). The Court more properly construes this objection to relate to Stevens Creek's second ground for a new trial—that the Court failed to instruct the jury on the two purported elements of functional availability—as opposed to any possible confusion resulting from the language used.

Even if Stevens Creek did not waive this issue, however, the Court finds it meritless. First, the jury did not express any confusion with respect to Jury Instruction 23. Second, the instruction is plain English—expressing a negative in an alternative way is unlikely to cause confusion. Indeed, several courts have used this language when discussing the doctrine. *See, e.g.*, *Hanson v. Pittsburgh Plate Glass Indus., Inc.*, 482 F.2d 220, 225 (5th Cir. 1973); *Smith Wholesale*, 477 F.3d at 861; *Krist Oil Co., Inc. v. Bernick's Pepsi-Cola of Duluth, Inc.*, 354 F. Supp. 2d 852, 857 (W.D. Wisc. 2005). Accordingly, the Court cannot agree that Jury Instruction 23 and Question No. 3 on the Verdict Form were confusing.

For the foregoing reasons, the Court DENIES Stevens Creek's motion for a new trial.

Dated: April 20, 2017

*[signature]*
BETH LABSON FREEMAN
United States District Judge